1

2

3

4

Stacy Scheff
LAW OFFICE OF STACY SCHEFF
P.O. Box 40611, Tucson, AZ 85717-0611
(520) 471-8333 • FAX (520) 300-8033
stacy.scheff@gmail.com
State Bar No. 028364
*Counsel for Plaintiff*

## DISTRICT COURT FOR THE UNITED STATES

## DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Raniere, | Case No.: 4:22-cv-00212-RCC-PSOT |
| Plaintiff, | |
| v. | |
| Merrick Garland, US Attorney General; Michael Carvajal, Director Federal Bureau of Prisons; Barbara VonBlankensee, Warden USP Tucson, Anthony Gallion (all in their official capacities), | **MOTION FOR PRELIMINARY INJUNCTION** (***Expedited Consideration Requested***) (***Hearing Requested***) |
| Defendants | |

Plaintiff, pursuant to Fed.R.Civ.P. 65 and *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), moves for a preliminary injunction against prison administrator Defendants, who are unlawfully hindering and obstructing Plaintiff's First and Sixth Amendment rights to communicate via telephone with his criminal defense attorneys and his attorneys' agents in the lead-up to the 3-year deadline for post-conviction relief petitions based on newly-discovered evidence on June 19, 2022. Specifically, Plaintiff seeks an ***urgent*** injunction reinstating communications with Mr. Suneel Chakravorty, who is Plaintiff's Power-of-Attorney and a paralegal to Plaintiff's post-conviction attorneys.

1

**INTRODUCTION**

Plaintiff Keith Raniere is a prisoner at the U.S. Penitentiary in Tucson. Plaintiff was convicted on June 19, 2019, therefore the 3-year deadline for post-conviction relief petitions regarding newly-discovered evidence is rapidly approaching on June 19, 2022. Since January of 2021, Plaintiff's legal team has communicated regularly with Plaintiff from within the Tucson Penitentiary. The purpose of these communications is primarily to develop a strategy to attack Plaintiff's underlying conviction and sentence.

Mr. Suneel Chakravorty, a non-lawyer who serves as both Plaintiff's power-of-attorney and as an aide to Plaintiff's post-conviction attorneys, was able to call and visit with Plaintiff during the first several months of 2021. Exhibit 1, ¶¶ 1, 20. However, on May 2, 2021, prison authorities revoked Mr. Chakravorty's in-person visitation privileges without explanation, leaving Mr. Chakravorty with the ability to speak with Plaintiff only by telephone on a recorded, non-privileged phone line. Doc. 3, p.4.

Despite this hindrance, Mr. Chakravorty continued to assist Plaintiff in attacking his conviction. Exh. 1, ¶¶ 21-23.  Among other things, Mr. Chakravorty hired the California-based criminal defense firm of Tully & Weiss. Exh. 1, ¶¶ 27-33.  Today, attorney Joseph Tully is working to bring to the criminal court's attention potential errors that corrupted the jury trial, and led to Plaintiff's conviction.  Mr. Chakravorty continues to serve a central role in the communications between and within the legal team.  Exh. 1, ¶¶ 34-36.  While Plaintiff was able to speak with Mr. Chakravorty using a non-attorney line, the non-confidential nature of this line necessarily limited the range of discussion between the two men, and any conversations they wished to remain private had to be

2

arranged directly with the attorneys. Consequently, Plaintiff's lawyers are being hindered in their representation just as the deadline for post-conviction relief based on newly-discovered evidence is expiring.

Mr. Chakravorty is not merely a trusted confidant; his unique knowledge proved critical to the lawyers' extensive factual research that culminated on May 3, 2022 with the filing of a motion for a new criminal trial, pursuant to Fed.R.Crim.P. 33. Mr. Chakravorty, a Harvard-trained mathematician with knowledge of computer science, (Exh. 1, ¶¶ 2-5) assisted the Law Office of Tully & Weiss for several months in preparing the motion (Exh. 1, ¶¶ 27-31). Among other things, Mr. Chakravorty marshaled the assistance of subject-matter experts and helped interpret complex and voluminous computer data. Exh.1, ¶¶ 21-23, 29-31. These unique skills allowed the team to assess the accuracy and reliability of the FBI's computer forensic work - the foundation upon which the federal prosecutors had built their case. Mr. Chakravorty's assistance proved so essential that the Law Office of Tully & Weiss considered him to be a member of the legal defense team and gave him the position of paralegal to the team. Exh. 1, ¶ 28.

In addition to searching for any additional grounds for relief before the expiration of the deadline, Plaintiff's legal team is preparing for a hearing on the petition already filed. Just a day after Plaintiff's attorneys filed the petition, prison officials in Tucson informed Plaintiff that he would no longer be permitted to speak with Mr. Chakravorty on *any* phone line, recorded or otherwise. At the same time, Plaintiff was informed that *all* of his non-attorney contacts were to be "scrubbed" - eliminated from the pre-approved list

of call recipients, effectively cutting Plaintiff off from the outside world. Again, no explanation was provided.  This latest move cuts Plaintiff off from the lynchpin of his legal team in the precise moment when Plaintiff must present all new evidence of innocence or forever hold his peace.

<strong>LEGAL STANDARD</strong>

Plaintiffs seeking a preliminary injunction generally must show that (1) their claims are likely to succeed on the merits; (2) they will likely suffer irreparable harm without an injunction; (3) the balance of equities tips in their favor; and (4) the public interest favors an injunction.  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *American Trucking Associations Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

The Ninth Circuit allows the above factors to be weighed using a sliding scale approach, whereby a strong showing in one factor may counterbalance a weaker showing in another.  *E.g. Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2010); *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) ("plaintiffs must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and balance of hardships tipping in their favor").

For example, "if a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Tenorio-Serrano v.*

4

*Driscoll*, 324 F. Supp. 3d 1053, 1058 (D. Ariz. 2018) *(quoting Shell Offshore, Inc. v.*

*Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013). In demonstrating that there are

"serious questions", a plaintiff need not demonstrate a probability of success on the

merits but only a "fair chance of success on the merits." *Cascadia Wildlands v. Scott*

*Timber Co.*, 715 F. App'x 621, 624-25 (9th Cir. 2017) (*quoting Republic of the*

*Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).

Plaintiff here has amply demonstrated a likelihood of success on the merits of his

First and Sixth Amendment claims. Yet even if this Court were to find that Plaintiff has

demonstrated a slightly less forceful showing on the merits, this Court may still grant

preliminary injunctive relief with a concomitant finding that the balance of hardships tip

sharply in Plaintiff's favor. Under either rubric, all four *Winter* factors weigh in favor of

the requested temporary restraining order, and relief should be granted.

### A. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM IN COUNT I, ASSERTING THAT DEFENDANTS ARE ACTIVELY FRUSTRATING AND INTERFERING WITH HIS FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS.

#### *1. Prisoners Have a First Amendment Right to Communicate by Telephone with their Criminal Defense Attorneys.*

Prisoners have a First Amendment right of access to the courts. Naturally, this

right encompasses a prisoner's right to communicate with their attorneys - particularly

those attorneys whose legal assistance involves "attack[ing] their sentences, directly or

collaterally[.]" *Hebbe v. Pliler*, 627 F.3d 338, 343 (9th Cir. 2010) (internal citations

omitted). While the First Amendment "does not guarantee inmates the wherewithal to

5

transform themselves into litigating engines," *Lewis v. Casey*, 518 U.S. 343, 355 (1996), it does guarantee a prisoner's right to court access that is "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977) abrogated on other grounds by Lewis v. Casey, 518 U.S. 343 (1996).

Indeed, the Constitution at times requires prison administrators to "shoulder affirmative obligations to assure all prisoners meaningful access to the courts." *Bounds*, 430 U.S. at 824. *See also R.G. v. Koller*, 415 F. Supp. 2d 1129, 1161 (D. Haw. 2006) (observing that "[p]rison officials must… eliminate undue barriers to inmate access [to the courts]")

Courts within the Ninth Circuit routinely find that this First Amendment right encompasses the right to speak by telephone with one's criminal defense attorney.[1] This right to telephonic communication is heightened where in-person visitation by the criminal defense attorney is impracticable. *See, e.g., Williams v. ICC Comm.*, 812 F. Supp. 1029, 1034 (N.D. Cal. 1992) (holding that denial of legal telephone calls would violate prisoner's rights where "the telephone is his only avenue for meaningful access to his lawyer").

Other circuits have similarly held that, at a minimum, the First Amendment access

---

[1] *See, e.g., Hogue v. Ada Cnty.*, 2014 WL 7722999, at *8 (D. Idaho Dec. 12, 2014) (denying prison's motion to dismiss and concluding that the First Amendment includes the right of a segregated prisoner to phone his attorney); *Regalado v. Riverside Cnty*, 2021 WL 945249, at *5 (C.D. Cal. Jan. 15, 2021) (observing that the right to request a phone call with one's attorney is a "protected activit[y] under the First Amendment."); *Johnson v. Galli*, 596 F. Supp. 135, 138 (D. Nev. 1984) (observing that the "use of a telephone is essential for a pretrial detainee to contact a lawyer, bail bondsman or other person in order to prepare his case.").

6

to the courts includes telephone access to one's attorney.  As the Second Circuit colorfully explained this point in evaluating a prison's complex system that  expressed this point, "delay in communication [with a prisoner's attorney] caused by the prison's Rube Goldberg rules may itself be prejudicial to a prisoner's rights." *Davidson v. Scully*, 694 F.2d 50, 53 (2d Cir. 1982) (addressing access to one's attorney related to post-conviction filings). The Seventh Circuit held that denying telephone access to one's attorney for four consecutive days violates the Sixth Amendment and "may also violate the First and Fourteenth Amendments." *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991).

   **2. <u>This First Amendment Right Encompasses the Right of Prisoners to Speak with Paralegals Retained by the Attorney to Assist with the Provision of Legal Services.</u>**

  "The attorney-client privilege protects the client's confidential communications with an attorney, *or the attorney's agent*, for the purpose of securing legal advice." *United States v. Zegzula*, 42 F.3d 1404 (9th Cir. 1994) (emphasis added). Similarly, a prisoner's right to communicate with his attorney extends equally to the attorney's paralegal. The Ninth Circuit has consistently held that paralegals and other non-attorney professionals retained by the attorney are important to the attorney's ability to render legal advice. *See, e.g., United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (noting that a client must feel free to communicate candidly with "third parties who have been engaged to assist the attorney in providing legal advice."); *United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978) (same). Similarly, the Ninth Circuit has held that attorneys' not infrequent reliance on paralegals to assist in the fact-finding effort "counts as professional legal services." *United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996).

Nowhere is this principle more elevated than when the non-attorney's expertise is essential for the attorney to make sense of the facts in a case.  A classic example is where the attorney and client *literally* speak different languages, and a non-attorney is needed to bridge the divide. In *United States v. Mikhel,* for example, the Ninth Circuit was confronted with a prisoner who spoke English as a second language, but whose non-native speech patterns resulted in the "imprecise" conveyance of important concepts. Prison administrators prohibited an interpreter from joining the attorney line. Recognizing that prisons are authorized to impose restrictions that are reasonably related to penological interests, the Ninth Circuit nevertheless concluded that preventing interpreters from joining the attorney line amounted to an "exaggerated response to prison concerns and places an unacceptable burden" on the prisoner's right to consult with his attorney. *U.S. v. Mikhel*, 552 F.3d 961, 963 (9th Cir. 2009).

Spoken language is not the only scenario in which an attorney requires the expert assistance of a non-attorney. "[A]ccountants, interpreters, or polygraph examiners" are all examples of non-attorney "outside experts engaged to assist the attorney in providing legal services to the client." *Jenkins v. Bartlett*, 487 F.3d 482, 491 (7th Cir. 2007). Such individuals often prove <u>indispensable</u> to the attorney because they "transmit[] or interpret[] client communications to the attorney." *Id.*

Here, Mr. Chakravorty serves <u>precisely</u> this role on behalf of the attorneys of Tully & Weiss. During the months that Plaintiff's attorneys spent gathering evidence and preparing the Rule 33 petition for a new trial, Mr. Chakravorty played an <u>essential</u> role in interpreting computer data for the attorneys. Most notably, Mr. Chakravorty aided in

8

translating voluminous amounts of metadata - information that is embedded within most computer files - revealing critical information about the dates, methods, and origins of document edits and document alterations. Prior to Tully & Weiss being retained, Mr. Chakravorty and Plaintiff spent months discussing, analyzing, and theorizing about how this metadata contained in computer files affects Plaintiff's legal case. This collaborative process between Mr. Chakravorty and Plaintiff yielded some important revelations - later confirmed by *Daubert* experts - and included in the May 3rd motion described above.  It is clear that Mr. Chakravorty is no garden-variety paralegal. But even if Mr. Chakravorty's role as paralegal were limited to filling out paperwork and aiding in the communication between attorney and client, the prison would still be precluded from cutting off communication, absent a legitimate penological interest. Defendants and their agents have offered to Plaintiff no explanation, let alone a "legitimate" one.

**B. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM IN COUNT III, THAT DEFENDANTS' ACTIONS AMOUNT TO A VIOLATION OF THE SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.**

Not only are Defendants' actions in cutting off telephone communication with Mr. Chakravorty a First Amendment violation, they also amount to a Sixth Amendment violation of Plaintiff's right to effective assistance of counsel. Indeed, the right to assistance of counsel "would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). Government restrictions on communication between criminal defendant and attorney violate the Sixth Amendment when imposed during a critical juncture of the legal

representation. For example, the Supreme Court held that a violation of the Sixth Amendment occurs when the government prohibits a criminal defendant from communicating with his attorney for <u>17 hours</u> during a critical juncture of his trial. *Geders v. United States*, 425 U.S. 80, 87 (1976); *See also Tucker v. Randall*, 948 F.2d 388, 390-91 (7th Cir. 1991) ("[t]he Sixth Amendment right to counsel would be implicated if plaintiff was not allowed to talk to his lawyer for the entire four-day period.").

So strong is this Constitutional right that, even if Defendants were to proffer some legitimate countervailing interest, the tension "must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel." *Geders,* 425 U.S. at 91. This is the key lesson of the Sixth Amendment. See, e.g., *Luis v. United States*, 578 U.S. 5, 10 (2016) (holding that the government's interest in "freezing" potentially ill-gotten proceeds is outweighed by the criminal defendant's Sixth Amendment right to use presumptively "untainted" funds to hire an attorney of choice); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (holding that a court's inherent authority to regulate the admission of attorneys does not overpower a criminal defendant's Sixth Amendment right to hire an attorney of choice).

This right also includes the right to communicate with paralegals who are retained by the criminal defense attorney. *See, e.g., Smith v. Coughlin,* 748 F.2d 783, 789 (2d Cir.1984) (ban on visits by paralegal personnel to convicted inmate violated the Sixth Amendment); *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001) ("Considering appellant's second argument—that appellees' refusal to allow him to see paralegal

10

personnel denied him effective assistance of counsel—we agree with the district court that this claim is meritorious.").

### C. PLAINTIFF IS SUFFERING IRREPARABLE HARM AS A RESULT OF THE FIRST AND SIXTH AMENDMENT VIOLATIONS.

Courts have held that access-to-counsel claims based on the government's wrongful interference strike at the "root... of the constitutional guarantee." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006). As such, Plaintiff is likely to suffer irreparable harm because, absent injunctive relief, he will be deprived of the most basic constitutional protections under the First and Sixth Amendments. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (finding that a constitutional deprivation "unquestionably constitutes irreparable injury."); *Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134 (2011) ("[C]onstitutional violations... generally constitute irreparable harm."); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("Plaintiffs faced irreparable harm in the form of a deprivation of constitutional rights."). This presumption of irreparable harm applies equally to prisoner cases. *Luckette v. Lewis*, 883 F.Supp. 471, 483 (D. Ariz. 1995) (finding that a prisoner who suffered a First Amendment violation enjoys a presumption of irreparable harm)

### D. THE EQUITIES TIP SHARPLY IN PLAINTIFF'S FAVOR

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Counsel*, 555 U.S. 7, 24 (2008) (citation omitted). Here, the answer is clear: the harm to Plaintiff outweighs any conceivable hardship to Defendants. Indeed, Defendants

are already required to have a system in place to allow secured telephonic communications between prisoners, their attorneys, and their attorneys assistants.

On Plaintiff's side is his constitutional right to communicate openly with this counsel of choice in a rapidly-closing window of opportunity, and aid his counsel in preparing a criminal defense, and his Sixth Amendment right to hire and utilize counsel of his choice. To the extent Defendants may cite financial hardship in allowing Plaintiff to communicate with a non-attorney paralegal, courts have "little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.'" *Harris v. L.A. Cty Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004) (*quoting Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir.1983)).

Any possible hardship that Defendants may identify is really no hardship at all, because Defendants are already required to follow the Constitution. "[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]" *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). Because it is "always in the public interest to prevent the violation of a party's constitutional rights," the balance of equities tip sharply in Mr. Raniere's favor. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal citations omitted). The equities tip in favor of a plaintiff where the burden to prison officials is mere "administrative inconvenience." *R.G. v. Koller*, 415 F.Supp.2d 1129, 1162 (D. Haw. 2006).

To the extent that Defendants claim that Mr. Chakravorty is banned by reason of his affiliation with Plaintiff's former organization NXIVM, this holds no weight, for several reasons.  First, Mr. Chakravorty has never been a member of NXIVM, NXIVM

never had members, and is no longer operating. Exh. 1, ¶39-44.  Second, NXIVM was never adjudicated to be a criminal enterprise.  Exh. 1, ¶49.  Third, the conditions regarding contact with certain individuals applies to supervised release, and does not apply to Mr. Chakravorty.  Exh. 1, ¶52.

## CONCLUSION

The timing of these actions is unmistakable retaliation for attempting to overturn Plaintiff's conviction via the proper procedures.  Plaintiff Keith Raniere asks the Court to issue an Order that he be allowed to speak with Mr. Chakravorty on both the monitored and unmonitored lines and via legal visits.  This matter is particularly urgent given the impending deadline to present all challenges to the criminal conviction based on newly-discovered evidence on June 19, 2022.

DATED this 26th day of May, 2022 by

/s/Stacy Scheff
STACY SCHEFF
Attorney for Plaintiff

Delivered via ECF
to all registered parties

13