Exhibit A

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Keith Raniere, | No. 22-cv-00212-RCC-PSOT |
| Plaintiff, | **DECLARATION OF DANIEL FLORES** |
| vs. | |
| Merrick Garland, US Attorney General, et al., | |
| Defendants. | |

I, Daniel Flores, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby make the following declaration relating to the above-titled matter.

1.      I am a Correctional Counselor for the Federal Bureau of Prisons (Bureau), assigned to the United States Penitentiary in Tucson, Arizona (USP Tucson).  I am currently assigned as the Correctional Counselor for C1 Unit at USP Tucson.  In this role, my duties include assisting inmates with their personal property, social visiting list, social telephone list, cell sanitation, administrative remedies and tort claims, copouts, inmate indigent stamps, admission and orientation, Inmate Financial Responsibility Program payments, legal visits, legal telephone calls, and legal mail.  I address inmate institutional needs on a daily basis.

2.      As part of my official duties, I have access to records maintained by the Bureau in the ordinary course of business, including administrative remedy requests of federal inmates, information maintained in the SENTRY[1] database, and inmate central

---

[1] SENTRY is the Bureau's national database which tracks various data regarding an inmate's confinement, including, but not limited to, an inmate's institutional history, sentencing information, administrative remedies, and discipline history.

1  files.  All records attached to this declaration are true and accurate copies of Bureau
2  records maintained in the ordinary course of business.

3       3.       The following statements are based on my review of official Bureau files
4  and records, my own personal knowledge, or on information acquired by me through the
5  performance of my official duties.

6       4.       I am familiar with inmate Keith Raniere, Federal Register No. 57005-177.
7  Mr. Raniere is assigned to C1 Unit at USP Tucson and he is one of the inmates on my
8  caseload.  On October 27, 2020, Mr. Raniere was sentenced to an aggregate 120-year
9  sentence in the United States District Court for the Eastern District of New York for
10  racketeering conspiracy, racketeering, forced labor conspiracy, wire fraud conspiracy, sex
11  trafficking conspiracy, sex trafficking of Jane Doe 5, and attempted sex trafficking of
12  Jane Doe 8 in violation of multiple federal statutes.  *See* Att. 1, SENTRY Public
13  Information at 2-4; Att. 2, Judgment in a Criminal Case at 1-4.  Mr. Raniere's projected
14  release date from Bureau custody is June 27, 2120.  *See* Att. 1 at t 1, 5.

15      5.       As a Special Condition of Supervised Release, the sentencing judge
16  specifically ordered that Plaintiff "shall not associate in person, through mail, electronic
17  mail or telephone with any individual with an affiliation to Executive Success Programs,
18  Nxivm, DOS or any other Nxivm-affiliated organizations[.]"  *See* Att. 2 at 9.

19  **I.    PARALEGALS, CLERKS, AND LEGAL ASSISTANTS**

20      6.       "The Bureau of Prisons recognizes the use of assistants by attorneys to
21  perform legal tasks and, with proper controls and exceptions enumerated . . . accords such
22  assistants the same status as attorneys with respect to visiting and correspondence."  28
23  C.F.R. § 543.16(a).  "The special visiting/correspondence status accorded to parelegals,
24  clerks, and legal assistants depends on an ongoing, supervisory relationship with an
25  attorney on an approved visiting/correspondence list.  Absent any current supervisory
26  relationship, such persons may only receive social visiting or general correspondence
27  privileges."  *See* Program Statement 1315.07, *Inmate Legal Activities* at 19.[2]

28  _____
[2] Available at https://www.bop.gov/policy/progstat/1315_007.pdf (last visited on May 27,

7.      "The attorney who employs an assistant and who wishes the assistant to visit or correspond with an inmate on legal matters shall provide the Warden with a signed statement including: (1) Certification of the assistant's ability to perform in this role and awareness of the responsibility of this position; (2) A pledge to supervise the assistant's activities; and (3) Acceptance of personal and professional responsibility for all acts of the assistant which may affect the institution, its inmates, and staff.  The Warden may require each assistant to fill out and sign a personal history statement and a pledge to abide by Bureau regulations and institution guidelines.  If necessary to maintain security and good order in the institution, the Warden may prohibit a legal assistant from visiting or corresponding with an inmate."  28 C.F.R. § 543.16(b)(1)-(3).  "The Warden may require each paralegal, clerk, or legal assistant to complete a BP-S243.013" Application to Enter Institution as Representative form[3] as well as the BP-S242.013 Paralegal or Legal Assistant Agreement form.[4]  *See* Program Statement 1315.07, *Inmate Legal Activities* at 18-19.[5]

8.      To date, Mr. Raniere's attorneys have not requested that Suneel Chakravorty be granted paralegal privileges, nor have they sponsored him as a paralegal. Therefore, Suneel Chakravorty is not afforded legal visitation, legal call, or legal correspondence privileges with Mr. Raniere.

**II.    LEGAL CALLS**

9.      As a Correctional Counselor, I schedule legal calls as part of my regular duties.  When an attorney requests a legal call, I ensure he/she is licensed and in good standing.  Inmate legal calls are prioritized by institutional safety and security, staffing,

---

2022).

[3] Available at https://www.bop.gov/policy/forms/BP_A0243.pdf (last visited on May 27, 2022)

[4] Available at https://www.bop.gov/policy/forms/BP_A0242.pdf (last visited on May 27, 2022).

[5] Available at https://www.bop.gov/policy/progstat/1315_007.pdf (last visited on May 27, 2022).

facility availability, demand among the inmate population, and current conditions within the institution (*e.g.,* COVID-19 measures, security threats, lockdown, etc.).   I ensure the attorney is active and in good standing.  When legal calls occur in the housing unit, the inmate will report to my office at the appointed time and I will facilitate the call.  Inmate legal telephone calls are not audio-recorded or monitored.  When a legal call takes place in a staff office, I place the call, remain in the office until the connection is made with the inmate's attorney or appropriate staff.  Once the attorney or staff member is on the line, I leave the room and visually monitor the inmate from outside the room.  Once outside the room, I cannot hear the content of the legal telephone call.

10.    Mr. Raniere's legal calls have been and will continue to be coordinated within the institution's normal procedures.  He has not been targeted for any restrictions on his ability to place legal telephone calls.

11.    From October 2021, when I began logging in legal calls for Mr. Raniere, through May 31, 2022, I have scheduled and facilitated approximately 32 legal telephone calls between Mr. Raniere and his attorneys with one future call scheduled for June 1, 2022.  *See* Att. 3, Legal Call Log I (Redacted) at 1-2.  The below table identifies each legal telephone call that I personally scheduled/accommodated:

| Date | Attorney Name(s) | Approximate Duration |
|------|------------------|----------------------|
| 10/04/2021 | Joseph P. Daugherty | 1.5 hr. |
| 10/07/2021 | Joseph Tully | 1 hr. |
| 10/11/2021 | Joseph Tully | 1hr. |
| 10/14/2021 | Joseph Tully | 1hr. |
| 10/20/2021 | Joseph Tully | 1hr. |
| 10/27/2021 | Joseph Tully | 1 hr. |
| 11/01/2021 | Joseph Tully | 1hr. |

| 11/09/2021 | Joseph Tully | 1hr. |
|---|---|---|
| 11/15/2021 | Paul DerOhannesian | 1hr. |
| 11/16/2021 | Joseph Tully | 1hr. |
| 12/01/2021 | Joseph Tully | 1hr. |
| 12/08/2021 | Joseph Tully | 1hr. |
| 12/15/2021 | Joseph Tully | 1hr. |
| 12/15/2021 | Seema Iyer, Esq. | 1hr. |
| 12/20/2021 | Joseph Tully | 1hr. |
| 12/21/2021 | Seema Iyer, Esq. | 1hr. |
| 02/22/2022 | Duncan Levin, Esq. | 30 min. |
| 02/23/2022 | Joseph Tully | 1 hr. |
| 02/28/2022 | Arangullo | 1hr. |
| 03/01/2022 | Joseph Tully | 1 hr. |
| 03/08/2022 | Joseph Tully | 1 hr. |
| 03/09/2022 | John Meringolo | 1 hr. |
| 03/29/2022 | Joseph Tully | 1 hr. |
| 4/25/2022 | Gregory Stoltz | 1hr. |
| 4/26/2022 | John Meringolo<br>Gregory Stoltz | 1hr.<br>1hr. |
| 4/27/2022 | Duncan Levin | 1hr. |
| 5/04/2022 | Joseph Tully | 1hr. |
| 5/09/2022 | John Meringolo | 1 hr. |

| 5/10/2022 | Joseph Tully | 1 hr. |
|---|---|---|
| 5/24/2022 | Joseph P. Daugherty | 1 hr. |
| 5/25/2022 | Joseph Tully | 1 hr. |
| 6/1/2022 | Joseph P. Daugherty<br>Gregory Stoltz | TBD |

12.     None of the above legal calls that I accommodated, including May 4, 2022, between Mr. Raniere and Mr. Tully, was disconnected.  If a legal call becomes disconnected, I attempt to call the attorney again to re-establish the legal call.

13.     On occasion when I am out of the office, other Correctional Counselors, including Counselor Ashworth, fill in for me by placing and logging legal calls for Mr. Raniere.  *See* Att. 4, Legal Call Log II (Redacted) at 1-2.  As reflected in the below table, From January 2022 and May 31, 2022, Counselor Ashworth has placed the following legal calls for Mr. Raniere:

| Date | Attorney Name(s)[6] | Approximate Duration |
|---|---|---|
| 1/5/2022 | Joseph Tully | 35 min. |
| 3/31/2022 | Joseph P. Daugherty | 1 hr. |
| 4/1/2022 | John Meringolo or Arangullo | 1 hr. |
| 4/5/2022 | Joseph Tully | 1 hr. |
| 4/7/2022 | Joseph P. Daugherty | 1 hr. |
| 4/13/2022 | Joseph P. Daugherty | 1 hr. |
| 4/14/2022 | Joseph Tully | 1 hr. |

---

[6] While the attorney names are not specifically identified on Counselor Ashworth's legal call log, I was able to cross-reference the telephone numbers to identify the attorney.

| 4/15/2022 | Joseph P. Daugherty | 1 hr. |
|---|---|---|
| 4/15/2022 | John Meringolo or Arangullo | 1 hr. |
| 4/22/2022 | Joseph P. Daugherty | 1 hr. |
| 4/28/2022 | Joseph P. Daugherty | 1 hr. |
| 4/29/2022 | Joseph Tully | 1 hr. |
| 5/12/2022 | Joseph P. Daugherty | 1 hr. |
| 5/18/2022 | Joseph Tully | 1 hr. |
| 5/20/2022 | Joseph P. Daugherty | 1 hr. |
| 5/27/2022 | Joseph P. Daugherty | 2 hrs. |

## III.   LEGAL VISITS AND LEGAL CORRESPONDENCE

14.   "The Warden shall . . . permit visits by the retained, appointed, or prospective attorney for an inmate or by an attorney who wishes to interview an inmate as a witness."  28 C.F.R. § 543.13(a).  "The attorney shall make an advance appointment for the visit through the Warden prior to each visit; however, the Warden shall make every effort to arrange for a visit when prior notification is not practical."  28 C.F.R. § 543.13(c).

15.   Mr. Raniere's attorneys have scheduled, through me and other substitute Correctional Counselors, frequent legal visits in accordance with these provisions.  These visits have been accommodated per the request of the attorney and in line with the schedule of the institution and any institutional security/safety measures (e.g., lockdown, COVID-19 protocols, etc.).

16.   Correspondence from attorneys and their approved/authorized paralegals, legal assistants, and clerks, are afforded special handling privileges in accordance with Bureau regulations and policy.  *See* 28 C.F.R. § 540.19(a)-(e) ("Mail to an inmate from an attorney's assistant or legal aid student or assistant, in order to be identified and

treated by staff as special mail, must be properly identified on the envelope as required in paragraph (b) of this section, and must be marked on the front of the envelope as being mail[ed] from the attorney or from the legal aid supervisor.").

17.     Mr. Raniere is able to send and receive legal correspondence at USP Tucson that is afforded special handling/processed per the above-cited regulations.

## IV.   ADMINISTRATIVE REMEDIES

18.     I am familiar with all four levels of the inmate administrative grievance procedure created by the Bureau Administrative Remedy Program.  *See* 28 C.F.R. §§ 542.10 - 542.19.

19.     The Bureau has a four-tiered Administrative Remedy Program for inmate grievances, which is codified at 28 C.F.R. § 542.10 *et seq.*  The first step is informal resolution with prison staff.  28 C.F.R. § 542.13(a).  Requests for Informal Resolution Forms (also known as a BP-8) are not assigned a Remedy ID number and are not tracked. B-8 forms require the inmate to identify: (1) the inmate's complaint; (2) the relief the inmate is requesting; and (3) efforts made by the inmate to informally resolve the complaint, including the names of the staff he contacted.  *See* 28 C.F.R. § 542.13(a) ("Each Warden shall establish procedures to allow for the informal resolution of inmate complaints.").  The second step is the filing of a formal Request for Administrative Remedy (also known as a BP-9) at the institution in which the inmate is incarcerated. *See* 28 C.F.R. § 542.14.  The BP-9 must be filed within "20 calendar days following the date on which the basis for the Request occurred."  *See* 28 C.F.R. § 542.14(a).  If the inmate feels the response to his BP-9 is not satisfactory, within 20 calendar days of the date the Warden signed the response, the inmate may then appeal the complaint to the Regional Director, by filing a Regional Office Administrative Remedy Appeal (also known as a BP-10).  *See* 28 C.F.R. § 542.15(a).  If dissatisfied with the Regional Director's response, the inmate may appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington D.C., by filing a Central Office Administrative Remedy Appeal (also known as a BP-11).  *Id.*  An inmate may not raise in an appeal an issue he did not raise in a lower level filing.  *See* 28 C.F.R. § 542.15(b)(2).

The Administrative Remedy Coordinator at any level may reject and return to the inmate without response a Request for Administrative Remedy or appeal that does not meet procedural requirements as outlined in the Code of Federal Regulations. *See* 28 C.F.R. § 542.17(a).

20.     An inmate has not exhausted his administrative remedies until he has properly sought review at all three formal levels. *Id.*

21.     Since July 1990, the Bureau has maintained information related to administrative complaints filed by inmates under the Bureau Administrative Remedy Program in SENTRY.  One of the many functions of the SENTRY database is to track administrative remedy complaints and appeals, and it allows one to complete a computerized search of complaints and appeals filed by a specific inmate.

22.     Each formal complaint (i.e., BP-9, BP-10, and BP-11) is logged into SENTRY at the receiving location.  If the complaint is an initial filing, it receives a unique Remedy ID Number upon initial entry, which follows the complaint throughout the appeal process.  Each Remedy ID Number also contains an extender that identifies the level of review.  The extension F-1 indicates the complaint was filed at the institution level (BP-9).  The extension R-1 indicates the complaint or appeal was filed at the regional level (BP-10).  The extension A-1 indicates the appeal was filed at the national level (BP-11).  So, for example, a formal complaint may be identified as 123456-F1 when filed as a BP-9 at the institution level, as 123456-R1 when filed as a BP-10 at the regional level, and as 123456-A1 when filed as a BP-11 at the national level.  That is, the unique Remedy ID number follows the complaint through the process but the extension changes to reflect the level at with the complaint is filed.  The number at the end of the extension may change if the remedy or appeal is initially rejected[7] and is then re-filed due to a technical problem, such as improper form, failing to include documentation, or improper filing at that level (i.e., 123456-F1; 123456-F2, etc.).

_____

[7] Per 28 C.F.R. 542.17(a), the administrative remedy coordinator at any level (BP-9, BP-10, and BP-11) may reject and return to the inmate without a response an administrative remedy and/or appeal that "does not meet any other requirements of this part."

### A.   Inmate Access to Remedy Forms at USP Tucson

23.    Inmates have access to the Code of Federal Regulations and Bureau Program Statements, including Program Statement 1330.18, *Administrative Remedy Program*,[8] through the institution law library and the Electronic Law Library.  *See* Program Statement 1315.07, *Inmate Legal Activities* at 4, Att. A at 1-2 (identifying required main law library materials such as "Title 28 of the Code of Federal Regulations" and "All current Bureau of Prisons Program Statements which contain rules codified in Chapters III or V of Title 28 of the Code of Federal Regulations" which includes the procedures outlined in the Administrative Remedy Program).[9]

24.    When an inmate arrives at USP Tucson, he participates in an Admission and Orientation (A&O) Program, during which the inmate is introduced to important aspects of the institution and the housing unit to which the inmate is assigned.  The A&O Program includes instructions on the Bureau's Administrative Remedy Program, how to obtain and submit the appropriate forms, and how to exhaust claims through all levels of the Administrative Remedy Program.  *See* Att. 5, USP Tucson Inmate A&O Handbook Excerpt (Jan. 2017) at 38-39.  Additionally, staff members give new inmates a copy of the A&O Handbook, which provides valuable information about the institution's operations, including the Administrative Remedy Program.  *Id.* at 38-39.

25.    At USP Tucson, in order to file an administrative remedy or appeal, an inmate may obtain the appropriate forms from, and submit completed forms to, any Unit Team member.  The Unit Team is comprised of the Unit Manager, Case Manager, Correctional Counselor, and Unit Secretary.  *Id.* at 3, 38 ("All Administrative Remedy forms may be obtained from your assigned Correctional Counselor or Unit Team member."); *see also* 28 C.F.R. § 542.14(c)(1) (Inmates "shall obtain the appropriate form from . . . institution staff (ordinarily, the correctional counselor."); *see also* Att. 6, TCX

---

[8] Also available at https://www.bop.gov/policy/progstat/1330_018.pdf (last visited on Jan. 7, 2022).

[9] Available at https://www.bop.gov/policy/progstat/1315_007.pdf (last visited on Jan. 7, 2022).

1330.18B, *Administrative Remedy Program* at 3 ("Only unit team members may issue form BP-229, Request for Administrative Remedy (BP-9) to inmates, including those housed in the [SHU]"). While the "Correctional Counselor will initial, date, and write the inmate's last name on the top right hand section of the form for accountability purposes[,]" there is no requirement that an inmate provide a reason for needing an administrative remedy form in order to obtain that form. *See* Att. 5 at 3.

26.     "An Inmate Request to Staff Member (form BP-S148), commonly called a Cop-Out, is used to make a written request to a staff member. Any type of request can be made with this form[,]" to include if an inmate believes that his Unit Team is not providing him with administrative remedy forms or is not properly processing administrative remedy forms. *See* Att. 4 at 38. These requests or "cop-outs" can be made to any staff member, including Associate Wardens and the Warden. An inmate may file an inmate request to staff (cop-out), informal grievance (BP-8), or formal grievance (BP-9, BP-10, or BP-11) while in general population or while housed in the SHU. *See* 28 C.F.R. § 541.31(o) ("You can submit a formal grievance challenging any aspect of your confinement in the SHU through the Administrative Remedy Program[.]").

27.     "If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director." *See* 28 C.F.R. § 542.14(d)(1); Att. 4 at 39 ("If an inmate believes a complaint is of a sensitive nature and he would be adversely affected if the complaint became known to the institution, he may file the complaint directly to the Regional Director.").

28.     If an inmate has an issue that he wants to bring to the attention of staff, he can do so via a written request (cop-out) at any time, as detailed above, or during in-person meetings with multiple Unit Team, and other, staff.

**B.     Plaintiff's Administrative Remedy History**

29.     I have reviewed the SENTRY information identifying the number and types of administrative remedies and appeals filed by Mr. Raniere.

30.     During Mr. Raniere's incarceration with the Bureau, he has filed one appeal

(BP-10). *See* Att. 7, SENTRY Administrative Remedy Index at 1-2. He has not filed a Request for Administrative Remedy (BP-9) or appeal to the General Counsel (BP-11) on any subject. *Id.*

31.   In Remedy No. 1111640-R1, Mr. Raniere appealed discplinary sanctions imposed against him following an October 26, 2021, disciplinary hearing associated with Incident Report No. 3547878. *Id.* at 2. His appealed was denied and he did not appeal further.

32.   He has not filed any administrative remedies or appeals regarding lack of access to legal calls, his social telephone contact list, or his general access to his attorneys.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 31st day of May 2022, in Tucson, Arizona.

Daniel Flores
Correctional Counselor
USP Tucson, Arizona
Federal Bureau of Prisons

**Enclosures**

Att. 1, SENTRY Public Information

Att. 2, Judgment in a Criminal Case

Att. 3, Legal Call Log I (Redacted)

Att. 4, Legal Call Log II (Redacted)

Att. 5, USP Tucson Inmate A&O Handbook Excerpt (Jan. 2017)

Att. 6, TCX 1330.18B, *Administrative Remedy Program*

Att. 7, SENTRY Administrative Remedy Index

- 12 -

# Exhibit A
# Attachment 1

```
PHXC4            *        PUBLIC INFORMATION        *        05-05-2022
PAGE 001         *            INMATE DATA           *        10:30:08
                          AS OF 05-05-2022


REGNO..: 57005-177 NAME: RANIERE, KEITH

                     RESP OF: TCP
                     PHONE..: 520-663-5000    FAX: 520-663-5024
                                              RACE/SEX...: WHITE / MALE
                                              AGE:  61
PROJ REL MT: GOOD CONDUCT TIME RELEASE        PAR ELIG DT: N/A
PROJ REL DT: 06-27-2120                       PAR HEAR DT:




G0002       MORE PAGES TO FOLLOW . . .
```

**Ex. A, Att. 1, p. 1**

```
PHXC4            *      PUBLIC INFORMATION       *      05-05-2022
PAGE 002         *         INMATE DATA           *      10:30:08
                         AS OF 05-05-2022


REGNO..: 57005-177 NAME: RANIERE, KEITH

                     RESP OF: TCP
                     PHONE..: 520-663-5000   FAX: 520-663-5024
FSA ELIGIBILITY STATUS IS: INELIGIBLE


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.


HOME DETENTION ELIGIBILITY DATE....: 12-27-2119


THE INMATE IS PROJECTED FOR RELEASE: 06-27-2120 VIA GCT REL


---------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: NEW YORK, EASTERN DISTRICT
DOCKET NUMBER...................: CR 18-0204(S-2)(NGG)
JUDGE...........................: GARAUFIS
DATE SENTENCED/PROBATION IMPOSED: 10-27-2020
DATE COMMITTED..................: 01-21-2021
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                  FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $700.00        $00.00         $1,750,000.00  $00.00
  JVTA........: $15,000.00


RESTITUTION...: PROPERTY:  NO  SERVICES:  NO        AMOUNT: $00.00


-----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  545     18:1962 RACKETEER (RICO)
OFF/CHG: 18:1962(D),18:1963(A) RACKETEERING CONSPIRACY CT.1
         18:1962(C),18:1963(A) RACKETEERING CT.2

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   480 MONTHS
 TERM OF SUPERVISION............:     5 YEARS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: CS TO 020/030/040
 DATE OF OFFENSE................: 03-31-2018





 G0002      MORE PAGES TO FOLLOW . . .
```

**Ex. A, Att. 1, p. 2**

```
PHXC4            *       PUBLIC INFORMATION        *      05-05-2022
PAGE 003         *          INMATE DATA            *      10:30:08
                         AS OF 05-05-2022
```

REGNO..: 57005-177 NAME: RANIERE, KEITH

```
                 RESP OF: TCP
                 PHONE..: 520-663-5000   FAX: 520-663-5024
------------------------CURRENT OBLIGATION NO: 020 -------------------------
OFFENSE CODE....:  576    18:1589-90 FORCED LABOR
OFF/CHG: 18:1594(B) FORCED LABOR CONSPIRACY CT.6

  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:  240 MONTHS
  TERM OF SUPERVISION............:    3 YEARS
  RELATIONSHIP OF THIS OBLIGATION
   TO OTHERS FOR THE OFFENDER....: CS TO 010/030/040
  DATE OF OFFENSE................: 03-31-2018

------------------------CURRENT OBLIGATION NO: 030 -------------------------
OFFENSE CODE....:  820    COMMUNICATIONS ACT
OFF/CHG: 18:1349,18:1343 WIRE FRAUD CONSPIRACY CT.7

  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:  240 MONTHS
  TERM OF SUPERVISION............:    3 YEARS
  RELATIONSHIP OF THIS OBLIGATION
   TO OTHERS FOR THE OFFENDER....: CS TO 010/020/040
  DATE OF OFFENSE................: 03-31-2018

------------------------CURRENT OBLIGATION NO: 040 -------------------------
OFFENSE CODE....:  571    18:1591 SEX TRAFFICK CHILD
OFF/CHG: 18:1594(C),18:1591(B)(1) SEX TRAFF CONSP CT.8; 18:1591(A)(1),
        18:1591(B)(1) SEX TRAFF JANE DOE 5 CT.9; 18:1594(A),18:1591(B)
        (1) ATTEMPTED SEX TRAFF JANE DOE 8 CT.10

  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:  480 MONTHS
  TERM OF SUPERVISION............: LIFE
  RELATIONSHIP OF THIS OBLIGATION
   TO OTHERS FOR THE OFFENDER....: CS TO 010/020/030
  DATE OF OFFENSE................: 03-31-2018
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

```
PHXC4            *       PUBLIC INFORMATION       *      05-05-2022
PAGE 004         *          INMATE DATA           *      10:30:08
                        AS OF 05-05-2022


REGNO..: 57005-177 NAME: RANIERE, KEITH

                    RESP OF: TCP
                    PHONE..: 520-663-5000   FAX: 520-663-5024


------------------------CURRENT COMPUTATION NO: 010 ------------------------


COMPUTATION 010 WAS LAST UPDATED ON 12-21-2020 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 12-31-2020 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 010 020, 010 030, 010 040


DATE COMPUTATION BEGAN..........: 10-27-2020
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:  120 YEARS
TOTAL TERM IN EFFECT CONVERTED..:  120 YEARS
AGGREGATED TERM OF SUPERVISION..: LIFE
EARLIEST DATE OF OFFENSE........: 03-31-2018


JAIL CREDIT.....................:    FROM DATE    THRU DATE
                                    03-26-2018   10-26-2020


TOTAL PRIOR CREDIT TIME.........: 946
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 6480
TOTAL GCT EARNED................: 216
STATUTORY RELEASE DATE PROJECTED: 06-27-2120
ELDERLY OFFENDER TWO THIRDS DATE: 03-26-2098
EXPIRATION FULL TERM DATE.......: 03-25-2138
TIME SERVED.....................:    4 YEARS       1 MONTHS      10 DAYS
PERCENTAGE OF FULL TERM SERVED..:  3.4
PERCENT OF STATUTORY TERM SERVED:  4.0




G0002        MORE PAGES TO FOLLOW . . .
```

```
PHXC4              *          PUBLIC INFORMATION           *      05-05-2022
PAGE 005 OF 005 *                   INMATE DATA            *      10:30:08
                                 AS OF 05-05-2022

REGNO..: 57005-177 NAME: RANIERE, KEITH

                      RESP OF: TCP
                      PHONE..: 520-663-5000    FAX: 520-663-5024

PROJECTED SATISFACTION DATE.....: 06-27-2120
PROJECTED SATISFACTION METHOD...: GCT REL
```

```
G0000          TRANSACTION SUCCESSFULLY COMPLETED
```

Ex. A, Att. 1, p. 5

Exhibit A
Attachment 2

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>KEITH RANIERE | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:  CR 18-0204 (S-2) (NGG)<br><br>USM Number:  57005-177<br><br>Marc A. Agnifilo, Esq.<br>Defendant's Attorney |

## THE DEFENDANT:

**X**   was found guilty by jury  verdict on Counts 1, 2, 6, 7, 8, 9 & 10 of the Superseding Indictment (S-2).

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|---|
| SEE PAGE 2 OF<br>JUDGMENT | | | |

The defendant is sentenced as provided in pages 2 through ___11___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

**X**   Any underlying Indictment is dismissed by motion of  the United States.

**X**   Counts 3, 4, 5 & 11 of the Superseding Indictment (S-2) are dismissed by motion of the United States before trial.

☐ Count(s) _____  ☐ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

October 27, 2020
Date of Imposition of Judgment

Signature of Judge

Nicholas G. Garaufis, U.S.D.J.
Name and Title of Judge

October 30, 2020
Date

DEFENDANT:     **KEITH RANIERE**
CASE NUMBER:   **CR 18-0204 (S-2)(NGG)**

# ADDITIONAL COUNTS OF CONVICTION

**Offense:**

**Count 1**:
RACKETEERING CONSPIRACY
18 U.S.C. §1962(d), 18 U.S.C. §1963(a)
Not more than life imprisonment/$250,000 fine
(Class A Felony)

**Count 2**:
RACKETEERING
18 U.S.C. §1962(c), 18 U.S.C. §1963(a)
Not more than life imprisonment/$250,000 fine
(Class A Felony)

**Count 6**:
FORCED LABOR CONSPIRACY
18 U.S.C. §1594(b)
Not more than 20 years imprisonment/$250,000 fine
(Class C Felony)

**Count 7**:
WIRE FRAUD CONSPIRACY
18 U.S.C. §1349, 18 U.S.C. §1343
Not more than 20 years imprisonment/$250,000 fine
(Class C Felony)

**Count 8**:
SEX TRAFFICKING CONSPIRACY
18 U.S.C. §1594(c), 18 U.S.C. §1591(b)(1)
15 years to life imprisonment/$250,000 fine
(Class A Felony)

**Count 9**:
SEX TRAFFICKING OF JANE DOE 5
18 U.S.C. §1591(a)(1), 18 U.S.C. §1591(b)(1)
15 years to life imprisonment/$250,000 fine
(Class A Felony)

**Count 10**:
ATTEMPTED SEX TRAFFICKING OF JANE DOE 8
18 U.S.C. §1594(a), 18 U.S.C. §1591(b)(1)
15 years to life imprisonment/$250,000 fine
(Class A Felony)

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page    3    of    11

DEFENDANT: **KEITH RANIERE**
CASE NUMBER: CR 18-0204 (S-2) (NGG)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:    **SEE PAGE 4 OF JUDGMENT.**

.

☐ The court makes the following recommendations to the Bureau of Prisons:

X  The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____ ☐ a.m. ☐ p.m.   on _____ .

    ☐  as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**Ex. A, Att. 2, p. 3**

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 2A — Imprisonment

Judgment—Page __4__ of __11__

DEFENDANT: KEITH RANIERE
CASE NUMBER: CR 18-0204 (S-2) (NGG)

# ADDITIONAL IMPRISONMENT TERMS

FORTY (40) YEARS (480 MONTHS) (CAG) ON COUNT ONE (1) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONCURRENTLY WITH THE SENTENCE ON COUNT 2 AND CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

FORTY (40) YEARS (480 MONTHS) (CAG) ON COUNT TWO (2) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONCURRENTLY WITH THE SENTENCE IMPOSED ON COUNT 1 AND CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

TWENTY (20) YEARS (240 MONTHS) (CAG) ON COUNT SIX (6) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

TWENTY (20) YEARS (240 MONTHS) (CAG) ON COUNT SEVEN (7) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

FORTY (40) YEARS (480 MONTHS) (CAG) ON COUNT EIGHT (8) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONCURRENTLY WITH THE SENTENCES IMPOSED ON COUNTS 9 AND 10, AND CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

FORTY (40) YEARS (480) MONTHS (CAG) ON COUNT NINE (9) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONCURRENTLY WITH THE SENTENCES ON COUNTS 8 AND 10, AND CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

FORTY (40) YEARS (480) MONTHS (CAG) ON COUNT TEN (10) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONCURRENTLY WITH THE SENTENCES ON COUNTS 8 AND 9, AND CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED.

TO SUMMARIZE, THIS IS A CUMULATIVE SENTENCE OF 120 YEARS (CAG).

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 3 — Supervised Release

DEFENDANT: **KEITH RANIERE**
CASE NUMBER: CR 18-0204 (S-2) (NGG)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: FIVE (5) YEARS ON COUNT ONE (1) OF THE SUPERSEDING INDICTMENT (S-2). FIVE (5) YEARS ON COUNT TWO (2) OF THE SUPERSEDING INDICTMENT (S-2). THREE (3) YEARS ON COUNT SIX (6) OF THE SUPERSEDING INDICTMENT (S-2). THREE (3) YEARS ON COUNT SEVEN (7) OF THE SUPERSEDING INDICTMENT (S-2). A LIFETIME TERM ON COUNT EIGHT (8) OF THE SUPERSEDING INDICTMENT (S-2). A LIFETIME TERM ON COUNT NINE (9) OF THE SUPERSEDING INDICTMENT (S-2). A LIFETIME TERM ON COUNT TEN (10) OF THE SUPERSEDING INDICTMENT (S-2). ALL TERMS OF SUPERVISED RELEASE TO BE SERVED CONCURRENTLY WITH ONE ANOTHER.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | | Judgment—Page | 6 | of | 11 |

**DEFENDANT:** KEITH RANIERE
**CASE NUMBER:** CR 18-0204 (S-2) (NGG)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____  Date _____

Ex. A, Att. 2, p. 6

DEFENDANT: KEITH RANIERE
CASE NUMBER: CR 18-0204 (S-2)(NGG)

## SPECIAL CONDITIONS OF SUPERVISION

#1. The defendant shall comply with any applicable state and/or federal sex offender registration requirements, as instructed by the probation officer, the Bureau of Prisons, or any state offender registration agency in the state where he resides, works, or is a student;

#2. The defendant shall participate in a mental health treatment program, which may include participation in a treatment program for sexual disorders, as approved by the U.S. Probation Department. The defendant shall contribute to the cost of such services rendered and/or any psychotropic medications prescribed to the degree he is reasonably able, and shall cooperate in securing any applicable third-party payment. The defendant shall disclose all financial information and documents to the Probation Department to assess his ability to pay. As part of the treatment program for sexual disorders, the defendant shall participate in polygraph examinations to obtain information necessary for risk management and correctional treatment;

#3. The defendant shall not associate with or have any contact with convicted sex offenders unless in a therapeutic setting and with the permission of the U.S. Probation Department;

#4. The defendant shall not associate with children under the age of 18, unless a responsible adult is present and he has prior approval from the Probation Department. Prior approval does not apply to contacts which are not known in advance by the defendant where children are accompanied by a parent or guardian or for incidental contacts in a public setting. Any such non-pre-approved contacts with children must be reported to the Probation Department as soon as practicable, but no later than 12 hours. Upon commencing supervision, the defendant shall provide to the Probation Department the identity and contact information regarding any family members or friends with children under the age of 18, whom the defendant expects to have routine contact with, so that the parents or guardians of these children may be contacted and the Probation Department can approve routine family and social interactions such as holidays and other family gatherings where such children are present and supervised by parents or guardians without individual approval of each event;

#5. If the defendant cohabitates with an individual who has residential custody of minor children, the defendant will inform that other party of his prior criminal history concerning his sex offense. Moreover, he will notify the party of his prohibition of associating with any child(ren) under the age of 18, unless a responsible adult is present;

#6. The defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner;

| DEFENDANT: | KEITH RANIERE | Judgment—Page    8    of    11 |
|---|---|---|
| CASE NUMBER: | CR 18-0204 (S-2)(NGG) | |

## SPECIAL CONDITIONS OF SUPERVISION

#7.  The defendant is not to use a computer, Internet capable device, or similar electronic device to access pornography of any kind. The term "pornography" shall include images or video of adults or minors engaged in "sexually explicit conduct" as that term is defined in Title 18, U.S.C. § 2256(2).  The defendant shall also not use a computer, Internet capable device or similar electronic device to view images of naked children. The defendant shall not use his computer to view pornography or images of naked children stored on related computer media, such as CDs or DVDs, and shall not communicate via his computer with any individual or group who promotes the sexual abuse of children. The defendant shall also cooperate with the U.S. Probation Department's Computer and Internet Monitoring program. Cooperation shall include, but not be limited to, identifying computer systems, Internet capable devices, and/or similar electronic devices the defendant has access to, and allowing the installation of monitoring software/hardware on said devices, at the defendant's expense. The defendant shall inform all parties that access a monitored computer, or similar electronic device, that the device is subject to search and monitoring. The defendant may be limited to possessing only one personal Internet capable device, to facilitate the Probation Department's ability to effectively monitor his/her Internet related activities. The defendant shall also permit random examinations of said computer systems, Internet capable devices, similar electronic devices, and related computer media, such as CDs, under his control.

#8.  The defendant shall report to the Probation Department any and all electronic communications service accounts (as defined in 18 U.S.C. § 2510(15)) used for user communications, dissemination and/or storage of digital media files (i.e. audio, video, images). This includes, but is not limited to, email accounts, social media accounts, and cloud storage accounts. The defendant shall provide each account identifier and password, and shall report the creation of new accounts, changes in identifiers and/or passwords, transfer, suspension and/or deletion of any account within 5 days of such action. Failure to provide accurate account information may be grounds for revocation of release. The defendant shall permit the Probation Department to access and search any account(s) using the defendant's credentials pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the account(s) to be searched contains evidence of this violation. Failure to submit to such a search may be grounds for revocation of release.

#9.  Upon request, the defendant shall provide the U.S. Probation Department with full disclosure of his financial records, including co-mingled income, expenses, assets and liabilities, to include yearly income tax returns. With the exception of the financial accounts reported and noted within the presentence report, the defendant is prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge and approval of the U.S. Probation Department. The defendant shall cooperate with the probation officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income and expenses. The defendant shall cooperate in the signing of any necessary authorization to release information forms permitting the U.S. Probation Department access to his financial information and records;

DEFENDANT: KEITH RANIERE

CASE NUMBER: CR 18-0204 (S-2)(NGG)

## SPECIAL CONDITIONS OF SUPERVISION

#10. The defendant shall not have contact with any of the named victims of his offenses. This means that he shall not attempt to meet in person, communicate by letter, telephone, or through a third party, without the knowledge and permission of the Probation Department;

#11. The defendant shall not associate in person, through mail, electronic mail or telephone with any individual with an affiliation to Executive Success Programs, Nxivm, DOS or any other Nxivm-affiliated organizations; nor shall the defendant frequent any establishment, or other locale where these groups may meet pursuant, but not limited to, a prohibition list provided by the U.S. Probation Department;

#12.   The defendant shall comply with the fine payment order;

#13.   The defendant shall comply with the attached Order of Forfeiture.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 5 — Criminal Monetary Penalties

| | | Judgment — Page __10__ of ___11___ |
|---|---|---|

DEFENDANT:         KEITH RANIERE
CASE NUMBER:       CR 18-0204 (S-2) (NGG)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | Forfeiture Money Judgment | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $  700.00 | $ TBD | $   1,750,000.00 | $ N/A | $  15,000.00 |

☐   The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

   If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| TOTALS | $ _____ | $ _____ | |

☐   Restitution amount ordered pursuant to plea agreement  $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐   the interest requirement is waived for the   ☐   fine   ☐   restitution.

   ☐   the interest requirement for the   ☐   fine   ☐   restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 6 — Schedule of Payments

| DEFENDANT: | KEITH RANIERE | Judgment — Page   11   of   11 |
|---|---|---|
| CASE NUMBER: | CR 18-0204 (S-2) (NGG) | |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   X   **Special Assessment of $ 700.00**    due immediately, balance due

     ☐   not later than _____ , or
     ☐   in accordance with   ☐   C,   ☐   D,   ☐   E, or    ☐   F below; or

B   ☐   .                        ☐     ☐ D, or    ☐ F below); or

C   X
      ☐   **Fine Payment of $1,750,000.00 due immediately.**
                 (                                over a period of
        _____   *(e.g., months or years)*, to commence    _____   *(e.g., 30 or 60 days)* after the date of this judgment; or

D   ☐   Payment in equal   _____   *(e.g., weekly, monthly, quarterly)* installments of $   _____   over a period of
        _____   *(e.g., months or years)*, to commence   _____   *(e.g., 30 or 60 days)* after release from imprisonment to a
        term of supervision; or

E    . 
     X   **JVTA assessment of $15,000.00**

F   X   **Order of Restitution to be determined**

        **An Order of Restitution must be submitted within 90 days from October 27, 2020.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

     Case Number
     Defendant and Co-Defendant Names   ·
     *(including defendant number)*        **Total Amount**        **Joint and Several Amount**        **Corresponding Payee, if appropriate**

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

BDM:KKO
F. #2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

        – against –

KEITH RANIERE,

              Defendant.

– – – – – – – – – – – – – – – –X

<u>ORDER OF FORFEITURE</u>

18-CR-204 (S-2) (NGG)

WHEREAS, on or about June 19, 2019, Keith Raniere, also known as "Vanguard," "Grandmaster," and "Master" (the "defendant"), was convicted after a jury trial of Counts One, Two, and Six through Ten, of the above-captioned Superseding Indictment, charging violations of 18 U.S.C. §§ 1349, 1591(a)(1), 1594(a), 1594(b), 1594(c), 1962(c), and 1962(d); and

WHEREAS, the Court has determined that pursuant to 18 U.S.C. § 1963(a), the defendant shall forfeit: (a) any interest the defendant acquired or maintained in violation of 18 U.S.C. § 1962; (b) any interest in, security of, claim against or property or contractual right of any kind affording a source of influence over any enterprise which the defendant has established, operated, controlled, conducted or participated in the conduct of, in violation of 18 U.S.C. § 1962; (c) any property constituting, or derived from, any proceeds which the defendant obtained, directly or indirectly, from racketeering activity in violation of 18 U.S.C. § 1962; and/or (d) substitute assets, pursuant to 18 U.S.C. § 1963(m), which shall be reduced to a forfeiture money judgment (the "Forfeiture Money Judgment").

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND
DECREED as follows:

1. The defendant shall forfeit to the United States the Forfeiture Money
Judgment, pursuant to 18 U.S.C. §§ 1963(a) and 1963(m).

2. This Order of Forfeiture ("Order") is entered pursuant to Fed. R. Crim.
P. 32.2(b)(2)(c), and will be amended pursuant to Fed. R. Crim. P. 32.2(e)(1) when the
amount of the Forfeiture Money Judgment has been calculated.

3. All payments made towards the Forfeiture Money Judgment shall be
made by a money order, or certified and/or official bank check, payable to U.S. Marshals
Service with the criminal docket number noted on the face of the check. The defendant shall
cause said payment(s) to be sent by overnight mail delivery to Assistant United States
Attorney Karin K. Orenstein, United States Attorney's Office, Eastern District of New York,
271-A Cadman Plaza East, Brooklyn, New York 11201, with the criminal docket number
noted on the face of the instrument. The Forfeiture Money Judgment shall become due and
owing in full thirty (30) days after any amendment of this Order pursuant to Rule 32.2(e)(1)
(the "Due Date").

4. If the defendant fails to pay any portion of the Forfeiture Money
Judgment on or before the Due Date, the defendant shall forfeit any other property of his up
to the value of the outstanding balance, pursuant to 18 U.S.C. § 1963(m).

5. Upon entry of this Order, the United States Attorney General or his
designee is authorized to conduct any proper discovery in accordance with Fed. R. Crim. P.
32.2(b)(3) and (c). The United States alone shall hold title to the monies paid by the

---

defendant to satisfy the Forfeiture Money Judgment following the Court's entry of the judgment of conviction.

6. The defendant shall fully assist the government in effectuating the payment of the Forfeiture Money Judgment.

7. The entry and payment of the Forfeiture Money Judgment is not to be considered a payment of a fine, penalty, restitution loss amount or a payment of any income taxes that may be due, and shall survive bankruptcy.

8. Pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B), this Order of Forfeiture shall become final as to the defendant at the time of sentencing and shall be made part of the sentence and included in the judgment of conviction. This Order shall become the Final Order of Forfeiture, pursuant to Fed. R. Crim. P. 32.2(c)(2) and (e)(1). At that time, the monies and/or properties paid toward the Forfeiture Money Judgment shall be forfeited to the United States for disposition in accordance with the law.

9. This Order shall be binding upon the defendant and the successors, administrators, heirs, assigns and transferees of the defendant, and shall survive the bankruptcy of any of them.

10. This Order shall be final and binding only upon the Court's "so ordering" of the Order.

---

11.     The Court shall retain jurisdiction over this action to enforce compliance with the terms of this Order and to amend it as necessary, pursuant to Fed. R. Crim. P. 32.2(e).

Dated:   Brooklyn, New York
              Oct 26           , 2020

SO ORDERED:

_____
HONORABLE NICHOLAS G. GARAUFIS
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF NEW YORK

18-CR-204 (S-2) (NGG)          *United States v. Keith Raniere*
                                  Order of Forfeiture

                                                           Page 4

Exhibit A
Attachment 3

Legal Call Log

| Date | IM Name/Reg. No.<br><br>**RANIERE,  Reg. No. 57005-177**<br><br>Attorney Name/Number | Call Duration | Staff |
|---|---|---|---|
| 10/04/2021 | Joseph P. Daugherty ▮▮▮▮▮▮ | 1.5 hr. | D. Flores CCC |
| 10/07/2021 | Joseph Tully ▮▮▮▮▮ | 1 hr. | D. Flores CCC |
| 10/11/2021 | Joseph Tully ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 10/14/2021 | Joseph Tully ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 10/20/2021 | Joseph Tully ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 10/27/2021 | Joseph Tully ▮▮▮▮▮ | 1 hr. | D. Flores CCC |
| 11/01/2021 | Joseph Tully ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 11/09/2021 | Joseph Tully ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 11/15/2021 | Paul DerOhannesian ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 11/16/2021 | Joseph Tully ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 12/01/2021 | Joseph Tully ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 12/08/2021 | Joseph Tully ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 12/15/2021 | Joseph Tully ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 12/15/2021 | Seema Iyer, Esq. ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 12/20/2021 | Joseph Tully ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 12/21/2021 | Seema Iyer, Esq. ▮▮▮▮▮ | 1hr. | D. Flores CCC |
| 02/22/2022 | Duncan Levin, Esq. ▮▮▮▮▮ | 30 min. | D. Flores CCC |
| 02/23/2022 | Joseph Tully ▮▮▮▮▮ | 1 hr. | D. Flores CCC |

Legal Call Log

| | | | |
|---|---|---|---|
| 02/28/2022 | Arangullo ███████ | 1hr. | D. Flores CCC |
| 03/01/2022 | Joseph Tully ███████ | 1 hr. | D. Flores CCC |
| 03/08/2022 | Joseph Tully ███████ | 1 hr. | D. Flores CCC |
| 03/09/2022 | John Meringolo ███████ | 1 hr. | D. Flores CCC |
| 03/29/2022 | Joseph Tully ███████ | 1 hr. | D. Flores CCC |
| 4/25/2022 | Gregory Stoltz ███████ | 1hr. | D. Flores |
| 4/26/2022 | John Meringolo ███████<br><br>Gregory Stoltz ███████ | 1hr.<br><br>1hr. | D. Flores |
| 4/27/2022 | Duncan Levin ███████ | 1hr. | D. Flores |
| 5/04/2022 | Joseph Tully ███████ | 1hr. | D. Flores |
| 5/09/2022 | John Meringolo ███████ | 1 hr. | D. Flores |
| 5/10/2022 | Joseph Tully ███████ | 1 hr. | D. Flores |
| 5/24/2022 | Joseph P. Daugherty ███████ | 1hr. | D. Flores |
| 5/25/2022 | Joseph Tully ███████ | 1hr. | D. Flores |
| 6/1/2022 | Joseph P. Daugherty ███████<br><br>Gregory Stoltz ███████ | | D.Flores |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Exhibit A
Attachment 4

Phone log:

| Date | Inmate Name & # | Phone # | got thru | I/M sign | Length | Staff |
|---|---|---|---|---|---|---|
| 11-17-21 | | | | | | Ashworth / BB Legal |
| 12-9-21 | | | | | | Ashworth / BB Legal |
| 1-5-22 | | | | | | Ashworth / BB Legal |
| 1-5-22 | Raniere 57005-177 | | yes | Raniere | 1 hr. | Ashworth / BB Legal |
| 3-23-22 | | | | | | Ashworth / BB Legal |
| 3-29-22 | | | | | | Ashworth / BB Legal |
| 3-29-22 | | | | | | Ashworth / BB Legal |
| 3-30-22 | | | | | | Ashworth / BB Legal |
| 3-31-22 | Raniere 57005-177 | | yes | R | 1 hr. | Ashworth / BB Legal |
| 4-1-22 | Raniere 57005-177 | | yes | R | 1 hr. | Ashworth / BB Legal |
| 4-5-22 | | | | | | Ashworth / BB Legal |
| 4-5-22 | Raniere 57005-177 | | yes | R | 1 hr. | Ashworth / BB Legal |
| 4-7-22 | Raniere 57005-177 | | yes | R | 1 hr. | Ashworth / BB Legal |
| 4-13-22 | Raniere 57005-177 | | yes | R | 1 hr. | Ashworth / BB Legal |
| 4-14-22 | Raniere 57005-177 | | yes | R | 1 hr. | Ashworth / BB Legal |
| 4-15-22 | Raniere 57005-177 | | yes | R | 1 hr. | Ashworth / BB Legal |

Phone log:

| Date | Inmate Name & # | Phone # | got thru | I/M sign | Length | Staff |
|------|-----------------|---------|----------|----------|--------|-------|
| 4-15-22 | Raniere 57005-177 | | yes | RAR | 1hr. | Ashworth |
| 4-22-22 | Raniere 57005-177 | | yes | RAR | 1hr. | Ashworth |
| 4-28-22 | Raniere 57005-177 | | yes | RAR | 1hr. | Ashworth |
| 4-29-22 | Raniere 57005-177 | | yes | RAR | 1hr. | Ashworth |
| 5-10-22 | | | | | | Ashworth |
| 5-11-22 | | | | | | Ashworth |
| 5-11-22 | | | | | | Ashworth |
| 5-12-22 | Raniere 57005-177 | | yes | RAR | 1hr. | Ashworth |
| 5-18-22 | Raniere 57005-177 | | yes | RAR | 1hr. | Ashworth |
| 5-20-22 | Raniere 57005-177 | | yes | RAR | 1hr. | Ashworth |
| 5-25-22 | | | | | | Ashworth |
| 5-26-22 | | | | | | Ashworth |
| 5-27-22 | Raniere 57005-177 | | yes | RAR | 2hr. | Ashworth |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Exhibit A
Attachment 5

# INMATE
# ADMISSION & ORIENTATION
# HANDBOOK



## UNITED STATES PENITENTIARY
## TUCSON, ARIZONA

UPDATED:  January 2017

## INTRODUCTION

USP Tucson is a Sex Offender Management Program (SOMP) institution. A primary goal of SOMP institution is to reduce the need to place sexual offenders in protective custody, and to create an institution climate conducive to voluntary participation in treatment. To achieve this goal, SOMP criterion are applied to all inmates at SOMP designated institutions to assist in the effective management of the Bureau's population of sexual offenders and to provide services that minimize this population's risk for sexual re-offense. Effective management of sexual offenders in prisons requires modifications and restrictions in property, mail, correspondence, and visitation for ALL inmates.

## INTAKE, CLASSIFICATION AND THE UNIT TEAM

**Orientation:** Inmates are given a social screening by Unit Management staff and medical screening by Health Services and Mental Health staff at the time of arrival. Inmates are immediately provided with a copy of the institution rules and regulations, which include information on inmate rights and responsibilities. It also includes information on sexual assault and abuse.

Within 28 days of arrival, inmates will participate in the Admission and Orientation (A&O) Program. While in A&O, inmates are advised of the programs, services, policies and procedures regarding the facility.

**Classification Teams (Unit Teams):** Each inmate is assigned to a housing unit. A unit is a self-contained inmate living area that includes both housing sections and office space for unit staff. Each unit is staffed by a Unit Team directly responsible for the inmates living in the unit. The unit offices are located in the units so staff and inmates can have access to each other. The unit staff typically includes a Unit Manager, Case Manager, Correctional Counselor, and Unit Secretary. The Staff Psychologist, Education Advisor and Unit Officer are considered members of the Unit Team and provide input for classification purposes.

Inmates are assigned to a specific Unit Team. Generally, the resolution of issues or matters of interest while at the institution are most appropriately initiated with the Unit Team. Unit Team members are available to assist in many areas, including parole matters, release planning, personal and family problems, counseling and assistance in setting and attaining goals while in prison. A member of the unit staff will be at the institution from 7:30 a.m. to 9:00 p.m., and during the day on weekends and holidays.

## GENERAL FUNCTIONS OF UNIT STAFF

**Unit Manager:** The Unit Manager is the administrative head of the general unit and oversees all unit programs and activities. The Unit Manager is the Chairperson of the team which comprises the Case Manager, Correctional Counselor, with input from Education and Psychology staff. The Unit Manager reviews team decisions and may chair the Unit Discipline Committee (UDC), which is a body that hears disciplinary infractions. The Unit Manager is ordinarily present during initial classification and subsequent program review(s) in which RRC placement is discussed.

**Case Manager:** The Case Manager is responsible for all casework services and prepares classification material, progress reports, release plans, correspondence, and other materials relating to the inmate's commitment. The Case Manager serves as a liaison between the inmate, the administration, and the community.

**Correctional Counselor:** The Counselor provides counseling and guidance for the inmates of the unit in areas of institutional adjustment, personal difficulties, and plans for the future. He/She plays a leading role in segments of unit programs relating to inmate activities. The Unit Counselor may conduct counseling groups for inmates in his/her unit and/or groups open to the general population.

**Unit Secretary:** The Unit Secretary performs clerical and administrative duties, to include the preparation of release paperwork.

she will then usually begin serving the previously imposed term of supervised release. If an inmate's RIS request is denied, the inmate will be provided a statement of reasons for the denial. The inmate may appeal a denial through the Administrative Remedy Procedure.

Denials by the General Counsel or the Director are final agency decisions and are not appealable. Inmates who feel their request is of an emergency nature (e.g., a terminal medical condition) may state as such in accordance with the regulation. (See 28 CFR part 542, subpart B).

## PROBLEM RESOLUTION

**Inmate Request to Staff Member:** An Inmate Request to Staff Member (form BP-S148), commonly called a Cop-Out, is used to make a written request to a staff member. Any type of request can be made with this form. Cop-outs may be obtained in the living units from the Correctional Officer on duty. Staff members will answer the request within a reasonable period of time.

**Administrative Remedy Process:** The BOP emphasizes and encourages the resolution of complaints. The first step of the Administrative Remedy process is to attempt an **Informal Resolution**, utilizing the appropriate Informal Resolution form. (See the Administrative Remedy Institution Supplement, Attachment A.) When an informal resolution is not successful, an inmate can access the Administrative Remedy Program. All Administrative Remedy forms may be obtained from your assigned Correctional Counselor or Unit Team member.

If the issue cannot be informally resolved, a formal complaint may be filed with a Request for Administrative Remedy (formerly BP-229), commonly referred to as a BP-9. The inmate may place a single complaint or related issues on the form. If the form contains multiple unrelated issues, the submission will be rejected. The inmate will return the completed BP-9 to the Correctional Counselor, who will deliver it to the Administrative Remedy Coordinator (BP-9 will be rejected unless processed through staff). The BP-9 complaint must be filed within twenty (20) calendar days from the date on which the basis for the incident or complaint occurred, unless it was not feasible to file within that period of time which should be documented in the complaint. Institution staff has twenty (20) calendar days to act on the complaint and to provide a written response to the inmate. This time limit for the response may be extended for an additional twenty (20) calendar days. The inmate will be notified of the extension.

If the inmate is not satisfied with the Warden's response to the BP-9, he may file an appeal to the Regional Director. This appeal must be received in the Regional Office within twenty (20) calendar days from the date of the BP-9 response. The regional appeal is filed on a Regional Administrative Remedy Appeal (form BP-230), commonly referred to as a BP-10, and must include the appropriate number of copies of the BP-9 form, the Warden's response, and any exhibits.

The regional appeal must be answered within thirty (30) calendar days, but the time limit may be extended an additional thirty (30) days. The inmate will be notified of the extension.

If the inmate is not satisfied with the Regional Director's response, he may appeal to the General Counsel in the Central Office. The national appeal must be made on the Central Office Administrative Remedy Appeal (form BP-231), commonly referred to as a BP-11, and must have the appropriate number of copies of the BP-9, BP-10, both responses, and any exhibits. The national appeal must be answered within forty (40) calendar days, but the time limit may be extended an additional twenty (20) days. The inmate will be notified of the extension.

When filing a Request for Administrative Remedy or an Appeal (BP-9, BP-10, or BP-11), the form should contain the following information:

- Statement of Facts
- Grounds for Relief
- Relief Requested
-

**Sensitive Complaints:**  If an inmate believes a complaint is of a sensitive nature and he would be adversely affected if the complaint became known to the institution, he may file the complaint directly to the Regional Director.  The inmate must explain, in writing, the reason for not filing the complaint with the institution.
If the Regional Director agrees the complaint is sensitive, it shall be accepted and a response to the complaint will be processed.  If the Regional Director does not agree the complaint is sensitive, the inmate will be advised in writing of that determination and the complaint will be returned.  The inmate may then pursue the matter by filing a BP-9 at the institution.

**General Information**:  When a complaint is determined to be of an emergency and threatens the inmate's immediate health or welfare, the reply must be made as soon as possible, usually within seventy-two (72) hours from the receipt of the complaint.

For detailed instructions see Program Statement 1330.16, <u>Administrative Remedy Program</u>.

## DISCIPLINARY PROCEDURES

Inappropriate sexual behavior towards staff and other inmates will not be tolerated.  Inappropriate sexual behavior is defined as verbal or physical conduct perceived as a sexual proposal, act, or threat. Examples of inappropriate inmate sexual behavior include: displaying sexually explicit materials; making sexually suggestive jokes, comments, proposals, and gestures; and engaging in stalking, indecent exposure, masturbation, or physical contact.  Inmates who engage in this type of behavior will be disciplined and sanctioned accordingly, through the inmate discipline process.

**Discipline:** The inmate discipline program helps ensure the safety, security, and orderly operation for all inmates.  Violations of BOP rules and regulations are handled by the Unit Discipline Committee (UDC) and, for more serious violations, the Disciplinary Hearing Officer (DHO).  Upon arrival at an institution, inmates are advised of the rules and regulations and are provided with copies of the Prohibited Acts and Available Sanctions, as well as local regulations.

**Inmate Discipline Information:** When a staff member witnesses or reasonably believes an inmate has committed a prohibited act, a staff member will issue an incident report, a written copy of the charges against an inmate.  The incident report will ordinarily be delivered to the inmate within 24 hours of the time staff became aware of the inmate's involvement in the incident.  If the incident is referred for prosecution, the incident report is delivered by the end of the next work day after it has been released for administrative processing.  An informal resolution of the incident may be attempted at any stage of the discipline process.  If an informal resolution is accomplished, the incident report will be removed from the inmate's central file.  Informal resolution is encouraged for all violations in the Moderate and Low severity categories. Staff may suspend disciplinary proceedings up to two calendar weeks while informal resolution is undertaken. If an informal resolution is not accomplished, staff will reinstate the discipline process at the stage at which they were suspended. Violations in the Greatest and High severity categories cannot be informally resolved and must be forwarded to the DHO for final disposition.

**Initial Hearing:** Inmates will ordinarily be given an initial hearing within five (5) work days after the incident report is issued, excluding the day it was issued, weekends, and holidays.  The Warden must approve, in writing, the any extension over five (5) days.  The inmate is entitled to be present at the initial hearing and may make statements and present documentary evidence.  The UDC must give its decision in writing to the inmate by the close of the next work day.  The UDC may make findings on Moderate and Low severity offenses.  The UDC will automatically refer Greatest and High severity offenses to the DHO for final disposition.

### DISCIPLINE HEARING OFFICER (DHO)

The Disciplinary Hearing Officer (DHO) conducts disciplinary hearings on all Greatest and High severity prohibited acts and other violations referred by the UDC at the Moderate and Low severity levels.  The DHO may not hear any case not referred by the UDC.  An inmate will be provided with advance written notice of the

Exhibit A
Attachment 6

<u>Certification</u>

The Attached FCC Tucson Supplement: **1330.18B – Administrative Remedy Program** was certified as current on **5/15/2020.**



**U.S. Department of Justice**
Federal Bureau of Prisons
Federal Correctional Complex
Tucson, Arizona

# Complex Supplement

**OPI:** EXEC
**NUMBER:** TCX 1330.18B
**DATE:** 9/9/2019
**SUBJECT:** Administrative Remedy Program

1. <u>PURPOSE AND SCOPE</u>.   To implement standard procedures by which inmates confined at the Federal Correctional Complex Tucson (FCC Tucson) may seek formal review of complaints or issues relating to any aspect of their confinement.

2. <u>DIRECTIVES AFFECTED</u>

   a.  <u>Directives Referenced</u>

   | | |
   |---|---|
   | PS 1320.06 | Federal Tort Claims Act (08/01/03) |
   | PS 4500.12 | Trust Fund/Deposit Fund Manual (03/15/18) |
   | PS 5212.07 | Control Unit Programs (02/20/01) |
   | PS 5214.04 | HIV Positive Inmates Who Pose Danger to Other, Procedures for Handling of (02/04/98) |
   | PS 5264.08 | Inmate Telephone Regulations (01/24/08) |
   | PS 5270.09 | Inmate Discipline Program (07/08/11) |
   | PS 5324.12 | Sexually Abusive Behavior Prevention and Intervention Program (06/04/15) |
   | PS 5890.13 | SENTRY - National On-Line Automated Information System (12/14/99) |
   | 28 CFR 301 | Inmate Accident Compensation |
   | 28 CFR 513 | Fees (for records requested pursuant to the Freedom of Information Act (FOIA)) |

   b.  <u>Directives Rescinded</u>

   | | |
   |---|---|
   | TCX 1330.18A | Administrative Remedy Procedures for Inmates (5/03/14) |

3.  <u>STANDARDS REFERENCED</u>.  American Correctional Association
Standards for Adult Correctional Institutions, 4th Edition: 4-
4214M, 4-4226, 4-4227, 4-4228, 4-4361.

American Correctional Association Performance Based Standards
for Adult Local Detention Facilities, 4th Edition: 4-ALDF-3A-01,
4-ALDF-4C-21.

4.  <u>RESPONSIBILITY</u>

   a.  The Executive Assistant is designated as the
Administrative Remedy Coordinator at FCC Tucson.  Requests for
Administrative Remedy that are of a sensitive nature or require
emergency attention will be brought to the Warden's attention by
the Executive Assistant.

   b.  The Associate Warden's Secretary is designated as the
Administrative Remedy Clerk for the Complex.

5.  <u>ISSUES IMPROPERLY FILED.</u>  All improperly filed issues will
be returned to the inmate with a SENTRY generated rejection
notice.  The Administrative Remedy Clerk will initiate the
SENTRY transaction and refer the rejection notice to the unit
team for distribution to the inmate, and file a copy in the
appropriate BP-9 folder.

6.  <u>INITIAL FILINGS</u>

   a.  <u>Informal Resolution.</u>  The Correctional Counselor has the
responsibility to make every effort to attempt to successfully
informally resolve the issue or complaint with the inmate.  The
Unit Manager has the responsibility to review each attempt at
informal resolution and to also attempt to successfully
informally resolve any issue or complaint in the event the
Correctional Counselor was unsuccessful.

Inmates with complaints should complete the first four sections
of Attachment A, Informal Resolution and submit the form to
their respective Correctional Counselor. Inmates will be allowed
to attach one continuation page with their Informal Resolution,
with text on one side.

Unit Team will have (5) working days to provide a response  to
the inmate's informal resolution.  If the informal resolution is
regarding a medical concern, Unit Team will have (7) working

days to provide a response.  If attempts at informal resolution
are unsuccessful, the Correctional Counselor shall issue a BP-
229 form, Request for Administrative Remedy (BP-9), upon
inmate's request.

   b.  Filing.  Once attempts at informal resolution have proven
unsuccessful, the inmate shall obtain a Form BP-229, Request for
Administrative Remedy (BP-9), from their Correctional Counselor.

The Correctional Counselor will initial, date, and write the
inmate's last name on the top right hand section of the form for
accountability purposes.  Copies of Administrative Remedy forms
will not be accepted.

Inmates may obtain BP-229, BP-230, Request for Administrative
Appeal (BP-10) and BP-231, Central Office Administrative Remedy
Appeal (BP-11) forms from their respective Correctional
Counselor.  Only unit team members may issue form BP-229,
Request for Administrative Remedy (BP-9) to inmates, including
those housed in the Special Housing Unit (SHU).

The inmate shall return the completed BP-229 form and the
Informal Resolution documentation to the Correctional Counselor
or Unit Manager.  The Unit Manager shall review the inmate's
complaint and ensure opportunities for informal resolution have
been exhausted.  In the Unit Manager's absence, the acting Unit
Manager will review the BP-229 for compliance.

The Correctional Counselor or other authorized staff member
shall then deliver the BP-229 form, along with the Informal
Resolution documentation, to the Administrative Remedy Clerk the
following workday.

Sentry generated receipts will serve as acknowledgment of a
submission for a Request for Administrative Remedy.  The Unit
Manager, or designee, is responsible for ensuring that SENTRY is
checked daily for inmate notices of "receipts", "extensions",
and "receipt disregards".  These notices to inmates are to be
printed and forwarded to the inmates addressees.

Unit Discipline Committee (UDC) appeals do not require
completion of the Informal Resolution documentation.  However,
the inmate must attach a copy of the Incident Report (including
UDC findings) with the Administrative Remedy BP-229 form.

The Correctional Counselor or other authorized staff shall then
deliver the BP-229 form, along with the Incident Report with UDC
hearing documentation, to the Administrative Remedy Clerk by the
following day.

An inmate can withdraw his BP-229 (BP-9), by either submitting
an Inmate Request to Staff Member or by signing a Withdrawal of
Administrative Remedy Appeal form (Attachment C).  Both forms
shall include the remedy ID number and the reason for
withdrawal.  Upon request, unit staff will assist and/or provide
assistance for inmates in completing the Administrative Remedy
form.  Inmates may obtain assistance from another inmate or
other source in preparing a request.  Inmates, who are
illiterate, disabled, or who are not functionally literate in
English,  will be provided assistance by unit staff.

7.  <u>REMEDY PROCESSING</u>

   a.  <u>Response Time Limits.</u>  A Request for Administrative Remedy
is considered filed when the information is logged in the SENTRY
database, and a Remedy ID Number is assigned.  Once filed, the
Warden's response is due within 20 calendar days from the date
the complaint is received by the Administrative Remedy Clerk.
If the complaint is determined to be of an emergency nature, the
Warden shall respond within 72 hours from the filing of the
complaint.

Extensions to response time limits, up to 20 days, may be
granted for good cause and inmates will be informed in writing
of such extensions.  Unit staff will issue a SENTRY generated
extension memo.

   b.  <u>Response Preparation.</u>  The Administrative Remedy Clerk
will refer the Administrative Remedy to a department head to
conduct an investigation and prepare the response.  Department
heads who have been assigned to review a Request for
Administrative Remedy, will have seven (7) business days from
the date of receipt to review and prepare a draft response.  The
formal written response will be prepared, with a copy stored on
the M:drive in the BP-9 folder, which will be provided with the
investigation.

If a staff member assigned to review the request is alleged to
be specifically involved in the complaint, or another reason

exists why the staff member should not review the complaint, the
staff should immediately (upon receipt) contact the clerk or
coordinator to have the investigation reassigned.  Also, members
of a Unit Discipline Committee will not review UDC appeals from
their assigned unit.  The review and proposed response to an
emergency complaint is to be completed within 24 hours of
assignment.  A response will be forwarded to the inmate within
the time frame established in P.S. 1330.18.

   c.  <u>Remedy Form Distribution.</u>   Upon completion of the
response, the Warden's File Copy will be filed in the
Administrative Remedy Coordinator's office.  Three copies of the
response and any other documentation generated by the inmate
will be forwarded back to the inmate's unit team for
distribution to the inmate.  Unit team will have the inmate sign
an Acknowledgment of Receipt of Administrative Remedy Appeal
(attachment D).  Once signed, Unit Team will then return it to
the Administrative Remedy Coordinator's office for filing.

8.  ISSUING DEPARTMENT.  Executive Assistant.


B. von Blanckensee        Jared Rardin
Complex Warden            Warden

TCX 1330.18B
9/9/2019
Page 6

Attachment A

# INFORMAL RESOLUTION FORM

<u>NOTICE TO INMATE</u>: You are advised that prior to receiving and filing a Request for Administrative Remedy Form (BP-9), you MUST attempt to informally resolve your complaint through your Correctional Counselor. Briefly state the complaint below and list what effort you have made to resolve your complaint informally. Also, please state names of staff contacted.

| Inmate Name: | Reg. No.: | Unit: |
|---|---|---|

Informal resolution form issued by Correctional Counselor on: (date)

| INMATE'S COMMENTS: (Inmate MUST FILL OUT items 1-4 and signature block) |
|---|

1.   Complaint:

2.   Efforts made by inmate to informally resolve incident (Which staff members did you talk to and what did they say?)

3.   State what action you want staff to take to correct the situation:

Date returned to Correctional Counselor:

| Inmate Signature | Reg. No. | Date |
|---|---|---|

| CORRECTIONAL COUNSELOR'S COMMENTS: |
|---|

Efforts made to informally resolve and staff contacted:
*a.   Discussed the complaint with (staff member) --- and he/she stated...*
*b.   I further explained to the inmate that ...*
*c.   But, the inmate insisted he wanted to file a BP-9 because...*

| Date informally resolved: | Signature: |
|---|---|

Informal Resolution was not accomplished for the following reason:
*After I personally explained that ..., he still insisted that he was wronged because...*

Unit Manager's review and Signature:
*a.   Can this request be resolved at the Unit Level?*
*b.   Steps taken to resolve (who was contacted, results of that contact – do not forward for lack of contact):*

_____
Unit Manager / Date Signed

TCX 1330.18B
9/9/2019
Page 7

Attachment B



**FEDERAL BUREAU OF PRISONS**

**FEDERAL CORRECTIONAL COMPLEX**

**TUCSON, ARIZONA**

## <u>WITHDRAWAL OF ADMINISTRATIVE REMEDY APPEAL</u>

I_____ Reg. No. _____ further acknowledge by

my signature, withdrawal of my Administrative Remedy Appeal No._____

dated _____.  This is voluntary and not of influence on the part of any staff member

of the Federal Bureau of Prisons (FCC Tucson).


_____
Signature of Inmate

_____
Register Number


_____
Date

_____
Signature/Title of Staff Witness

TCX 1330.18B
9/9/2019
Page 8

Attachment C



**FEDERAL BUREAU OF PRISONS**

**FEDERAL CORRECTIONAL COMPLEX**

**TUCSON, ARIZONA**

Unit:_____
☐ Region
☐ Central Office
☐ BP-9 Response
☐ BP-9 Rejection

## ACKNOWLEDGMENT OF RECEIPT OF ADMINISTRATIVE REMEDY APPEAL

I, _____, Reg. No. _____, further acknowledge by

my signature, receiving Administrative Remedy Appeal No. _____.  The

Administrative Remedy Appeal was hand-delivered to me.

Received on this _____ day of _____, 2020.


_____
Signature of Inmate

_____
Register Number


_____
Date

_____
Signature/Title of Staff Witness

Exhibit A
Attachment 7

```
PHXC4              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        05-31-2022
PAGE 001 OF                                                             13:24:53
       FUNCTION: L-P SCOPE: REG   EQ 57005-177    OUTPUT FORMAT: FULL
------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
EXTENDED: _ REMEDY LEVEL: _ _              RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ _____      _____      _____      _____      _____      _____
TRACK: DEPT: _____ _____ _____ _____ _____ _____
       PERSON: ____      _____      _____      _____      _____      _____
        TYPE: ____      _____      _____      _____      _____      _____
EVNT FACL: EQ _____      _____      _____      _____      _____      _____
RCV FACL.: EQ _____      _____      _____      _____      _____      _____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ _____      _____      _____      _____      _____      _____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____


G0002      MORE PAGES TO FOLLOW . . .
```

**Ex. A, Att. 7, p. 1**

```
PHXC4            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      05-31-2022
PAGE 002 OF 002 *                FULL SCREEN FORMAT            *      13:24:53


REGNO: 57005-177 NAME: RANIERE, KEITH
RSP OF...: TCP UNT/LOC/DST: UNIT C              QTR.: C01-108U   RCV OFC: WXR
REMEDY ID: 1111640-R1      SUB1: 20DM SUB2:     DATE RCV:   02-25-2022
UNT  RCV..:UNIT C       QTR RCV.: C01-108U      FACL RCV: TCP
UNT  ORG..:UNIT C       QTR ORG.: C01-108U      FACL ORG: TCP
EVT FACL.: TCP    ACC LEV: WXR  1              RESP DUE: TUE  04-26-2022
ABSTRACT.: DHO HEARING 10-26-21 CODE: 396 / 397
STATUS DT: 04-01-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.: 3547878   RCT: P EXT: P DATE ENTD: 02-26-2022
REMARKS..:




                 1 REMEDY SUBMISSION(S) SELECTED
G0000         TRANSACTION SUCCESSFULLY COMPLETED
```