Exhibit D

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Keith Raniere, | No. 22-cv-00212-RCC-PSOT |
| Plaintiff, | **DECLARATION OF ANTHONY GALLION** |
| vs. | |
| Merrick Garland, US Attorney General, et al., | |
| Defendants. | |

I, Anthony Gallion, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby make the following declaration relating to the above-titled matter.

1.      I am the Acting Special Investigative Agent for the Federal Bureau of Prisons (Bureau), assigned to the United States Penitentiary in Tucson, Arizona (USP Tucson).  In this role, my duties include overseeing the Special Investigative Services (SIS) Department at USP Tucson and investigating inmate misconduct.  I address inmate institutional needs on a daily basis.

2.      As part of my official duties, I have access to records maintained by the Bureau in the ordinary course of business, including administrative remedy requests of federal inmates, information maintained in the SENTRY[1] database, and inmate central files.  All records attached to this declaration are true and accurate copies of Bureau records maintained in the ordinary course of business.

3.      The following statements are based on my review of official Bureau files and records, my own personal knowledge, or on information acquired by me through the

---

[1] SENTRY is the Bureau's national database which tracks various data regarding an inmate's confinement, including, but not limited to, an inmate's institutional history, sentencing information, administrative remedies, and discipline history.

1   performance of my official duties.

2       4.      I am familiar with inmate Keith Raniere, Federal Register No. 57005-177.

3   He has been incarcerated at USP Tucson since January 21, 2021, and I have known him

4   during his time at USP Tucson.  *See* Att. 1, SENTRY Inmate History at 1 ("TCP" is the

5   facility code for USP Tucson).

6   **I.      PREVIOUS INSTITUTION**

7       5.      On July 16, 2020, an Intelligence Analysis in the Bureau's Counter

8   Terrorism Unit (CTU) drafted a memorandum seeking to block all contact between

9   Raniere and Suneel Chakravorty due to behavior that compromised the security of the

10  facility in which Plaintiff was then held, the Metropolitan Detention Center in Brooklyn,

11  New York (MDC Brooklyn).  *See* Att. 2, CTU Memorandum.

12      6.      Specifically, Raniere and Suneel Chakravorty were recording prison-initiated

13  telephone calls to use for podcasts and "interviews [Raniere] is pursuing to use in HBO,

14  Netflix and Showtime."  *Id.* at 1-2.  Additionally, they were endangering the security of the

15  facility and the public by organizing "a group of women to show up regularly and dance

16  provocatively by inmates to view through their cell windows."  *Id.* at 2.  Raniere "directed

17  Suneel [Chakravorty] to contact more women" to "danc[e] erotically" which led to a

18  request for Plaintiff to be moved to another housing unit.  *Id.* at 2-3.  Plaintiff also

19  informed Suneel Chakravorty about "the staff work schedules and indicated his protesters

20  should wait outside for the staff and offer donuts and coffee as they exit the facility"

21  because "we are all in this together."  *Id.* at 3 (internal quotation marks omitted).

22      7.      The CTU concluded that "Raniere's manipulative behavior continues to

23  manifest from behind the prison through the help of Suneel Chakravorty.  Inmate Raniere's

24  actions would place the safety and security of staff and the public at risk."  *Id.*  The CTU

25  recommended that Suneel Chakravorty be removed as one of Plaintiff's approved contacts.

26  *Id.*

27      8.      On July 16, 2020, the MDC Brooklyn Warden concurred with the

28  recommendation and approved Suneel Chakravorty's removal from Raniere's approved

contact list.  *See* Att. 3, Warden Approval E-Mail (Redacted) at 1.

## II.   USP TUCSON

### A.   <u>Visitation Privileges</u>

9.     As to inmate friends and associates, "[t]he visiting privilege ordinarily will be extended to friends and associates having an established relationship with the inmate prior to confinement, unless such visits could reasonably create a threat to the security and good order of the institution.  Exceptions to the prior relationship rule may be made, particularly for inmates without other visitors, when it is shown that the proposed visitor is reliable and poses no threat to the security or good order of the institution."  28 C.F.R. § 540.44(c).  "Regardless of the institution's security level, the inmate must have known the proposed visitor(s) prior to incarceration.  The Warden must approve any exception to this requirement."  *See* Program Statement 5267.09, *Visiting Regulations* at 6.[2]

10.    On May 2, 2021, a few months after arriving at USP Tucson, Suneel Chakravorty's visiting privileges were denied as the "prospective visitor/applicant did not have an established relationship with [Raniere] prior to [his] incarceration."  *See* Att. 4, Visitor Denial Notice.

11.    This conclusion is supported by federal court records submitted by Suneel Chakravorty in October 2020 where he admitted that his "first conversation with Keith Raniere was in prison, after his trial.  At this time, he and I were complete strangers." *See* Att. 5, Sentencing Court Documents Excerpt at 1.  Suneel Chakravorty also detailed his involvement with NXIVM.  *Id.* at 2-4 (becoming a coach for Executive Success Programs (ESP) and NXIVM, including his decision to "stay involved even during an international media storm.  To me, ESP did not seem like a sinister organization[.]" and "that is why I chose to continue as a coach up u[n]til the companies closed in May 2018.").

---

[2] Available at https://www.bop.gov/policy/progstat/5267_09.pdf (last visited on May 27, 2022).

### B.    <u>TRULINCS[3] and Telephone Privileges</u>

12.    "Use of TRULINCS is a privilege; therefore, the Warden may limit or deny the privilege of a particular inmate[.]  *See* Program Statement 4500.12, *Trust Fund/Deposit Fund Manual* at 126.[4]

13.    "Inmates may be subject to telephone restrictions imposed by the Warden to protect the safety, security, and good order of the institution, as well as to protect the public." *See* Program Statement 5264.08, *Inmate Telephone Regulations* at 14.[5]

14.    In early May 2022, my staff in the SIS Department were monitoring telephone calls between Raniere and Suneel Chakravorty.  They spoke to each other about being "at war" with the federal government that would be "no holds barred."  Even more concerning than this language or "war" is the fact that Raniere asked about the quality of the recordings and stated that he has many recordings.  As indicated above, Suneel Chakravorty has previously recorded telephone conversations with Raniere.  The CTU recommended that Raniere's current contacts be removed and that all future contact requests go through the SIS Department for approval so as to determine whether any individuals have affiliation with NXIVM, as prohibited by special conditions of supervised release in the Judgment and Commitment Order.  *See* Att. 6, Judgment and Commitment Order at 9 (special condition number eleven).

15.    On May 3, 2022, as a result of the findings of the SIS Department and in consultation with the CTU, the USP Tucson Warden imposed limitations on Raniere's contact list.  *See* Att. 7, Service Limitation Notice.  Specifically, Raniere was limited to a

---

[3] The Trust Fund Limited Inmate Computer System (TRULINCS) provides inmates with a computer system that does not jeopardize the safety, security, orderly operation of the correctional facility, or the protection of the public or staff.  Inmates doe not have access to the Internet through TRULINCS, but may exchange electronic messages with approved contacts.

[4] Available at https://www.bop.gov/policy/progstat/4500.12.pdf (last visited on May 27, 2022).

[5] Available at https://www.bop.gov/policy/progstat/5264_008.pdf (last visited on May 27, 2022).

maximum of ten active contacts. *Id.* All of his current contacts were removed, [6] with the exception of nine verified attorneys and Marianna Fernandez. *See* Att. 8, TRULINCS Active Contact List (Redacted) at 1-3.

16.     Part of this removal was also associated with Raniere's restriction from communicating (e-mail, telephone, mail, etc.) with any members or associates of NXIVM or its affiliated organizations per the Judgment and Commitment Order issued by his sentencing court. If it is dangerous for Raniere to have access to these individuals once released, it is also a security risk to allow access to these individuals while incarcerated.

17.     None of the above actions imposed have any relationship to Raniere's access to his attorneys via legal mail, legal calls, and legal visits. Raniere may still access his attorneys through these confidential lines of communication.

18.     In the future, if Raniere wants to add more contacts to his approved TRULINCS list, the SIS Department will review the individual names as part of the approval process. To date, Raniere has not requested additional individuals be added to his approved TRULINCS contact list.

19.     I am not and was not aware of Raniere's litigation regarding his conviction and sentence imposed in New York. All recommendations and determinations made, as reflected above, were made for the safety, security, and good order of the institution and not in any way to hinder Raniere's legal efforts.

//
//
//
//
//
//

---

[6] Part of this removal was also associated with Raniere's restriction from communicating (e-mail, telephone, mail, etc.) with any members or associates of NXIVM or its affiliated organizations per the Judgment and Commitment Order issued by his sentencing court. If it is dangerous for Raniere to have access to these individuals once released, it is also a security risk to allow access to these individuals while incarcerated.

1      Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury

2  that the foregoing is true and correct to the best of my information, knowledge, and belief.

3      Executed on this 31st day of May 2022, in Rochester, Minnesota.

4

5          Anthony Gallion

6          Acting Special Investigative Agent

7          USP Tucson, Arizona
        Federal Bureau of Prisons

8  **Enclosures**

9  Att. 1, SENTRY Inmate History

10  Att. 2, CTU Memorandum

11  Att. 3, Warden Approval E-Mail (Redacted)

12  Att. 4, Visitor Denial Notice

13  Att. 5, Sentencing Court Documents Excerpt

14  Att. 6, Judgment and Commitment Order

15  Att. 7, Service Limitation Notice

16  Att. 8, TRULINCS Active Contact List (Redacted)

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -

Exhibit D
Attachment 1

```
PHXC4  531.01 *                 INMATE HISTORY            *        05-27-2022
PAGE 001 OF 001 *                  ADM-REL                *        10:00:23


  REG NO..: 57005-177 NAME....: RANIERE, KEITH
  CATEGORY: ARS       FUNCTION: PRT        FORMAT:


FCL      ASSIGNMENT DESCRIPTION                START DATE/TIME STOP  DATE/TIME
TCP      A-DES      DESIGNATED, AT ASSIGNED FACIL 01-21-2021 1904 CURRENT
A03      RELEASE    RELEASED FROM IN-TRANSIT FACL 01-21-2021 2104 01-21-2021 2104
A03      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-21-2021 1020 01-21-2021 2104
OKL      HLD REMOVE HOLDOVER REMOVED             01-21-2021 0920 01-21-2021 0920
OKL      A-HLD      HOLDOVER, TEMPORARILY HOUSED  01-21-2021 1444 01-21-2021 0920
OKL      ADM CHANGE RELEASE FOR ADMISSION CHANGE 01-19-2021 1445 01-19-2021 1445
OKL      A-BOP HLD  HOLDOVER FOR INST TO INST TRF 01-19-2021 1330 01-19-2021 1445
A01      RELEASE    RELEASED FROM IN-TRANSIT FACL 01-19-2021 1430 01-19-2021 1430
A01      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-19-2021 0730 01-19-2021 1430
LEW      HLD REMOVE HOLDOVER REMOVED             01-19-2021 0730 01-19-2021 0730
LEW      A-HLD      HOLDOVER, TEMPORARILY HOUSED  01-06-2021 0800 01-19-2021 0730
B01      RELEASE    RELEASED FROM IN-TRANSIT FACL 01-06-2021 0800 01-06-2021 0800
B01      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-06-2021 0248 01-06-2021 0800
BRO      HLD REMOVE HOLDOVER REMOVED             01-06-2021 0248 01-06-2021 0248
BRO      A-HLD      HOLDOVER, TEMPORARILY HOUSED  10-27-2020 1827 01-06-2021 0248
BRO      COURT      COURT APPEARANCE W/SCHED RETRN 10-27-2020 0839 10-27-2020 1827
BRO      A-HLD      HOLDOVER, TEMPORARILY HOUSED  10-31-2019 1720 10-27-2020 0839
BRO      COURT      COURT APPEARANCE W/SCHED RETRN 10-31-2019 0838 10-31-2019 1720
BRO      A-HLD      HOLDOVER, TEMPORARILY HOUSED  07-15-2018 1806 10-31-2019 0838
BRO      LOCAL HOSP ESC TRIP TO LOCAL HOSP W/RETN 07-15-2018 1704 07-15-2018 1806
BRO      A-HLD      HOLDOVER, TEMPORARILY HOUSED  04-10-2018 1858 07-15-2018 1704
A01      RELEASE    RELEASED FROM IN-TRANSIT FACL 04-10-2018 1858 04-10-2018 1858
A01      A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-10-2018 0830 04-10-2018 1858
OKL      HLD REMOVE HOLDOVER REMOVED             04-10-2018 0730 04-10-2018 0730
OKL      A-HLD      HOLDOVER, TEMPORARILY HOUSED  03-29-2018 0905 04-10-2018 0730




G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

Exhibit D
Attachment 2



**U.S. Department of Justice**
Federal Bureau of Prisons

Correctional Programs Division

---

Counter Terrorism Unit                    796 N. Foxcroft Ave., Suite 201
                                          Martinsburg, WV 25401

July 16, 2020

MEMORANDUM FOR  H. TELLEZ, WARDEN
                MDC BROOKLYN

                //s//
THROUGH:        Guy Pagli, Chief
                Counter Terrorism Unit
                //s//

THROUGH:        J.Simmons, Senior Intelligence Analyst

                //s//
FROM:           H. Boussag, Intelligence Analyst

SUBJECT:        Recommendation for Contact Block and Rejection of
                incoming or outgoing correspondence

Re:             I/M Raniere, Keith. Reg. No. 57005-177


This memorandum is submitted to request approval for removing one of inmate
Raniere, Keith, Reg. No. 570055-177, contacts from his TRULINCS account.  Raniere
is currently designated at MDC Brooklyn and is currently awaiting sentencing for Sex
Trafficking, Sex Trafficking Conspiracy and Forced Labor Conspiracy.

Beginning on or about July 15, 2020, CTU staff began conducting a review of
communications between inmate Raniere and one of his contacts. Namely, Suneel
Chakravorty. During this review of phone and emails, CTU Staff found numerous
occasions where this individual, under the direction of inmate Raniere, has violated
BOP policies and procedures.

---

**- FOIA Exempt -**

**Sensitive But Unclassified**

**Ex. D, Att. 2, p. 1**

A review of multiple telephonic conversations concluded the above mentioned individual has helped inmate Raniere recorded podcasts for interviews he is pursuing to use in HBO, Netflix and Showtime.

For instance, on a call placed by Raniere to Suneel at telephone number [646-939-9625] on Friday, May 8, 2020. Raniere asked the recipient if he is ready for him to record a podcast and then counts him off. At that time, inmate Raniere knowingly began to record a podcast, the narrative of which was "How much legal experience a judge has?"

On another call, placed by Raniere to Suneel on Monday, July 13, 2020. At the same telephone number, inmate Raniere inquired as to how many podcasts they have recorded up to this point. At that moment, Suneel indicated they have recorded over 110 official segments and about 50 podcasts. It shall be noted, during the monitoring of this inmate, nearly most of his phone calls included a segment he dedicated to a podcasts with the help of Suneel, Chakravorty.

Additionally, while reviewing inmate Raniere's communication, neither Raniere nor Suneel Chakravorty, have been reviewed or approved by the Office of Research and Evaluation (ORE) for research privileges within the Bureau of Prisons.

Further review of the communication between Raniere and Suneel have concluded inmate Raniere is also utilizing this individual to set up protests outside of the prison. Specifically, Raniere orchestrated through this individual for a group of women to show up regularly and dance provocatively for inmates to view through their cell windows.

Case in point, on a telephone call placed by Raniere to Suneel to the same number on July 12, 2020, Raniere and Suneel discussed the success of the women dancing in front of the prison. Suneel added the inmates were "banging on their windows and making a beat," Expectedly, Raniere gloated and hoped this movement keeps growing and more women get involved. Additionally, Raniere directed Suneel to contact more women.

CTU staff became aware of these events occurring on Friday, July 03, 2020. During a monitoring of a phone call to the same individual, Raniere thanked Suneel for coming by and for bringing Eduardo and Nicky to see him and inquired about whether they read the messages the inmate was writing on the light fixture for them and vice versa.

Relatedly, On Tuesday, July 06, 2020, Raniere authored an electronic correspondence to email address [marvy@pm.me] belonging to a contact named Marianna Fernandez. In the email, Raniere talked about the realization of his ideas. Specifically, his

acquaintances gathering outside of the prison and the women dancing erotically to the delight of other inmates.

Below is an excerpt from the abovementioned email

> *"My dearest love! I have another idea that seems to be evolving into something good: for the past few nights people like Suneel, Eduardo, Nicki, and Danielle, have been coming to stand outside of my window to "visit". It evolved to the women dancing, and the whole side of the building appreciating it."*

Additionally, in the body of the email, Raniere discussed his future plans for protesters gathered outside in a form of a not-for-profit organization titled "The forgotten ones," Essentially, more women dancing scantily dressed dancing in front of the prison.

Below is an excerpt from the email,

> *"The forgotten ones" to bring in other dancers etc., interface with the local radio stations to bring in other dancers etc., with the local radio stations to bring together, community, inmates and talent. It can quite nicely grown to encompass licensing, finding new artists etc…"*

CTU staff immediately contacted the SIS office at MDC Brooklyn and requested inmate Raniere be moved to another unit.

Moreover, on a telephone call placed by inmate Raniere to the above-mentioned individual on July 11, 2020, Inmate Raniere espoused his disdain for being moved to another unit after he had organized for the women to come out and dance in front of the facility. Additionally, he begins to tell Suneel about the staff work schedules and indicated his protesters should wait outside for the staff and offer donuts and coffee as they exit the facility. Moreover Raniere advised Suneel the protesters should befriend the staff and justified this behavior by stating "we are all in this together." The staff and the inmates. Suneel indicated the protesters had made offerings to the staff and all of their efforts were declined.  Inmate Raniere's manipulative behavior continues to manifest from behind the prison through the help of Suneel Chakravorty. Inmate Raniere's actions would place the safety and security of staff and the public at risk.

BOP may prohibit inmates from communicating with a particular individual/organization in the community, when it is found the communication would jeopardize the safety, security or orderly operation of a facility or would jeopardize the protection of the public or staff.

---

- FOIA Exempt -

Sensitive But Unclassified

We hereby request to reject the contact and any pending correspondence or e-mails, currently used by inmates housed at MDC Brooklyn and any future inmates who are housed at MDC Brooklyn, who may request this contact.

Exhibit D

Attachment 3

# Hamza Boussag - Re: Contact Block Recommendation I/M Raniere 57005-177

| | |
|---|---|
| **From:** | Heriberto Tellez |
| **To:** | Boussag, Hamza |
| **Date:** | 7/16/2020 5:36 PM |
| **Subject:** | Re: Contact Block Recommendation I/M Raniere 57005-177 |
| **CC:** | ██████████████████████ |

Good evening Mr. Boussag,

I concur with your recommendation and approve for the individual in question (Suneel Chakravorty)be removed from inmate Raniere, Keith, Reg. No. 57005-177, contacts from his TRULINCS account.

Thank you

Heriberto H. Tellez
Warden
MDC Los Angeles
535 N Alameda St.
Los Angeles, CA 90012
(213) 485-0439 ext. ████
████ @bop.gov


>>> Hamza Boussag 7/16/2020 1:23 PM >>>
Good afternoon Warden,

I am requesting one of inmate Raniere, Keith, Reg. No. 57005-177 contacts be removed and blocked from his Trulincs account, please see the attached memo where I have detailed the reasonings behind this recommendation. Let me know if you concur, or if you need more information please let me know.


*H.Boussag / Intelligence Analyst*
*U.S. Department of Justice*
*Federal Bureau of Prisons*
*Counter Terrorism Unit (CTU)*
*Office : 304-262-████*
*Fax: 304-262-8359*
*Correctional Programs Division*
*Central Office*



*UNCLASSIFIED // FOR OFFICIAL USE ONLY / LAW ENFORCEMENT SENSITIVE*

*The information contained in this electronic message as well as any and all accompanying attachments constitutes confidential and/or legally privileged information, which is intended only for use by the individual or entity to which the transmission is addressed. This information is the property of the U.S. Department of Justice. This message and its contents are not to be transmitted over non-secure servers and faxes, reproduced or further distributed without the express consent of the Federal Bureau of Prisons' Counter Terrorism Unit.*

*If you are not the intended recipient of this information, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this message in error, please notify us immediately at the above number to make arrangements for its return. **THIS DOCUMENT, OR ANY SEGMENT/ATTACHMENT THEREOF, MAY NOT BE RELEASED TO ANY MEDIA SOURCES, ANY NON-LAW ENFORCEMENT ENTITY, THE GENERAL PUBLIC OR THOSE WITHOUT A "NEED TO KNOW."***

# Exhibit D
# Attachment 4



**U.S. Department of Justice**
**Federal Bureau of Prisons**
**Federal Correctional Complex - Tucson**

*USP Unit Team*                                          *Tucson, AZ 85756*

F.O.I. EXEMPT

**May 2, 2021**

**MEMORANDUM FOR:** HOWARD, C., COMPLEX WARDEN

**THROUGH:**                Tubb, A., Associate Warden

**FROM:**                   Stangl, A., Unit Manager

**SUBJECT:**                **Visitor Denial for RANIERE, KEITH #57005-177**

Visiting privileges have been denied for **Mr. Sunil Kumar Chakraborty** due to the following reason(s):

__X__ **The prospective visitor/applicant did not have an established relationship with you prior to your incarceration.**

____ A criminal background check investigation revealed that the applicant has prior conviction(s).

____ The applicant provided false, inaccurate, and/or incomplete information on his/her Visitor Form.

____ A discrepancy in the background investigation must be resolved before being allowed in the institution.

____ On active probation.                                    F.O.I. EXEMPT

____ OTHER:_____

Exhibit D
Attachment 5

Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East Brooklyn, NY 11201

Re: <u>United States v. Keith Raniere</u>, 18 Cr. 204 (NGG)

Judge Garaufis:

My name is Suneel Chakravorty. My family is from India and I am a first-generation American. I grew up in South Florida. In my family, education was one of the highest values. I studied hard, became county valedictorian and was admitted to Harvard College, where I majored in mathematics. After college, I worked as a software engineer before starting my own company. I co-founded a software consulting firm in NYC, which grew in just a few years to be the technology innovation partner for a Fortune 100 company, a national healthcare network, a top hedge fund, and several startups.

My first conversation with Keith Raniere was in prison, after his trial. At the time, he and I were complete strangers. Now I count him as one of my friends. I am writing this letter to you, your honor, to provide my perspective on Keith's character, for consideration in your sentencing decision.

I first learned of Executive Success Programs in August 2016, when a fellow Harvard graduate told me about it and invited me to take it. He told me the company and its founder had very bad press but that the program was very effective for entrepreneurs. He explained that the program focused on helping the participant to overcome limiting behaviors and patterns. This sounded interesting so I signed up. Then later I Googled the company. I was initially very disturbed at what I read about Keith and about NXIVM, but most of the articles seemed to be personal blog posts and I have known political friends who were written fallaciously about in the media. In addition, the person who enrolled me seemed smart and kind, so I decided I would see for myself.

In October 2016, I took my first five-day intensive in an office building in midtown Manhattan. There were about 20 participants, from seasoned businesspeople to college graduates and everyone with a unique motivation for being at the training, from figuring out their next career move to achieving better work-life balance to finding inner peace. There were certain practices that I found strange, like referring to Keith as "Vanguard" in the classes. I later came to understand that there were benign, rational explanations for those things. Also, I took Tae Kwon Do growing up and had no issue with calling my instructor "Master." I believe that if there were no bad press, I would not have interpreted those practices as negatively as I initially did.

What I learned about emotions and my own patterns of behavior was invaluable and I left the training energized to build my company and so much less stressed. As the weeks went by, I noticed more and more benefits. With my family, where I used to be controlling and tense, I

EXHIBIT
15
U.S. v. Raniere, 18-Cr-204 (NGG)
Ex. D, Att. 5, p. 1

became relaxed and able to enjoy time with them more. Our family trips became even more precious and memorable.  With my company, I began to push harder, get more projects, and grow my team faster than I thought possible.

Over the next few months, I completed my sixteen-day intensive and took an additional training called Mobius. On some occasions, I was asked by some of the coaches if I had anyone I wanted to invite to take a training. Although I did have people in mind, I did not feel comfortable publicly associating myself with NXIVM because of its negative reputation, so I told the coaches that I did not want to invite people and they completely understood. I did not feel any pressure to invite anyone and no one asked me about it thereafter. However, at a certain point, I felt that the classes of ESP had helped me so much, to be a more effective founder, a more compassionate brother, and a more grateful son that my desire to share this with others exceeded my fear of what people would think and I invited a few friends to take the course.

I became a coach in June of 2017 at the "coach summit" where many leaders in ESP decided to leave the organization. To me, this was strange because I never thought of ESP as something one would join or leave. To me, they were just classes you could take or not take. I continued to be a coach in the New York City ESP Center over the next few months as articles began to come out about "sex slaves" and "sex cult." I found the articles seriously alarming, but they did not contain any evidence, seemed to be defamatory in nature, and were the opposite of my experience as a coach in NYC. All we did was have classes in midtown Manhattan, nothing more exciting than that, and I was seeing firsthand how the ESP classes were helping people in my family and in my company.

This contradiction between what I was experiencing and what was being written only grew more extreme. When the NY Times article came out in October 2017 about NXIVM being a "cult" that branded women, I received a flurry of emails from friends who knew I was a coach in the program and were concerned for my well-being and safety. In reality, that day was like any other for me. I had normal business meetings with my clients and my team and in the evening met with my ESP coach about my 3-month fitness goal. My reality was so mundane compared to what the media was writing. I also had the opportunity to get to know the subjects of some of those articles, people like Lauren Salzman and Allison Mack. I found them to be intelligent, strong-willed and caring women who were motivated to help others. Lauren had coached me to become more productive in managing my employees and Allison had taught me how to become more expressive and less reserved. At the same time that they were being described as bad people, I was getting to know them and finding them to be the opposite.

Because my personal experiences had been so positive and I had not been able to find evidence of what was being alleged, I decided to stay involved even during an international media storm. To me, ESP did not seem like a sinister organization with the hidden agenda of serving Keith Raniere. It seemed to me to be a personal growth company filled with good, earnest people who were being intentionally maligned. I was raised to stand up for good people, especially when they are being attacked, and that is why I chose to continue as a coach up util the companies closed in May 2018.

Almost a year later, I chose to attend Keith's trial because I had seen so much untruth and sensationalism in the media coverage about NXIVM and its family of companies that I was hoping that the legal process might be more data-driven and logical. Because I had sold my business by that time, I had the flexibility to attend the trial as often as I wanted, and I decided to go every day. I found that the narrative being presented about NXIVM was the same one that was in the media. The witnesses, some of whom I was familiar with, had changed their perspective completely and were presenting information that I could have contradicted with my experience as well as my experience of them even just a year prior. Although the types of crimes that Keith was convicted of are very serious and I do not in any way condone acts like sex trafficking and forced labor, I believe that Keith is innocent of these crimes and that he was convicted not because of evidence but because of how much hate he was painted with. It was an emotional trial and it would be hard for any person to not feel that Keith is a bad person, based only on what the witnesses said.

After the trial, I felt restless. I felt I had just observed a serious injustice and wanted to help, so I decided to visit Keith in prison and asked him how I could help.

Over the course of the past year, I have had a hundred hours of phone calls and dozens of in-person visitations with Keith as we have been working closely together on several initiatives that not only could help separate the prejudice from the law in his case but could help many others in the future who encounter prejudice in our legal system. Some of these communications have been published in court filings. I believe that if your honor were to hear them in context, you would find them to be upstanding and well-intentioned.

In every interaction that I have had with Keith, he has been kind, understanding and patient. Sometimes he is my fellow math nerd. Other times, he is a mentor to me. Other times yet, he is just my friend. He has never ordered me to do anything or been demanding or punishing. On the contrary, when I have tried to help but have come up short, he has always been understanding and grateful. I also feel that he has treated me like a true friend. Although our prison calls are short and there are many pressing matters with his case to discuss, he would always find some time to tell me a joke, discuss math topics with me, just tell me how he was feeling or ask me if I was doing okay.

For more than a year, I have only seen Keith try to use his situation to the benefit of others. Almost on a daily basis, he would call me with an idea of how to highlight the injustice in his situation to bring attention to the broader issues going on. He rarely, if ever, emphasized saving himself. At times, he expressed that he was not sure if he would ever be free but at least if his situation can help others, then he would feel happy.

Unfortunately, in July 2020, my communications with Keith were blocked by the prison. I have appealed the decision but never gotten any explanation or a response.

I have talked at length with Keith about his situation, the case and the NXIVM community and to me he seems very sorry for all that has happened, because is the leader of that community, but at the same time he maintains his innocence of the charges.

I firmly believe that you only know a person's character in the worst moments of their life. I have had the privilege of getting to know Keith during such a time and I believe him to be a good and peaceful person.

I implore you, your honor, to be as lenient as possible and not sentence Keith to life in prison.


Sincerely,

Suneel Chakravorty

# Exhibit D
# Attachment 6

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
             Sheet 1

# UNITED STATES DISTRICT COURT

## Eastern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| | Case Number:     CR 18-0204 (S-2) (NGG) |
| **KEITH RANIERE** | USM Number:     57005-177 |
| | Marc A. Agnifilo, Esq. |
| | Defendant's Attorney |

## THE DEFENDANT:

**X**    was found guilty by jury   verdict on Counts 1, 2, 6, 7, 8, 9 & 10 of the Superseding Indictment (S-2).

☐ pleaded nolo contendere to count(s) _____
    which was accepted by the court.

☐ was found guilty on count(s) _____
    after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|---|
| SEE PAGE 2 OF | | | |
| JUDGMENT | | | |

     The defendant is sentenced as provided in pages 2 through ____11____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

**X**    Any underlying Indictment is dismissed by motion of   the United States.

**X**    Counts 3, 4, 5 & 11 of the Superseding Indictment (S-2) are dismissed by motion of the United States before trial.

☐ Count(s) _____ ☐ is   ☐ are dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

October 27, 2020
Date of Imposition of Judgment

*(signature)*
Signature of Judge

Nicholas G. Garaufis, U.S.D.J.
Name and Title of Judge

October 30, 2020
Date

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 1A

DEFENDANT:  KEITH RANIERE
CASE NUMBER:  CR 18-0204 (S-2)(NGG)

# ADDITIONAL COUNTS OF CONVICTION

**Offense:**

**Count 1:**
RACKETEERING CONSPIRACY
18 U.S.C. §1962(d), 18 U.S.C. §1963(a)
Not more than life imprisonment/$250,000 fine
(Class A Felony)

**Count 2:**
RACKETEERING
18 U.S.C. §1962(c), 18 U.S.C. §1963(a)
Not more than life imprisonment/$250,000 fine
(Class A Felony)

**Count 6:**
FORCED LABOR CONSPIRACY
18 U.S.C. §1594(b)
Not more than 20 years imprisonment/$250,000 fine
(Class C Felony)

**Count 7:**
WIRE FRAUD CONSPIRACY
18 U.S.C. §1349, 18 U.S.C. §1343
Not more than 20 years imprisonment/$250,000 fine
(Class C Felony)

**Count 8:**
SEX TRAFFICKING CONSPIRACY
18 U.S.C. §1594(c), 18 U.S.C. §1591(b)(1)
15 years to life imprisonment/$250,000 fine
(Class A Felony)

**Count 9:**
SEX TRAFFICKING OF JANE DOE 5
18 U.S.C. §1591(a)(1), 18 U.S.C. §1591(b)(1)
15 years to life imprisonment/$250,000 fine
(Class A Felony)

**Count 10:**
ATTEMPTED SEX TRAFFICKING OF JANE DOE 8
18 U.S.C. §1594(a), 18 U.S.C. §1591(b)(1)
15 years to life imprisonment/$250,000 fine
(Class A Felony)

AO 245B (Rev. 09/19) Judgment in Criminal Case
   Sheet 2 — Imprisonment

Judgment — Page  3  of  11 

DEFENDANT:  **KEITH RANIERE**
CASE NUMBER: CR 18-0204 (S-2) (NGG)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: **SEE PAGE 4 OF JUDGMENT.**

.

☐ The court makes the following recommendations to the Bureau of Prisons:

X The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

  ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before 2 p.m. on _____ .

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**Ex. D, Att. 6, p. 3**

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 2A — Imprisonment

Judgment—Page __4__ of __11__

DEFENDANT:      KEITH RANIERE
CASE NUMBER:      CR 18-0204 (S-2) (NGG)

## ADDITIONAL IMPRISONMENT TERMS

FORTY (40) YEARS (480 MONTHS) (CAG) ON COUNT ONE (1) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONCURRENTLY WITH THE SENTENCE ON COUNT 2 AND CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

FORTY (40) YEARS (480 MONTHS) (CAG) ON COUNT TWO (2) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONCURRENTLY WITH THE SENTENCE IMPOSED ON COUNT 1 AND CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

TWENTY (20) YEARS (240 MONTHS) (CAG) ON COUNT SIX (6) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

TWENTY (20) YEARS (240 MONTHS) (CAG) ON COUNT SEVEN (7) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

FORTY (40) YEARS (480 MONTHS) (CAG) ON COUNT EIGHT (8) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONCURRENTLY WITH THE SENTENCES IMPOSED ON COUNTS 9 AND 10, AND CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

FORTY (40) YEARS (480) MONTHS (CAG) ON COUNT NINE (9) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONCURRENTLY WITH THE SENTENCES ON COUNTS 8 AND 10, AND CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED;

FORTY (40) YEARS (480) MONTHS (CAG) ON COUNT TEN (10) OF THE SUPERSEDING INDICTMENT (S-2) TO BE SERVED CONCURRENTLY WITH THE SENTENCES ON COUNTS 8 AND 9, AND CONSECUTIVELY WITH ALL OTHER SENTENCES IMPOSED.

TO SUMMARIZE, THIS IS A CUMULATIVE SENTENCE OF 120 YEARS (CAG).

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
               Sheet 3 — Supervised Release

| | Judgment—Page   5   of   11 |

DEFENDANT:      **KEITH RANIERE**
CASE NUMBER:   **CR 18-0204 (S-2) (NGG)**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: FIVE (5) YEARS ON COUNT ONE (1) OF THE SUPERSEDING INDICTMENT (S-2). FIVE (5) YEARS ON COUNT TWO (2) OF THE SUPERSEDING INDICTMENT (S-2). THREE (3) YEARS ON COUNT SIX (6) OF THE SUPERSEDING INDICTMENT (S-2). THREE (3) YEARS ON COUNT SEVEN (7) OF THE SUPERSEDING INDICTMENT (S-2). A LIFETIME TERM ON COUNT EIGHT (8) OF THE SUPERSEDING INDICTMENT (S-2). A LIFETIME TERM ON COUNT NINE (9) OF THE SUPERSEDING INDICTMENT (S-2). A LIFETIME TERM ON COUNT TEN (10) OF THE SUPERSEDING INDICTMENT (S-2). ALL TERMS OF SUPERVISED RELEASE TO BE SERVED CONCURRENTLY WITH ONE ANOTHER.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

| | | Judgment—Page | 6 | of | 11 |
|---|---|---|---|---|---|

DEFENDANT:        KEITH RANIERE
CASE NUMBER:      CR 18-0204 (S-2) (NGG)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

DEFENDANT:        KEITH RANIERE
CASE NUMBER:    CR 18-0204 (S-2)(NGG)

## SPECIAL CONDITIONS OF SUPERVISION

#1.  The defendant shall comply with any applicable state and/or federal sex offender registration requirements, as instructed by the probation officer, the Bureau of Prisons, or any state offender registration agency in the state where he resides, works, or is a student;

#2.  The defendant shall participate in a mental health treatment program, which may include participation in a treatment program for sexual disorders, as approved by the U.S. Probation Department. The defendant shall contribute to the cost of such services rendered and/or any psychotropic medications prescribed to the degree he is reasonably able, and shall cooperate in securing any applicable third-party payment. The defendant shall disclose all financial information and documents to the Probation Department to assess his ability to pay. As part of the treatment program for sexual disorders, the defendant shall participate in polygraph examinations to obtain information necessary for risk management and correctional treatment;

#3.  The defendant shall not associate with or have any contact with convicted sex offenders unless in a therapeutic setting and with the permission of the U.S. Probation Department;

#4.  The defendant shall not associate with children under the age of 18, unless a responsible adult is present and he has prior approval from the Probation Department. Prior approval does not apply to contacts which are not known in advance by the defendant where children are accompanied by a parent or guardian or for incidental contacts in a public setting. Any such non-pre-approved contacts with children must be reported to the Probation Department as soon as practicable, but no later than 12 hours.  Upon commencing supervision, the defendant shall provide to the Probation Department the identity and contact information regarding any family members or friends with children under the age of 18, whom the defendant expects to have routine contact with, so that the parents or guardians of these children may be contacted and the Probation Department can approve routine family and social interactions such as holidays and other family gatherings where such children are present and supervised by parents or guardians without individual approval of each event;

#5.  If the defendant cohabitates with an individual who has residential custody of minor children, the defendant will inform that other party of his prior criminal history concerning his sex offense. Moreover, he will notify the party of his prohibition of associating with any child(ren) under the age of 18, unless a responsible adult is present;

#6.  The defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer.  Failure to submit to a search may be grounds for revocation of release.  The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.  An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner;

DEFENDANT: KEITH RANIERE
CASE NUMBER: CR 18-0204 (S-2)(NGG)

## SPECIAL CONDITIONS OF SUPERVISION

#7.  The defendant is not to use a computer, Internet capable device, or similar electronic device to access pornography of any kind. The term "pornography" shall include images or video of adults or minors engaged in "sexually explicit conduct" as that term is defined in Title 18, U.S.C. § 2256(2).  The defendant shall also not use a computer, Internet capable device or similar electronic device to view images of naked children. The defendant shall not use his computer to view pornography or images of naked children stored on related computer media, such as CDs or DVDs, and shall not communicate via his computer with any individual or group who promotes the sexual abuse of children. The defendant shall also cooperate with the U.S. Probation Department's Computer and Internet Monitoring program. Cooperation shall include, but not be limited to, identifying computer systems, Internet capable devices, and/or similar electronic devices the defendant has access to, and allowing the installation of monitoring software/hardware on said devices, at the defendant's expense. The defendant shall inform all parties that access a monitored computer, or similar electronic device, that the device is subject to search and monitoring. The defendant may be limited to possessing only one personal Internet capable device, to facilitate the Probation Department's ability to effectively monitor his/her Internet related activities. The defendant shall also permit random examinations of said computer systems, Internet capable devices, similar electronic devices, and related computer media, such as CDs, under his control.

#8.  The defendant shall report to the Probation Department any and all electronic communications service accounts (as defined in 18 U.S.C. § 2510(15)) used for user communications, dissemination and/or storage of digital media files (i.e. audio, video, images). This includes, but is not limited to, email accounts, social media accounts, and cloud storage accounts. The defendant shall provide each account identifier and password, and shall report the creation of new accounts, changes in identifiers and/or passwords, transfer, suspension and/or deletion of any account within 5 days of such action. Failure to provide accurate account information may be grounds for revocation of release. The defendant shall permit the Probation Department to access and search any account(s) using the defendant's credentials pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the account(s) to be searched contains evidence of this violation. Failure to submit to such a search may be grounds for revocation of release.

#9.  Upon request, the defendant shall provide the U.S. Probation Department with full disclosure of his financial records, including co-mingled income, expenses, assets and liabilities, to include yearly income tax returns. With the exception of the financial accounts reported and noted within the presentence report, the defendant is prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge and approval of the U.S. Probation Department. The defendant shall cooperate with the probation officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income and expenses. The defendant shall cooperate in the signing of any necessary authorization to release information forms permitting the U.S. Probation Department access to his financial information and records;

| | | Judgment—Page | 9 | of | 11 |

DEFENDANT: KEITH RANIERE
CASE NUMBER: CR 18-0204 (S-2)(NGG)

## SPECIAL CONDITIONS OF SUPERVISION

#10.  The defendant shall not have contact with any of the named victims of his offenses. This means that he shall not attempt to meet in person, communicate by letter, telephone, or through a third party, without the knowledge and permission of the Probation Department;

#11.  The defendant shall not associate in person, through mail, electronic mail or telephone with any individual with an affiliation to Executive Success Programs, Nxivm, DOS or any other Nxivm-affiliated organizations; nor shall the defendant frequent any establishment, or other locale where these groups may meet pursuant, but not limited to, a prohibition list provided by the U.S. Probation Department;

#12.  The defendant shall comply with the fine payment order;

#13.  The defendant shall comply with the attached Order of Forfeiture.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page | 10 | of | 11 |

DEFENDANT:       KEITH RANIERE
CASE NUMBER:     CR 18-0204 (S-2) (NGG)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | Forfeiture Money Judgment | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 700.00 | $ TBD | $ 1,750,000.00 | $ N/A | $ 15,000.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| **TOTALS** | $ _____ | $ _____ | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Ex. D, Att. 6, p. 10

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 6 — Schedule of Payments

DEFENDANT:      KEITH RANIERE
CASE NUMBER:    CR 18-0204 (S-2) (NGG)

Judgment — Page __11__ of __11__

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**    X   **Special Assessment of $ __700.00__** due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B**    ☐    .           ☐   ☐ D, or   ☐ F below); or

**C**    X
    ☐    **Fine Payment of $1,750,000.00 due immediately.**
                (                              over a period of
        _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**    ☐    Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
    term of supervision; or

**E**    .
    X    **JVTA assessment of $15,000.00**

**F**    X    **Order of Restitution to be determined**

    **An Order of Restitution must be submitted within 90 days from October 27, 2020.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

    Case Number
    Defendant and Co-Defendant Names  ·
    *(including defendant number)*     **Total Amount**     **Joint and Several Amount**     **Corresponding Payee, if appropriate**

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

BDM:KKO
F. #2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

          - against -

KEITH RANIERE,

               Defendant.

– – – – – – – – – – – – – – – –X

<span style="text-decoration: underline;">ORDER OF FORFEITURE</span>

18-CR-204 (S-2) (NGG)

WHEREAS, on or about June 19, 2019, Keith Raniere, also known as "Vanguard," "Grandmaster," and "Master" (the "defendant"), was convicted after a jury trial of Counts One, Two, and Six through Ten, of the above-captioned Superseding Indictment, charging violations of 18 U.S.C. §§ 1349, 1591(a)(1), 1594(a), 1594(b), 1594(c), 1962(c), and 1962(d); and

WHEREAS, the Court has determined that pursuant to 18 U.S.C. § 1963(a), the defendant shall forfeit: (a) any interest the defendant acquired or maintained in violation of 18 U.S.C. § 1962; (b) any interest in, security of, claim against or property or contractual right of any kind affording a source of influence over any enterprise which the defendant has established, operated, controlled, conducted or participated in the conduct of, in violation of 18 U.S.C. § 1962; (c) any property constituting, or derived from, any proceeds which the defendant obtained, directly or indirectly, from racketeering activity in violation of 18 U.S.C. § 1962; and/or (d) substitute assets, pursuant to 18 U.S.C. § 1963(m), which shall be reduced to a forfeiture money judgment (the "Forfeiture Money Judgment").

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND
DECREED as follows:

1.      The defendant shall forfeit to the United States the Forfeiture Money
Judgment, pursuant to 18 U.S.C. §§ 1963(a) and 1963(m).

2.      This Order of Forfeiture ("Order") is entered pursuant to Fed. R. Crim.
P. 32.2(b)(2)(c), and will be amended pursuant to Fed. R. Crim. P. 32.2(e)(1) when the
amount of the Forfeiture Money Judgment has been calculated.

3.      All payments made towards the Forfeiture Money Judgment shall be
made by a money order, or certified and/or official bank check, payable to U.S. Marshals
Service with the criminal docket number noted on the face of the check. The defendant shall
cause said payment(s) to be sent by overnight mail delivery to Assistant United States
Attorney Karin K. Orenstein, United States Attorney's Office, Eastern District of New York,
271-A Cadman Plaza East, Brooklyn, New York 11201, with the criminal docket number
noted on the face of the instrument. The Forfeiture Money Judgment shall become due and
owing in full thirty (30) days after any amendment of this Order pursuant to Rule 32.2(e)(1)
(the "Due Date").

4.      If the defendant fails to pay any portion of the Forfeiture Money
Judgment on or before the Due Date, the defendant shall forfeit any other property of his up
to the value of the outstanding balance, pursuant to 18 U.S.C. § 1963(m).

5.      Upon entry of this Order, the United States Attorney General or his
designee is authorized to conduct any proper discovery in accordance with Fed. R. Crim. P.
32.2(b)(3) and (c). The United States alone shall hold title to the monies paid by the

---

defendant to satisfy the Forfeiture Money Judgment following the Court's entry of the judgment of conviction.

6.     The defendant shall fully assist the government in effectuating the payment of the Forfeiture Money Judgment.

7.     The entry and payment of the Forfeiture Money Judgment is not to be considered a payment of a fine, penalty, restitution loss amount or a payment of any income taxes that may be due, and shall survive bankruptcy.

8.     Pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B), this Order of Forfeiture shall become final as to the defendant at the time of sentencing and shall be made part of the sentence and included in the judgment of conviction. This Order shall become the Final Order of Forfeiture, pursuant to Fed. R. Crim. P. 32.2(c)(2) and (e)(1). At that time, the monies and/or properties paid toward the Forfeiture Money Judgment shall be forfeited to the United States for disposition in accordance with the law.

9.     This Order shall be binding upon the defendant and the successors, administrators, heirs, assigns and transferees of the defendant, and shall survive the bankruptcy of any of them.

10.     This Order shall be final and binding only upon the Court's "so ordering" of the Order.

---

18-CR-204 (S-2) (NGG)

*United States v. Keith Raniere*
Order of Forfeiture

Page 3

11.   The Court shall retain jurisdiction over this action to enforce compliance with the terms of this Order and to amend it as necessary, pursuant to Fed. R. Crim. P. 32.2(e).

Dated:   Brooklyn, New York
         _____ Oct 26 _____, 2020

                              SO ORDERED:

                              _____
                              HONORABLE NICHOLAS G. GARAUFIS
                              UNITED STATES DISTRICT JUDGE
                              EASTERN DISTRICT OF NEW YORK

18-CR-204 (S-2) (NGG)          *United States v. Keith Raniere*
                                    Order of Forfeiture

                                                          Page 4

Exhibit D

Attachment 7

# NOTICE OF EMAIL/MAIL/PHONE SERVICE LIMITATION CHANGE

Pursuant to Program Statements  4500.11 Trust Fund/Deposit Fund Manual,  5264.08 Inmate Telephone Regulations, & 5265.14 Correspondence, I have exercised my discretion to limit your Telephone Usage, TRULINCS services, and Correspondence. This form is maintained in your Central File, which you may access through your Unit Team, unless this request had to be maintained in the FOIA Exempt Section due to sensitive content. If this request is in the FOIA Exempt Section, you can request such through the FOIA process. Your Unit Team can provide you the address for the FOIA. If you have concerns about this limitation, you may utilize the Administrative Remedy Process.

P.S. 4500.11: Use of TRULINCS is a privilege; therefore, the Warden may limit or deny the privilege of a particular inmate (see Section 14.9 for restrictions). This authority may not be delegated below the Associate Warden level.

P.S. 5264.08: In addition to the procedures set forth in this subpart, Inmate telephone use is subject to those limitations which the Warden determines are necessary to ensure the security or good order, including discipline, of the institution or to protect the public.

P.S. 5265.14: The Warden may place an inmate on restricted general correspondence based on misconduct or as a matter of classification.

TO: _Keith Raniere_     _57005 · 177_     _CI -108_
Inmate Name            Register No.      Quarters

FROM: _____     _5/3/2022_
D. Colbert, Warden                  Date

Reason for change (Check Box): ☒ SIS Investigation  ☐ 100/200 Series Incident Report  ☐ FRP Refused  ☐ Other

Restore
(Initial)

| | |
|---|---|
| ☐ | Disallow Telephone Fund Transfers (TRUFONE)<br>Manage TRU-Units Restricted (TRULINCS).<br>Manage Funds Restricted (TRULINS).<br>Restrict Commissary shopping list. |
| ☐ | Limit of one 5 minute phone call per week. |
| ☒ | Maximum of 10 total active contacts *(All current contacts will be deleted and SIS will need to approve the initial 10 contacts entered).* (TRULINCS) |
| ☒ | Inmate is placed on Contact Pre-Approval *(SIS will review change requests on  a quarterly basis).* (TRULINCS) |
| ☐ | Recommend to Unit Team that inmate be placed on PSF for the telephone and disallow public messaging. (TRUFONE & TRULINCS) |
| ☐ | Inmate is placed on Restricted General Correspondence. |

☐ Restore full privileges.     _____     _____
                              D. Colbert , Warden              Date

CC: Trust Fund Supervisor          **INITIAL REVIEW DATE:** _____
    Applicable Unit Team           *If you are currently housed within the Special Housing, upon your release see a member of the Executive Staff at mainline to be assigned a review date. Bring this form with you.*

Exhibit D

Attachment 8

Date:     05/19/2022                                                                                                    Facility: TCN
Time:     03:19 PM

Federal Bureau of Prisons

TRULINCS

**Inmate Contacts**

Sensitive But Unclassified

| Inmate Reg#: | 57005177 |
|---|---|
| **Group:** | *<ALL>* |
| **Facility:** | TCN |
| **Institution:** | *<ALL>* |
| **Contact Status:** | Active |
| **Contact:** | <ALL> |

**Inmate:  57005177 RANIERE, KEITH**                                                                                  **TCP-C-A**

| Contact Name<br>Legal Name | Address(es) | Email Address(es) | Phone Number(s) | Comment(s) | Video<br>Contact |
|---|---|---|---|---|---|
| **Marc Agnifolo**<br>Marc Agnifolo | ███████████<br>NEW YORK, NY 10016<br>United States | | | | No |
| Date Created:<br>05/18/2022 | | | | | |
| Relationship: Attorney | Last Changed: 05/19/2022 | | | | |
| **Jennifer Bon Jean**<br>Jennifer Bon Jean | █████████████<br>BROOKLYN, NY 11238<br>United States | | | | No |
| Date Created:<br>05/18/2022 | | | | | |
| Relationship: Attorney | Last Changed: 05/18/2022 | | | | |
| **Paul Derohanesian**<br>Paul Derohanesian | ██████████<br>CLIFTON PARK, NY 12065<br>United States | | | | No |
| Date Created:<br>05/18/2022 | | | | | |
| Relationship: Attorney | Last Changed: 05/18/2022 | | | | |

User ID:   TF44221

Date:    05/19/2022                                                                                                Facility: TCN
Time:    03:19 PM

Federal Bureau of Prisons
TRULINCS
**Inmate Contacts**
Sensitive But Unclassified

| Contact Name<br>Legal Name | Address(es) | Email Address(es) | Phone Number(s) | Comment(s) | Video<br>Contact |
|---|---|---|---|---|---|
| **Marianna Fernandez** | ██████████<br>CLIFTON PARK, NY 12065<br>United States | | | | No |
| Date Created:<br>05/16/2022 | | | | | |
| Relationship: Other Relation Last Changed: 05/19/2022 | | | | | |
| **Teny Geragos** | ██████<br>NEW YORK, NY 10016<br>United States | | | | No |
| Date Created:<br>05/19/2022 | | | | | |
| Relationship: Attorney | Last Changed: 05/19/2022 | | | | |
| **Jacob Kaplan** | ██████<br>NEW YORK, NY 10016<br>United States | | | | No |
| Date Created:<br>05/19/2022 | | | | | |
| Relationship: Attorney | Last Changed: 05/19/2022 | | | | |
| **Howard Leader** | █████<br>NEW YORK, NY 10007<br>United States | | | | No |
| Date Created:<br>05/19/2022 | | | | | |
| Relationship: Attorney | Last Changed: 05/19/2022 | | | | |

Date:     05/19/2022                                                                                                                    Facility: TCN
Time:     03:19 PM

Federal Bureau of Prisons

TRULINCS

**Inmate Contacts**

Sensitive But Unclassified

| Contact Name<br>Legal Name | Address(es) | Email Address(es) | Phone Number(s) | Comment(s) | Video<br>Contact |
|---|---|---|---|---|---|
| **Jeffrey Lichtman** | ███████<br>NEW YORK, NY 10017<br>United States | | | | No |
| Date Created:<br>05/19/2022 | | | | | |
| Relationship: Attorney | Last Changed: 05/19/2022 | | | | |
| **Danielle Smith** | ███████<br>CLIFTON PARK, NY 12065<br>United States | | | | No |
| Date Created:<br>05/19/2022 | | | | | |
| Relationship: Attorney | Last Changed: 05/19/2022 | | | | |
| **Michael Sullivan** | ███████<br>CLIFTON PARK, NY 12065<br>United States | | | | No |
| Date Created:<br>05/19/2022 | | | | | |
| Relationship: Attorney | Last Changed: 05/19/2022 | | | | |