MGD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Keith Raniere,

Plaintiff,

v.

Merrick Garland, et al.,

Defendants.

No. CV 22-00212-TUC-RCC

**ORDER**

On May 5, 2022, Plaintiff Keith Raniere, who is currently confined in the United States Penitentiary (USP)-Tucson and is represented by counsel, filed a civil rights Complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against United States Attorney General Merrick Garland, Bureau of Prisons (BOP) Director Michael Carvajal, USP-Tucson Warden Barbara Von Blanckensee, and Lieutenant Anthony Gallion. Plaintiff also paid the filing fee. On May 6, 2022, Plaintiff filed a First Amended Complaint seeking declaratory and injunctive relief to enjoin "prison officials from retaliating, and from actively frustrating and impeding his First and Sixth Amendment rights to access to the courts and counsel." (Doc. 3 at 1.)

On May 26, 2022, Plaintiff filed a Motion for Preliminary Injunction and requested expedited consideration and a hearing. (Doc. 7.) Plaintiff states in his Motion that his three-year deadline for post-conviction relief based on newly discovered evidence is June 19, 2022 and that Defendants are "unlawfully hindering and obstructing Plaintiff's First and Sixth Amendment rights to communicate via telephone with his criminal defense

attorneys and his attorneys' agents in the lead-up to the 3-year deadline . . . ." (*Id.* at 1.) On May 31, 2022, the Court determined that Plaintiff did not meet the standard for an ex parte temporary restraining order and ordered Plaintiff to immediately serve Defendants with the First Amended Complaint and Motion for Preliminary Injunction given the imminent deadline for Plaintiff's post-conviction relief filing. (Doc. 9.) Defendants filed an expedited Response to the Motion on June 9, 2022, and Plaintiff filed a Reply on June 10. (Docs. 14, 15.) Meanwhile, on June 7, 2022, Plaintiff filed a Motion for Temporary Restraining Order (TRO) and requested expedited consideration of that motion and a hearing. (Doc. 13.) The Motion for TRO seeks "an urgent injunction reinstating communication with Mr. Suneel Chakravorty, who is Plaintiff's Power-of-Attorney and a paralegal to Plaintiff's post-conviction attorneys." (*Id.* at 1.) Plaintiff states that Defendants "have actual notice of the Complaint and Motion" and "additional notice should not be required because it is apparent that Defendants intend to delay their response until the harm has been done and the F.R.Crim.P. Rule 33 deadline has passed."[1] (*Id.* at 3.) Defendants filed an expedited response on June 14, 2022. (Doc. 17.) To date, Plaintiff has not filed a Reply.[2]

The Court finds Plaintiff's Motions suitable for disposition without a hearing pursuant to Local Rule of Civil Procedure 7.2(f) and will deny the Motions.

## I. Background

Plaintiff alleges the following in his First Amended Complaint. Plaintiff is serving a 120-year prison sentence for, among other things, child sexual exploitation and possession of child pornography. (Doc. 3 ¶ 11.) On April 28, 2022, Plaintiff's criminal defense attorney Joseph Tully filed a motion to stay an appeal in the Second Circuit Court

---

[1] Federal Rule of Criminal Procedure 33, *New Trial*, requires that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case." Fed. R. Crim. P. 33(b)

[2] Because Plaintiff's Motion for TRO addresses the exact same issue as his Motion for Preliminary Injunction, and because Plaintiff apparently wants a ruling on both Motions before June 19, 2022, the Court need not await Plaintiff's Reply to rule on the Motion for TRO.

of Appeals because he intended to file a motion for new trial in the district court based on newly discovered evidence in the form of three experts' reports concluding the FBI had falsified and tampered with evidence and federal agents had committed perjury relevant to Plaintiff's child pornography and sexual exploitation convictions. (*Id.* ¶ 15.)

On May 2, 2021, Suneel Chakravorty, who is Plaintiff's power-of-attorney and "an agent of Plaintiff's criminal defense attorney Joseph Tully," was visiting Plaintiff, and the visit was terminated, and Mr. Chakravorty's visitation privileges were permanently revoked by Defendant Von Blanckensee. (*Id.* ¶¶ 13, 26.)

On May 3, 2022, criminal defense attorney Tully filed the aforementioned motion for new trial pursuant to Federal Rule of Criminal Procedure 33 in the district court. (*Id.* ¶ 17.) On May 4, 2022, Plaintiff was on a privileged legal call with Tully, and the call was terminated prematurely and without warning. (*Id.* ¶ 18.) Mr. Tully aniticiaptes that the district court in New York will hold a hearing on the Rule 33 petition, and he needs to consult with Plaintiff to prepare for the hearing. (*Id.* ¶ 19.) Shortly after the May 4 call was terminated, Plaintiff was instructed to go to an administrative office, where Defendant Gallion, whom Plaintiff believes is with BOP's Special Investigative Services (SIS), asked Plaintiff about certain individuals who were on Plaintiff's approved telephone and visitation list. (*Id.* ¶¶ 20, 23.) Many of the individuals on the list were attorneys or "attorney's agents," such as Mr. Chakravorty.[3] (*Id.* ¶ 23.) Defendant Gallion "made the affirmative decision to 'scrub' Plaintiff's approved callers and visitors list" and told Plaintiff he would have to apply to a unit manager to have anyone re-approved, and it was unlikely Mr. Chakravorty would be approved. (*Id.* ¶ 25.) When Plaintiff asked Defendant Gallion why this was being done, Gallion only told him, "there was an investigation." (*Id.* ¶¶ 27, 28.) On May 6, Defendants "interfered and frustrated" a confidential legal call

[3] Plaintiff claims he can only communicate with Mr. Chakravorty if he is on Plaintiff's approved list of callers. (Doc. 3 ¶ 26.) Plaintiff's conversations with Mr. Chakravorty are recorded and monitored by prison officials and are not treated as confidential, even though Mr. Chakravorty is an agent of Plaintiff's criminal defense attorney. (*Id.*)

between Plaintiff and attorney Joseph Daugherty by "causing the phone call to be cut off" before Plaintiff and the attorney had concluded the conversation. (*Id.* ¶ 29.)

Count One alleges a violation of Plaintiff's First Amendment right of access to the courts based on Defendants' interference with Plaintiff's right to communicate with his attorneys and their agents. Count Two alleges a First Amendment retaliation claim based on Defendants "imminently threatening to cut off Plaintiff's telephonic and in-person communication with his attorneys" the day after his criminal defense attorney filed the Rule 33 motion for new trial. Count Three alleges a violation of Plaintiff's Sixth Amendment rights based on Defendants' deliberate interference to the confidential relationship between Plaintiff and his criminal defense attorney, which "substantially prejudices" Plaintiff by preventing him from helping prepare his attorney for the hearing on the motion and preventing his attorney from providing effective assistance of counsel. Plaintiff seeks declaratory and injunctive relief prohibiting Defendants from impeding him from communicating with his attorneys and their agents either by telephone or in person.

On screening Plaintiff's First Amended Complaint under 28 U.S.C. § 1915A(a), the Court required Plaintiff to serve Defendants and required Defendants to answer. (Doc. 5.)

## II. Motion for Preliminary Injunction

### A. Plaintiff's Motion and Evidence

In his Motion filed on May 26, 2022, Plaintiff seeks an urgent injunction reinstating communications with Suneel Chakravorty, "who is Plaintiff's Power-of-Attorney and a paralegal to Plaintiff's post-conviction attorneys" in advance of the "3-year deadline for post-conviction relief petitions based on newly discovered evidence on June 19, 2022." (Doc. 7 at 1.) Plaintiff asserts that his legal team has communicated regularly with Plaintiff since January 2021, but Mr. Chakravorty's in-person visitation privileges were revoked without explanation on May 2, 2021, meaning Plaintiff could only speak with Mr. Chakravorty on a recorded, non-privileged telephone line. (*Id.* at 2.) Despite this hindrance, Plaintiff states that Mr. Chakravorty hired the criminal defense firm of Tully & Weiss, and Mr. Chakravorty serves "a central role in the communications between and

within the legal team." (*Id.*) Because Mr. Chakravorty may only use a non-confidential phone line when speaking with Plaintiff, "any conversation they wished to remain private had to be arranged directly with the attorneys," which has hindered Plaintiff's lawyers "in their representation just as the deadline for post-conviction relief based on newly discovered evidence is expiring." (*Id.* at 2-3.)

In support of his Motion, Plaintiff presents an Affidavit by Mr. Chakravorty, who asserts that he has a background in computer technology, he attended every day of Plaintiff's trial in 2019, and he was not a witness, co-conspirator, or co-defendant in Plaintiff's criminal case in New York. (Doc. 7-1 at 2.) Mr. Chakravorty asserts that Plaintiff founded an organization called NXIVM in 1998, but NXIVM had no members, and "consisted of companies that offered self-development courses to over 17,000 students." (*Id.* at 6.) Mr. Chakravorty took courses from NXIVM-affiliated companies, but he was not a member and was never identified during Plaintiff's criminal trial as a member of NXIVM's "inner circle." (*Id.* at 6-7.) Mr. Chakravorty met with Plaintiff after the trial and told Plaintiff he thought the government's expert witness "misrepresented the reliability of the digital evidence" presented at trial. (*Id.* at 2-3.) Mr. Chakravorty asserts that, in January 2021, he signed a contract to act as Power of Attorney for Plaintiff, and in that role, Mr. Chakravorty retained experts to analyze the government experts' information and findings. (*Id.* at 4.) Mr. Chakravorty asserts that, as Power of Attorney, he "stand[s] in Plaintiff's shoes in various matters and can legally make decisions as though [he] were [Plaintiff]" and that he "cannot conduct these duties ethically without regularly communicating with [Plaintiff]." (*Id.*) Mr. Chakravorty asserts that the findings of the experts convinced attorney Tully to file a Rule 33 motion to reopen Plaintiff's criminal case, and that he "act[s] as a paralegal to attorney Tully for the purposes of the Rule 33 petition." (*Id.*) According to Mr. Chakravorty, his role "evolved into paralegal and manager of the legal team" working to overturn Plaintiff's conviction, and Mr. Chakravorty has retained and discharged members of Plaintiff's legal team as circumstances warranted. (*Id.*) Mr. Chakravorty maintains that his knowledge of the facts of the case and expertise

in data analysis allow him to translate concepts and streamline communication between Plaintiff, the computer forensics experts, and the legal team, and that he must have regular communication with Plaintiff before the June 19, 2022, deadline for Rule 33 motions. (*Id.*)

**B. Defendants' Response and Evidence**

**1. Plaintiff's Ongoing Criminal Proceedings**

On April 29, 2022, the Second Circuit Court of Appeals denied Plaintiff's April 28, 2022 motion to stay his criminal appeal pending a Rule 33 motion. (Doc. 14 at 8-9; Ex. G (Doc. 193 in *Raniere v. United States*, Case 20-3789 (2nd Cir. April 29, 2022).) On May 9, 2022, the New York District Court deferred consideration of Plaintiff's Rule 33 Motion due to the ongoing appeal. (*Id.*, citing May 9, 2022 order in *United States v. Raniere*, Case No. 1:18-cr-00204-NGG-VMS (E.D.N.Y. May 9, 2022).) According to Defendants, there is no hearing imminent, and Plaintiff neglected to mention this in his Motion for Preliminary Injunction, filed 17 days after the New York District Court issued its Order deferring the Rule 33 Motion. (Doc. 14 at 9.)

Defendants' evidence shows that Plaintiff was convicted by a jury on June 19, 2019, of Racketeering, Racketeering Conspiracy, Forced Labor Conspiracy, Wire Fraud Conspiracy, Sex Trafficking, Attempted Sex Trafficking, and Sex Trafficking Conspiracy. (Doc. 14 at 1; Ex. A ¶ 4, Attach. 1 at 2-4 and Attach. 2 at 1-4, 12.) Prior to Plaintiff's sentencing, the government informed the judge that Plaintiff continued to regularly contact people affiliated with NXIVM, including Mr. Suneel Chakravorty. (Doc. 14 at 2, citing Doc. 914 in *United States v. Raniere*, Case No. 1:18-cr-00204-NGG-VMS (E.D.N.Y. Aug. 27, 2020) and Ex. B.) The government represented that, in July 2020, the BOP suspended calls between Plaintiff and Mr. Chakravorty, and Plaintiff thereafter entered an individual by the name of "Issac Edwards" to his contact list; the address Plaintiff provided for Issac Edwards was fabricated, the phone number belonged to a burner phone, and Issac Edwards turned out to be Mr. Chakravorty. (*Id*. at 3, citing Doc. 914 at 56 n.14 in *United States v. Raniere*, Case No. 1:18-cr-00204-NGG-VMS.) At Plaintiff's sentencing on October 27, 2020, the sentencing judge ordered that Plaintiff "shall not associate in person, through

mail, electronic mail or telephone with any individual with an affiliation to Executive Success Programs, Nxivm, DOS or any other Nxivm-affiliated organizations." (Doc. 14 at 1-2; Ex. A, Attach. 2 at 9.)

**2. BOP Regulations and Policies**

Defendants cite the following regulations and BOP Policies addressing visitors and telephone privileges at BOP facilities. (Doc. 14 at 5.) Visiting privileges are extended to friends and associates "having an established relationship with the inmate prior to confinement, unless such visits could reasonably create a threat to the security and good order of the institution." 28 C.F.R. § 540.44(c). An exception is made for prisoners without other visitors if it "is shown that the proposed visitor is reliable and poses no threat to the security or good order of the institution." (*Id.*) The Warden may limit or deny the use of TRULINCS to a prisoner, and prisoners may be subject to telephone restrictions imposed by the Warden "to protect the safety security and good order of the institution, as well as to protect the public." Program Statement (P.S.) 4500.12 and P.S. 5264.08.

The BOP recognizes the use of assistants by attorneys to perform legal tasks and, with proper controls and exceptions enumerated . . . accords such assistants the same status as attorneys with respect to visiting and correspondence." 28 C.F.R. § 543.16(a). "The special visiting/correspondence status accorded to paralegals, clerks, and legal assistants depends on an ongoing, supervisory relationship with an attorney on an approved visiting/correspondence list. Absent any current supervisor relationship, such persons may only receive social visiting or general correspondence privileges." P.S. 1315.07. An attorney who employs an assistant whom the attorney wants to visit or correspond with a prisoner must provide the Warden with a signed statement certifying the assistant's ability, that the attorney pledges to supervise the assistant's activities, and the attorney accepts personal and professional responsibility for the assistant's activities that may affect the institution, prisoners, and staff. 28 C.F.R. § 543.16(b)(1)-(3). The Warden may require the assistant to fill out and sign a personal history statement and pledge to abide by BOP regulations and institution guidelines, and the Warden may prohibit a legal assistant from

visiting or corresponding with a prisoner if necessary to maintain security and good order in the institution. *Id*. The Warden may also require each paralegal, clerk, or legal assistant to complete a BP-S243.013 application and the BP-S242.013 Paralegal or Legal Assistant Agreement form. P.S. 1315.07.

**3. Relationship Between Mr. Chakravorty and Plaintiff**

In October 2020, Mr. Chakravorty admitted to the New York District Court that his first conversation with Plaintiff was after Plaintiff's trial, when Plaintiff was already in prison, and prior to that time, "he and I were complete strangers." (Doc. 14 at 6; Ex. D ¶ 5, Attach. 5 at 1.) Mr. Chakravorty detailed his involvement with NXIVM, as a coach for the Executive Success Programs (ESP) and NXIVM, and his decision to "stay involved even during an international media storm," and he stated that ESP "did not seem like a sinister organization" and that is why he chose to continue as a coach until the companies closed in May 2018. (*Id*., Ex. D, Attach. 5 at 2-4.)

As early as July 2020, the BOP determined that Plaintiff and Mr. Chakravorty were engaging in behavior that compromised the security of the facility where Plaintiff was being held. (*Id*. at 3; Ex. D ¶ 5 and Attach. 2.) Plaintiff and Mr. Chakravorty were recording prison-initiated telephone calls to use in podcasts and interviews Plaintiff was pursuing with HBO, Netflix, and Showtime. (*Id*.) They were also organizing a group of women to show up at the prison and dance provocatively in view of prisoners, which led to Plaintiff being moved to another housing unit, and Plaintiff gave Mr. Chakravorty staff work schedules and indicated that protesters on Plaintiff's behalf should wait outside for staff and offer them donuts and coffee as they exited the facility. (*Id*.) The Counter Terrorism Unit (CTU) concluded that Plaintiff's manipulative behavior, through the help of Mr. Chakravorty, "would place the safety and security of staff and the public at risk," and recommended that Mr. Chakravorty be removed as one of Plaintiff's approved contacts. (*Id*.) The Warden agreed, and Mr. Chakravorty was removed from Plaintiff's approved contact list. (Id.; Ex. D ¶ 8, Attach 3 at 1.)

In an October 30, 2021 letter, which was not on an attorney's letterhead, Mr. Chakravorty wrote to the court presiding over a civil action against Plaintiff that he was "not a party to this case, nor am I an attorney. I am defendant Keith Raniere's power of attorney," and, as Plaintiff's power of attorney he had "referred cyber forensics experts to his criminal counsel." (*Id*. at 4; Ex. F (Doc. 121 in *Edmonson v. Raniere*, Case 1:20-cv-00485-EK-CLP (E.D.N.Y.).) In a November 28, 2021 letter to that same court, which is also not on an attorney's letterhead, Chakravorty again identified himself as holding Plaintiff's power of attorney, not as a paralegal working for Plaintiff's attorney. (*Id*.; Ex. E.)

In early May 2022, the USP-Tucson Special Investigative Services (SIS) Department was monitoring telephone calls between Plaintiff and Mr. Chakravorty in which they spoke about being "at war" with the federal government with "no holds barred." (*Id*. at 7; Ex. D.) Even more concerning to the SIS was Plaintiff asking Mr. Chakravorty about the quality of the recordings and stating that he had many recordings. (*Id*.) On May 3, 2022, as a result of the SIS Department's findings and in consultation with the BOP's Counter-Terrorism Unit, the USP-Tucson Warden imposed limitations on Plaintiff's contact list, limiting Plaintiff to 10 active contacts, not including counsel, and all contacts were removed from Plaintiff's list except Marianna Fernandez and 9 verified attorneys. (*Id*.; Ex. D, Attach 8.) If Plaintiff wants to add more contacts in the future, the SIS Department will review the individuals as part of the approval process. (*Id*.; Ex. D ¶ 18.) As of May 31, 2022, Plaintiff had not requested that additional individuals be added to his approved contact list. (*Id*.; Ex. D ¶ 18.) According to Acting SIA Gallion, all recommendations and determinations "were made for the safety, security and good order of the institution and not in any way to hinder Plaintiff's legal efforts." (*Id*. at 8; Ex. D ¶ 19.)

Plaintiff may still access his attorneys through confidential legal mail, legal calls, and legal visits, and Plaintiff has had frequent legal visits. (*Id*.; Ex. D ¶ 17; Ex. A ¶ 15.)

. . . .

**4. Plaintiff's Legal Calls**

When an attorney requests a legal call with a prisoner, the prisoner's correctional counselor ensures the attorney is licensed and in good standing. (Doc. 14 at 9; Ex. A ¶ 9.) Legal calls in a housing unit take place in the counselor's office and the counselor facilitates the call. (*Id.*) The legal calls are not recorded or monitored, and the staff member only remains in the office until the connection is made with the prisoner's attorney or appropriate staff; the counselor leaves the room once the connection is made and visually monitors the prisoner from outside the room but cannot hear the content of the legal call. (*Id.*)

Plaintiff's legal calls are coordinated within these normal procedures, and he has not been targeted for any restrictions on his ability to have legal phone calls. (*Id.*; Ex. A ¶ 10.) Plaintiff's counselor keeps a log of his legal calls, and as of May 31, 2022, the log shows 32 legal calls facilitated by Plaintiff's counselor since October 4, 2021, with most calls lasting an hour. (*Id.*; Ex. A ¶ 11.) The log shows a call on May 4, 2022, between Plaintiff and Joseph Tully, which lasted an hour. (*Id.*) That call was disconnected. (*Id.*) If a call is disconnected, the counselor attempts to reestablish the call. (*Id.;* Ex. A ¶ 12.) In addition, another counselor, Ashworth, placed 16 legal calls to Plaintiff's attorneys between January 5, 2022 and May 27, 2022, with most calls lasting an hour; one call lasted two hours and, another call lasted 35-minutes. (*Id.*; Ex. A ¶ 13, Attach 4.) On May 6, 2022, Case Manager Watson facilitated a call between Plaintiff and Mr. Daugherty. (*Id.*; Ex. H ¶ 5.) The connection was lost during the call, and Watson called Mr. Daugherty back, and the legal call resumed without further incident.

## III. Legal Standards

### A. Injunctive Relief

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555

U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). Nonetheless, "federal courts must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners" and must not "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (citation omitted).

A plaintiff seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the government opposes a preliminary injunction, "[t]he third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry ." *Porretti*, 11 F.4th at 1047. The "balance of equities" concerns the burdens or hardships to a prisoner complainant compared with the burden on the government defendants if an injunction is ordered. *Id.* The public interest mostly concerns the injunction's impact on nonparties rather than parties. *Id.* (citation omitted). Regardless, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citation omitted).

Where a plaintiff seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). Further, under the Prison Litigation Reform Act, injunctive relief must be narrowly drawn and be the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

. . . .

**B. First Amendment (Access to the Courts)**

There are two types of access-to-court claims: those concerning a prisoner's right to affirmative assistance in challenging their sentences or conditions of their confinement and those, like the instant action, concerning a prisoner's right to litigate without active interference. *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds by Richey v. Dahne*, 807 F.3d 1202, 1209 n.2 (9th Cir. 2015).

In this second line of cases, the right of meaningful access to the courts prohibits officials from actively interfering with prisoners' attempts to prepare or file legal documents in all types of civil proceedings so long as those proceedings have a reasonable basis in law or fact. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013) ("by virtue of their broader right to petition the government for a redress of [their] grievances under the First Amendment, prisoners must also have opportunities to pursue certain other types of civil litigation") (internal quotations and citations omitted).

Regardless of which type of claim is alleged, to prevail on an access-to-court claim, a plaintiff must show: "(1) the loss of a "nonfrivolous" or "arguable" underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing *Christopher*, 536 at 416), *vacated on other grounds* 555 U.S. 1150 (2009).

The Ninth Circuit has held that "[t]he opportunity to communicate privately with an attorney is an important part" of meaningful access to the courts; thus, "a prisoner's right of access to the courts includes contact visitation with his counsel." *Ching v. Lewis*, 895 F.2d 608, 609–10 (9th Cir. 1990). The Ninth Circuit has also held that a prisoner may be deprived of access to the court if he is denied telephone access to his attorney absent a legitimate penological reason. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). And it is well established that prisoners have a constitutional right to send legal mail, and prison officials cannot take any actions that delay the mailing of legal mail. *See Houston v. Lack*,

487 U.S. 266, 270–76 (1988) (prison officials cannot take actions that delay mailing of prisoner's legal papers when such a delay effectively denies access to the courts).

**C. Sixth Amendment (Right to Counsel)**

The Sixth Amendment guarantees a criminal defendant the right to counsel, and this right extends to the first appeal of right. U.S. Const. amend. VI; *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Courts have long recognized that the right to counsel embodies a right to confidential communication between a defendant and his attorney. *See Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) ("[legal] assistance can only be safely and readily availed of when free from the consequences or apprehension of disclosure"); *Coplon v. United States*, 191 F.2d 749, 757 (D.C. Cir. 1951) ("[i]t is well established that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him"); *see also Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) ("the right to privately confer with counsel is nearly sacrosanct").

In *Nordstrom*, the Ninth Circuit distinguished between Sixth Amendment claims asserted as grounds for reversing a conviction and Sixth Amendment civil claims brought under § 1983. Where a defendant challenges his conviction following government intrusion into the attorney-client relationship, a court examines "whether the Sixth Amendment violation caused prejudice requiring reversal of the conviction." *Nordstrom*, 762 F.3d at 911; *see United States v. Fernandez*, 388 F.3d 1199, 1240 (9th Cir. 2004) (where defendants appealed their conviction, to show that government intrusion with the attorney-client relationship violated their Sixth Amendment rights, they had to show "that the intrusion was purposeful, that there was communication of defense strategy to the prosecution, or that the intrusion resulted in tainted evidence"). But where, like here, a plaintiff in a civil rights action alleges that government intrusion into the attorney-client relationship constituted a Sixth Amendment violation, the harm "is not that tainted evidence was used against him but that his right to privately confer with counsel has been chilled." *Nordstrom*, 762 F.3d at 911.

. . . .

## IV. Discussion

Plaintiff cites to several cases in which the Ninth Circuit has held that a prisoner's right to communicate with an attorney extends to the attorney's paralegal and even non-attorney professionals retained by the attorney in order to render legal advice. (Doc. 7 at 7, citing, e.g., *United States v. Zegzula*, 42 F.3d 1404 (9th Cir. 1994) (unpublished) ("The attorney-client privilege protects the client's confidential communications with an attorney, or the attorney's agent, for the purpose of securing legal advice."); *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) ("The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice"); *United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996) (attorney-client privilege extends to senior attorney's communications with associate attorneys engaged in fact finding); *United States v. Mikhel*, 552 F.3d 961, 964-65 (9th Cir. 2009) ("The inmate's attorney's pre-cleared paralegal(s) and pre-cleared investigators in the regular full-time employment of the attorney may meet with the inmate without the necessity of the inmate's attorney being present.").)

Plaintiff argues that Mr. Chakravorty "serves "<u>precisely</u> this role on behalf of the attorneys of Tully & Weiss," "played an <u>essential</u> role in interpreting computer data for the attorneys," and before Tully & Weiss were retained, Mr. Chakravorty and Plaintiff "spent months discussing, analyzing and theorizing about how this metadata contained in computer files affects Plaintiff's legal case." (Doc. 7 at 8-9 (emphasis in original).)

While Mr. Chakravorty may have provided assistance to Plaintiff in his legal case, Plaintiff has not provided any evidence that Mr. Chakravorty is a paralegal or agent of any kind employed by Plaintiff's attorney(s). In each of the cases cited by Plaintiff, the professionals assisting attorneys were actually agents of those attorneys. There is no evidence that attorney Tully or any other of Plaintiff's attorneys has provided the Warden of USP-Tucson with a signed statement certifying Mr. Chakravorty's ability, that the attorney has pledged to supervise Mr. Chakravorty's activities, or that the attorney accepts personal and professional responsibility for Mr. Chakravorty's activities that may affect

the institution, prisoners, and staff, as set forth in 28 C.F.R. § 543.16(b)(1)-(3).[4] Nor is there evidence before the Court that Plaintiff has been unable to communicate with his attorneys or their agents who have been cleared by the institution to have confidential communications with Plaintiff.

As such, Plaintiff has failed to meet the first *Winter* factor of likelihood of success on the merits.

Likewise, Plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief. Plaintiff argues that he "is likely to suffer irreparable harm because, absent injunctive relief, he will be deprived of the most basic constitutional protections under the First and Sixth Amendments." (Doc. 7 at 11 (emphasis in original).) This circular argument fails to support that Plaintiff is at risk of losing a "nonfrivolous" or "arguable" underlying claim as needed to support a First Amendment claim or that his "right to privately confer with counsel has been chilled" as needed to support a Sixth Amendment claim. At best, Plaintiff's risk of injury is speculative, and speculative injury is not irreparable injury sufficient for a preliminary injunction. *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

Because Plaintiff fails to produce evidence to show a likelihood of success on the merits or that he faces a likelihood of irreparable harm, the Court will deny the Motion for Preliminary Injunction and will not address any of the other *Winter* factors. *See Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (because the plaintiffs failed to show they are likely to suffer irreparable harm in the absence of preliminary relief, the court need not address the remaining elements of the preliminary injunction standard). Because the Motion for TRO seeks the same relief as the Motion for Preliminary Injunction, the Court will deny the Motion for TRO as moot.

**IT IS ORDERED**:

(1) Plaintiff's Motion for Preliminary Injunction (Doc. 7) is **denied**.

---

[4] Plaintiff does not challenge BOP's regulations and policies related to prisoner visitation and telephone privileges.

(2) Plaintiff's Motion for Temporary Restraining Order (Doc. 13) is **denied as moot**.

Dated this 17th day of June, 2022.

Honorable Raner C. Collins
Senior United States District Judge