GARY M. RESTAINO
United States Attorney
District of Arizona
DENISE ANN FAULK
Assistant U.S. Attorney
Arizona State Bar No. 12700
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Email: denise.faulk@usdoj.gov
Attorneys for the Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Raniere,<br><br>  Plaintiff,<br><br>vs.<br><br>Merrick Garland, et al.,<br><br>  Defendants. | CV 22-00212-TUC-RCC<br><br>**DEFENDANTS' MOTION<br>TO DISMISS FOR INSUFFICIENT<br>SERVICE OF PROCESS AND<br>FOR SUMMARY JUGMENT<br>ON EXHAUSTION** |

Defendants Garland, Carvajal and Gutierrez,[1] acting in their official capacity by and through undersigned counsel, hereby move for dismissal under Rule 12(b)(5) for insufficient service of process and for summary judgment on Plaintiff's First Amended Complaint (FAC) based on Plaintiff's failure to exhaust administrative remedies before filing suit as the Prison Litigation Reform Act (PLRA) requires. This motion is based on the following memorandum of points and authorities, the separately filed statement of facts and exhibit and all matters of record.

**Memorandum of Points and Authorities**

**I.   The FAC should be dismissed for insufficient service of process**

A Rule 12(b)(5) motion to dismiss turns on the legal sufficiency of the service of process. The party making service has the burden of demonstrating its validity when an

---

[1] Danon Colbert is no longer the acting warden at USP Tucson. The current warden, Mark Gutierrez, is substituted in his place pursuant to Rule 25, Fed. R. Civ. P. Defendant Gallion has not been served at all. Had any service been made upon him, the arguments herein would apply to him as well.

objection to service is made. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (citation omitted). "[N]either actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4." *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) (marks and citation omitted). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *see also Direct Mail Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Rule] 4."). Where a complaint names a federal officer or employee in the official capacity, Rule 4(i) requires that a plaintiff complete specific acts of service of the summons and complaint upon the officer or employee, the Office of the U.S. Attorney General in Washington, D.C., and the local U.S. Attorney's Office. Fed.R.Civ.P. 4(i).

In *Borzeka v. Heckler*, the Ninth Circuit adopted a four-part test for assessing whether a district court may dismiss an action for deficient service of process "upon an officer or agency of the United States." 739 F.2d 444, 446-47 (9th Cir. 1984). To prevent dismissal, a plaintiff must show that (1) the defendant has actual notice of the suit; (2) "the defendant would suffer no prejudice from the defect in service"; (3) a "justifiable excuse" exists for noncompliance with the applicable rule of service; and (4) the plaintiff would be "severely prejudiced" if his complaint were dismissed. *Id.* at 447. The Court also indicated that a district court should consider whether a plaintiff is proceeding *pro se* and whether a plaintiff's defect in service was pointed out to him. *Id.* at 447 n.2.

If a justifiable excuse or good cause is not shown, dismissal is mandatory. *Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985); *Grant v. IRS*, No. MC-06-0079, 2006 WL 3716752, *2 (D. Ariz. Nov. 28, 2006). Generally, a justifiable excuse or good cause cannot be based on "'failure to receive a waiver of formal service, ignorance of the rule,

the absence of prejudice to the defendant, office moves or personal problems, the belief that the time requirement was only technical, the filing of an amended complaint, inadvertence of counsel, or the expenditure of efforts that fall short of real diligence by the serving party.'" *Grant*, 2006 WL 3716752, at *2 (citation omitted); *see also Zamora v. IRS*, 15 F.3d 1095, *1 (9th Cir. 1993) (attorney's inadvertent error or ignorance of the governing rules does not constitute "good cause").

On June 1, 2022, Plaintiff caused Summonses and copies of the FAC for Defendants Garland, Carvajal and von Blanckensee to be delivered to the United States Attorney's Office for the District of Arizona. Defendant Garland's Summons indicated he officed at the United States Attorney's Office. (Doc. 12.) The other two were marked "C/O" the United States Attorney's Office. (Docs. 10, 11.) It is commonly known that the Defendants do not office or reside at the United States Attorney's Office for the District of Arizona. Even though improperly addressed, the United States Attorney's Office treated the documents as though they had been addressed to the Civil Process Clerk, as required by Rule 4(i), Fed.R.Civ.P.

However, on information and belief, Plaintiff did not cause a copy of the FAC to be sent to the Defendants and the Attorney General by registered or certified mail, as also required by Rule 4(i), Fed.R.Civ.P. Undersigned counsel has pointed out the discrepancy to Plaintiff's counsel on several occasions and has even gone so far as to direct her to do so. From reviewing the docket, it appears that Plaintiff still has not complied with the rule. (Docket, generally.)

Plaintiff cannot satisfy the *Borzeka* test. While the Defendants have actual notice of the suit and will not suffer from deficient service, Plaintiff cannot proffer a justifiable excuse or good cause for his failure to comply with Rule 4 or show that he would be severely prejudiced by a dismissal without prejudice. As an initial matter, Rule 4(i)'s service requirements are clear and unambiguous. *Tuke v. United States*, 76 F.3d 155, 157 (7th Cir. 1996) ("Rule 4(i)(B) is direct and clear; it is hard to imagine how it could be misunderstood."). Plaintiff's error is further compounded by the fact that he is *not* a *pro*

*se* litigant entitled to lenience in his initiation of litigation; he is represented by counsel. Finally, there is no indication that Plaintiff would be "severely prejudiced" by a dismissal, as any dismissal for failure to execute service would, necessarily, be without prejudice.

Accordingly, this Court should dismiss this action as to all Defendants for insufficient service of process under Rule 12(b)(5), Fed.R.Civ.P.

## II.     Background for Motion for Summary Judgment

### A.     Plaintiff

Plaintiff Keith Raniere is a federal inmate at the United States Penitentiary (USP Tucson) in Tucson, Arizona. (Statement of Facts (SOF) 1.) Plaintiff is serving an aggregate sentence of 120-years for racketeering conspiracy, racketeering, forced labor conspiracy, wire fraud conspiracy, sex trafficking conspiracy, sex trafficking of Jane Doe 5 and attempted sex trafficking of Jane Doe 8 in violation of multiple federal statutes. (SOF 2.) He is projected to be released from custody on June 27, 2120. (SOF 3.)

### B.     First Amended Complaint (FAC)

On May 6, 2022, Plaintiff filed the FAC alleging that the Bureau was interfering with his First and Sixth Amendment rights. (Doc. 3.) Specifically, Plaintiff alleged that on that same day "Defendants interfered and frustrated that legal call by, among other things, causing the phone call to be cut off before Plaintiff and [attorney] Dougherty had concluded their conversation." (*Id.* at 6.) Plaintiff also alleged that "[o]n May 4, 2022, Plaintiff was on a privileged legal call with attorney Tully, when the call was apparently terminated prematurely, and without warning." (*Id.* at 5.) Plaintiff alleged that Mr. Tully anticipated that the judge in Plaintiff's New York criminal case would set a hearing on a Rule 33 motion he filed on May 3, 2022, and that Mr. Tully needed to consult with Plaintiff to prepare for the hearing. (*Id.*) Plaintiff also alleged that on April 28, 2022, Mr. Tully had requested the Second Circuit to stay Plaintiff's appeal from his criminal conviction pending a ruling on the Rule 33 motion. (*Id.* at 4.)

Plaintiff sought "merely to maintain the status quo ante, pending administrative

exhaustion." (*Id.* at 9.) More specifically, Plaintiff sought a "preliminary injunction to preserve the status quo *pending administrative exhaustion*, to include restraining Defendants [and] their employees" from interfering with Plaintiff's communication with his attorneys via telephone, visiting with his attorneys in person and interfering with Plaintiff's communication by telephone with his attorneys' employees and agents. (*Id.* at 9-10.) (Emphasis added.)

### C.  Subsequent Events

On April 29, 2022, the Second Circuit denied Plaintiff's April 28, 2022, motion to stay his criminal appeal pending a Rule 33 motion. *Raniere v. United States*, Case 20-3789, Dkt 193 (2nd Cir. April 29, 2022). (Doc. 14-8 at 2.) On May 9, 2022, the New York District Court deferred consideration of Plaintiff's Rule 33 motion due to the ongoing appeal, ordering:

> "ORDER: The Court is in receipt of Defendant Keith Raniere's 1168 motion for a new trial and 1170 motion for recusal. The judgment of conviction has been appealed to the United States Court of Appeals for the Second Circuit and is now *sub judice* after oral argument. Accordingly, pursuant to Federal Rules of Criminal Procedure 33(b)(1) and 37(a)(1), and in the interest of judicial economy, the court defers consideration of the motions until the Second Circuit resolves the pending appeal. The court will provide further instruction to the parties at that time. Ordered by Judge Nicholas G. Garaufis on 5/9/2022."

*Raniere*, Case No. 1:18-cr-00204-NGG-VMS (E.D. N.Y. May 9, 2022). Accordingly, the deadline to file Rule 33 motions has passed, and there is no hearing imminent.

### D.  Bureau's Administrative Remedy Program

The Bureau's Administrative Remedy Program is designed to allow an inmate to seek formal review of an issue relating to any aspect of his confinement. 28 C.F.R. § 542.10(a). The program contains four levels of review. Initially, an inmate is required to attempt to informally resolve his grievance with Unit Team staff. 28 C.F.R. § 542.13(a). If the inmate is unable to resolve the grievance informally, he may submit an Administrative Remedy Request to the Warden using the BP-9 Form. 28 C.F.R. §§ 542.13(a), 542.14. The inmate must place a single complaint or a reasonable number of

closely related issues on the form, or the form will be rejected and returned without a response. 28 C.F.R. § 542.14(c)(2). If the inmate is not satisfied with the Warden's response, he may submit an Appeal on the BP-10 Form to the Regional Director within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15. When appealing sensitive issues, the inmate may submit an appeal (BP-10) directly to the Regional Director. 28 C.F.R. § 542.14(d)(1). If the inmate is not satisfied with the Regional Director's response, he may submit an Appeal on the BP-11 Form to the General Counsel within 30 days of the date the Regional Director signed the response. *Id.* The appeal to the General Counsel is the final level of administrative review. *Id.* An inmate, therefore, has not administratively exhausted his claim until he has filed a BP-11 with the General Counsel and (1) the General Counsel has responded on the merits to the inmate's BP-11 or (2) the General Counsel has failed to respond within the time allotted. 28 C.F.R. § 542.18. (SOF 5.) Only after this procedure is completely exhausted is a prisoner authorized to file suit in district court. 42 U.S.C. § 1997e(a). (SOF 6.)

The Administrative Remedy Program Statement regarding the administrative remedy procedures is available to USP Tucson inmates in the main law library and in the Electronic Law Library in SHU. (SOF 7, 10.) An inmate may obtain the administrative remedy or appeal forms from, and submit completed forms to, any Unit Team member. (SOF 11.) The Unit Team is comprised of the Unit Manager, Case Manager, Correctional Counselor and Unit Secretary. (*Id.*)

### E. Plaintiff's Administrative Remedies

During Plaintiff's incarceration with the Bureau, he has filed two administrative remedy appeals, both pertaining to disciplinary sanctions imposed against him following an October 26, 2021, disciplinary hearing regarding Plaintiff circumventing mail monitoring by having another inmate contact a former NXIVM member who had been removed from Plaintiff's contact list for prior misconduct. (SOF 12, 15.) Plaintiff filed a BP-10 with the Western Region, which was received on February 25, 2022. (SOF 13.) On June 30, 2022, he filed a BP-11 with the Office of General Counsel. (SOF 14.)

To date, Plaintiff has not submitted a single administrative remedy regarding the issues in his FAC.  (SOF 16.)

### III. The Court should grant Summary Judgment because Plaintiff failed to exhaust his administrative remedies prior to filing suit.

#### A. Legal Standard for Motion for Summary Judgment

A motion for summary judgment filed before an Answer is unusual but permitted. *Johnson-Bey v. Tolbert*, No. CV-13-00578-PHX-ROS, 2013 WL 11311731, at *1 n.1 (D. Ariz. July 29, 2013) ("[a] defending party is not required by [Rule 56] to file an answer before moving for summary judgment") (citing Charles Alan Wright, et al., *Federal Practice and Procedure* § 2718 (3d ed.); *Harris v. McGrath*, No. CV-14-02453-TUC-CRP, 2016 WL 11652877, at *1 (D. Ariz. June 21, 2016) (same).  Like a motion to dismiss for failure to state a claim, the motion for summary judgment tolls the time for answering the complaint.  *Parker v. Dep't of Justice,* 214 F.Supp.3d 79, 85 (D.D.C. 2009)*; see also, Jones v. Dep't of Justice,* 601 F.Supp.2d 297, 302 (D.D.C. 2009) (noting that filing a motion for summary judgment "is substantively no different than filing a motion under Rule 12(b)(6) accompanied by matters outside the pleadings, which is then converted by operation of Rule 12(b) to one under Rule 56."); *Gifford v. Travelers Protective Ass'n of Am.*, 153 F.2d 209, 210-11 (9th Cir. 1946) (granting summary judgment before answer filed).

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those facts that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once

the movant has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The nonmovant need not establish a material issue of fact conclusively in its favor. *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968). However, he must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (internal citation omitted, emphasis in original). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

Additionally, if "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. In deciding the motion, the Court must consider whether Plaintiff's claims are supported by plausible *factual* statements or by conclusory allegations or directly contradicted by the record. *Soremekun*, 509 F.3d at 984; *Scott*, 550 U.S. at 380.

**B.     Prisoners are required to exhaust administrative remedies.**

The PLRA provides that no prisoner shall bring an action "with respect to prison conditions" under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001). Federal prisoners suing must first exhaust inmate grievance procedures. *Porter*, 534 U.S. at 524. Exhaustion is a prerequisite to suit and all "available" remedies must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Id.*

Administrative exhaustion protects an administrative agency's authority,

1  discouraging disregard of its procedures and permitting it to correct its own errors.
2  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  Administrative exhaustion also promotes
3  efficiency by permitting matters to be handled administratively, where a resolution often
4  can be reached more quickly than in the courts.  *Id.*  Additionally, administrative
5  exhaustion promotes judicial economy by "reducing litigation to the extent complaints are
6  satisfactorily resolved, and improving litigation that does occur by leading to the
7  preparation of a useful record."  *Jones v. Bock*, 549 U.S. 199, 219 (2007).

8        The inmate must complete the administrative review process in accordance with the
9  applicable rules.  *See Woodford*, 548 U.S. at 94.  Proper exhaustion requires "compliance
10 with an agency's deadlines and other critical procedural rules."  *Id.* at 90.  Proper
11 exhaustion under § 1997e(a) requires following "all steps that the agency holds out, and
12 doing so *properly* (so that the agency addresses the issues on the merits)."  *Id.*  (citations
13 and internal quotation marks omitted) (emphasis in original).  To properly exhaust, an
14 inmate must comply with the grievance procedures, rules and deadlines of the institution
15 where he is incarcerated.  *Jones*, 549 U.S. at 218.

16       An inmate must fully exhaust all administrative remedies before the complaint is
17 actually filed.  *McKinney v. Carey*, 311 F.3d 1198, 1199-200 (9th Cir. 2002).  New claims
18 raised in an amended complaint must be exhausted prior to the date of filing the amended
19 complaint.  *Cano v. Taylor*, 739 F.3d 1214, 1221 (9th Cir. 2014).

20       "The level of detail necessary in a grievance to comply with the grievance
21 procedures will vary from system to system and claim to claim, but it is the prison's
22 requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones*,
23 549 U.S. at 218.  "All 'available' remedies must now be exhausted; those remedies need
24 not meet federal standards, nor must they be 'plain, speedy, and effective.'"  *Porter*, 534
25 U.S. at 524 (*quoting Booth,* 532 U.S. at 739).  Exhaustion is now mandatory, and there is
26 no discretion to excuse it.  *Id.*

27       "Exhaustion should be decided, if feasible, before reaching the merits of a
28 prisoner's claim."  *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).  Failure to exhaust

should be raised in a motion for summary judgment: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166.

The defendant has the burden to show that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. Once the defendant has met this burden, the burden shifts to the plaintiff to demonstrate "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

### C. Plaintiff failed to exhaust administrative remedies before filing the FAC.

Here, Plaintiff admitted in his FAC that he had not exhausted administrative remedies and even sought an injunction "pending administrative exhaustion." (Doc. 1 at 9-10.) Clearly, he knows about the administrative remedy process. Also, he initiated administrative remedies about an unrelated issue. (SOF 13-15.) Nevertheless, he failed to initiate the administrative remedy process before filing the FAC or in the eighty-seven days since then. (SOF 16.)

On January 21, 2021, Plaintiff was given an Inmate Admission & Orientation (A&O) Handbook,[2] which describes the administrative remedy process. (SOF 4.) The A&O Handbook provides detailed information on how inmates may obtain administrative remedy forms, including that inmates may obtain forms from their Correctional Counselor or any Unit Team member.[3] (SOF 8.) The A&O Handbook also recognizes that BP-9's may be filed outside the twenty-day time period when "it was not feasible to file within that period of time," in which case, the BP-9 should document the reason it was not feasible. (SOF 9.)

As detailed above, the record clearly shows not only that Plaintiff did not appeal an administrative remedy regarding the issues in the FAC to the to the highest level before

---

[2] Plaintiff acknowledged receipt of the A&O Handbook on January 21, 2021. (SOF 4.)

[3] The Unit Team is comprised of the Unit Manager, Case Manager, Correctional Counselor and Unit Secretary. (SOF 11.)

filing suit, he did not even start the process, choosing instead to skip the process entirely and file suit.  Under Bureau regulations, no administrative remedy is fully exhausted until the inmate has submitted a proper BP-11 to the Central Office and received a response or the time to respond has expired.  (SOF 5-6.)  Plaintiff failed to complete the administrative review process in accordance with the applicable rules.  *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 94.  He did not comply with the "agency's deadlines and other critical procedural rules."  *See id.* at 90.  Thus, he did not properly follow the steps, "so that the agency [could] address[] the issues on the merits."  *See id*. (citations and internal quotation marks omitted).  Plaintiff failed to exhaust administrative remedies before filing the FAC.  Accordingly, judgment should be granted for the Defendants on the FAC.

**IV.    Conclusion**

Plaintiff failed to complete service on the Defendants and failed to comply with the PLRA's requirement that he exhaust available administrative remedies before filing the FAC.  The Court should dismiss the case for insufficient service of process or grant summary judgment for all Defendants for Plaintiff's failure to exhaust administrative remedies.

Based on the foregoing, Defendants respectfully request that this Court dismiss as to all Defendants for insufficient service of process under Rule 12(b)(5), Fed.R.Civ.P., or grant summary judgment on the FAC as to all Defendants for Plaintiff's failure to exhaust administrative remedies.

RESPECTFULLY SUBMITTED:  August 1, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Denise Ann Faulk*
DENISE ANN FAULK
Assistant U.S. Attorney

Copy of the foregoing served via EM/ECF to

Stacy Scheff
Attorney for Plaintiff

*s/ P. Vavra*
/ MSJ – Exhaustion