Stacy Scheff #028364
LAW OFFICE OF STACY SCHEFF
P.O. Box 40611
Tucson, AZ 85717
Ph: (520) 471-8333 – Fax: (520) 300-8033
Emails: Stacy@ScheffLaw.com; Stacy.Scheff@gmail.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Raniere,<br><br>   Plaintiff,<br><br>vs.<br><br>Merrick Garland, et al.,<br><br>   Defendants. | No: 4:22-cv-0212-RCC<br><br>**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER OR, ALTERNATIVELY, FOR PRELIMINARY INJUNCTIVE RELIEF** |

Plaintiff, pursuant to Fed.R.Civ.P. 65 and *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), moves for a temporary restraining order or, in the alternative, for a preliminary injunction against prison administrator Defendants, who are currently restraining Plaintiff in a special housing unit ("SHU") without any penological justification and in retaliation for Plaintiff's exercising his First Amendment rights. Plaintiff seeks an order enjoining Defendants from continuing to house Plaintiff in the SHU under circumstances as exist now: where Defendants lack any penological or security justification.

1

**INTRODUCTION**

This lawsuit began in early May with Plaintiff alleging that Defendants had silenced him in a retaliatory manner. Today, Plaintiff files this motion alleging new and different modes of adverse actions, driven by the same underlying retaliatory motive. Defendants have escalated their efforts to silence him for having publicly filed credible evidence of historical FBI malfeasance in his criminal case. Plaintiff seeks an injunction to halt these latest efforts by Defendants.

On May 5, 2022, this lawsuit was conceived in response to a specific instance of governmental retaliation: Defendants' "scrubbing" of Plaintiff's phone contact list within 24 hours after Plaintiff filed court papers disclosing that – to a scientific certainty – the FBI had manipulated digital evidence and that individual agents perjured themselves to cover it up. Doc. 3 at ¶¶ 10, 25. Following the court filing in late April, media outlets reported on Plaintiff's allegations, supported by the affidavits of three reputable computer forensics experts. Assistant U.S. Attorney for the Eastern District of New York, Kevin Trowel, promptly called Plaintiff's allegations "frivolous." *United States v. Raniere*, No. 20-3520 at Dkt. 205 (2d Cir. 2022) (Declaration of Kevin Trowel). But Defendants' actions during the same time period suggested otherwise: Plaintiff almost immediately found himself unable to communicate with the outside world. Doc. 3 (First Amended Complaint) at ¶¶ 15-17, 40-43 (detailing the "short time between when Plaintiff exercised his First Amendment right" and the "adverse action of Defendants").

      The methods of retaliation have matured as summer turns to fall, but the reason for the retaliation remains constant: Defendants want the world to forget about Plaintiff and his irrefutable allegations of extensive government criminal conduct in his case. On September 9, 2022, Plaintiff filed an affidavit in opposition to Defendants' motion for summary judgment and a motion to amend his complaint. Doc. 28-1 (proposed Second Amended Complaint); Doc. 29 (affidavit). In those two filings, Plaintiff detailed some of the latest methods by which Defendants are seeking to silence Plaintiff. Doc. 28-1, Doc. 29. Specifically, Plaintiff explained that he was assaulted by a fellow prisoner and, despite being the victim, was inexplicably placed into a disciplinary segregation housing unit, commonly referred to as a SHU. Doc. 29 at 14-15 (Plaintiff's affidavit).

      The SHU is a highly-restrictive housing setting in which prisoners are afforded – at most – one hour of outside recreation time per day. For the remaining 23 hours, SHU prisoners are constrained to their cell and denied most phone communication. Unlike their counterparts in general population, SHU prisoners cannot speak with prison command staff on a regular basis. In the SHU, a prisoner's assigned prison guard (called a "counsellor") passes by only once per week. If the prisoner does not catch the counsellor's attention in that precise moment, it may be an additional week before he can communicate his needs to the prison hierarchy. Doc. 29 at 15.

      Since at least August 23, 2022, prison officials acknowledged that Plaintiff was the victim and not an aggressor in the July 26 assault. Yet inexplicably, Plaintiff remains in the SHU. Doc. 32-1 (discipline hearing officer report dated August 23, 2022 determining that

Plaintiff had committed no rule violation). Plaintiff remains sequestered and silenced. Plaintiff's current predicament is equivalent to a pretrial jail detainee who is held long after the jury voted to acquit him. While the SHU is typically reserved only for those suspected of a violation or those at risk of harm, Plaintiff is neither. Indeed, Defendants acknowledge that the first scenario does not apply after Plaintiff was cleared of wrongdoing four weeks ago. And Plaintiff himself has never asked to be protected from other prisoners who might intend him harm. Doc. 28-1 (Plaintiff's Proposed Second Amended Complaint, detailing various aspects of Plaintiff's experience in prison but never mentioning that Plaintiff fears for his safety).

Neither punishment nor protection being the motivation, Plaintiff is left with the firm belief that Defendants desire to keep him quiet. Since Plaintiff's August 23 exoneration from the allegations of fighting, Defendants' efforts at silence continue to ratchet up in apparent harmony with his legal team's successful efforts to attract broader media coverage of the scientifically-supported allegations of FBI evidence tampering. *See, e.g.,* Doc. 3 at ¶ 15 (detailing the allegations originally lodged in the Eastern District of New York in late April 2022). Last week alone, at least four national and international news outlets reported on Plaintiff's underlying allegations and the subsequent retaliation at the hands of prison authorities. Those same articles detail inhumane conditions of confinement, including a recent incident in which Plaintiff was forced to eat his daily meal in a SHU cell streaked with

feces left behind from another prisoner.[1] Just as was true in May, there is a close link in time between Plaintiff's First Amendment activity and the adverse actions of Defendants. In May, the adverse action was a severing of the lines of communication through the phone lines. Today, the adverse action is placing Plaintiff in round-the-clock physical isolation.

Defendants' efforts continue to evolve. Since Plaintiff's latest filing on September 9, another method of silencing has emerged. In addition to assigning Plaintiff to the SHU, Defendants have also assigned Plaintiff to a cellmate who may pose a risk to Plaintiff. Earlier this month, Plaintiff was matched with cellmate William Anthony Fly (Register #18658-023). Inmate Fly goes by Toni Fly and is hermaphroditic, possessing female genitalia, according to her paperwork. Indeed, in an all-male prison, Inmate Fly may be the only prisoner with female body parts. It is unlikely that prison officials would intentionally place Inmate Fly with a cellmate who poses a risk of physical harm to her. Indeed, Plaintiff poses no physical danger to Inmate Fly. Nevertheless, Inmate Fly has repeatedly alleged – on at least 75 separate occasions – that she has been the victim of sexual violence by others. Given

---

[1] *The Sun*, "Nxivm Sex Cult Leader 'Left Unconscious After Punch to Head in Prison & Has Been put in Cell with Intersex Woman'"; https://www.the-sun.com/news/6268489/nxivm-sex-cult-leader-unconscious-punch-prison/;
*The Daily Mail*, "Jailed Nxivm Sex Cult Leader Keith Raniere is Left Unconscious After Being Punched in the Head by Inmate"; https://www.dailymail.co.uk/news/article-11236899/Jailed-NXIVM-sex-cult-leader-Keith-Raniere-left-unconscious-punched-head.html;
*New York Post*, "Nxivm Leader Keith Raniere Claims Fellow Sex Trafficker Left him Dizzy After Prison Beatdown"; https://nypost.com/2022/09/22/nxivm-leader-keith-raniere-attacked-in-prison/);
*NBC News*, "NXIVM Sex Cult Leader Keith Raniere was Beaten in Prison by Fellow Sex Offender, Lawsuit Says" (https://www.nbcnews.com/news/us-news/nxivm-cult-leader-keith-raniere-was-beaten-prison-fellow-sex-offender-rcna48962)

the frequency of Inmate Fly's allegations of sexual violence, Defendants must understand the statistical likelihood that Inmate Fly may falsely allege sexual misconduct by Plaintiff – a man who is left unattended with her in a locked room for approximately 23 hours per day.

## LEGAL STANDARD

Plaintiffs seeking a preliminary injunction generally must show that (1) their claims are likely to succeed on the merits; (2) they will likely suffer irreparable harm without an injunction; (3) the balance of equities tips in their favor; and (4) the public interest favors an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *American Trucking Associations Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

The Ninth Circuit allows the above factors to be weighed using a sliding scale approach, whereby a strong showing in one factor may counterbalance a weaker showing in another. *E.g. Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2010); *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) ("plaintiffs must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and balance of hardships tipping in their favor"). For example, "if a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053, 1058 (D. Ariz. 2018) *(quoting Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281,

1291 (9th Cir. 2013). In demonstrating that there are "serious questions", a plaintiff need not demonstrate a probability of success on the merits but only a "fair chance of success on the merits." *Cascadia Wildlands v. Scott Timber Co.*, 715 F. App'x 621, 624-25 (9th Cir. 2017) (*quoting Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) ).

Plaintiff contends here that he has demonstrated a likelihood of success on the merits of a First Amendment claim that Plaintiff was retaliated against on account of his exercise of free speech. Yet even if this Court were to find that Plaintiff has demonstrated a slightly less forceful showing on the merits, this Court may still grant preliminary injunctive relief with a concomitant finding that the balance of hardships tip sharply in Plaintiff's favor. Under either rubric, all four *Winter* factors weigh in favor of the requested injunctive relief, and relief should be granted.

**III.    LIMITED INJUNCTIVE RELIEF IS APPROPRIATE AS A TEMPORARY RESTRAINING ORDER, WITHOUT AWAITING RESPONSIVE BRIEFING FROM DEFENDANTS.**

Even after all parties have been served and entered appearances in the matter, injunctive relief can be issued on an expedited basis as a temporary restraining order under Rule 65(b). This is appropriate where it clearly appears that immediate and irreparable injury will result before the adverse party can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. Fed.R.Civ.P. 65(b)(1).

Here, all Defendants have been served and have filed extensive opposition briefings on various procedural and substantive matters starting in June 2022. As it pertains to this narrow request for injunctive relief, undersigned counsel has written to opposing counsel and Plaintiff's criminal defense attorney has written twice to the current warden of the Tucson federal penitentiary about the continued housing of Plaintiff in the SHU following his August 23 exoneration. Exhibit A (letters from Attorney Stacy Scheff and Alan Ellis). The purpose of a temporary restraining order is to maintain the *status quo* until such time that opposition briefing and a hearing can take place. Confinement inside a cell for 23-hours-per-day, even for a matter of days, can have irreparable effects on a detainee's physical and emotional health. For this reason, Plaintiff requests to be released to the general population within the Tucson facility until such time that responsive briefing and a hearing can take place to determine whether SHU confinement is appropriate for a longer period of time.

**IV.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS FIRST AMENDMENT RETALIATION CLAIM, ALLEGING THAT DEFENDANTS HAVE HELD HIM IN RESTRICTIVE 'SHU' HOUSING WITHOUT PENOLOGICAL JUSTIFICATION FOLLOWING HIS AUGUST 23 EXONERATION OF WRONGDOING.**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

There is no question that housing within the SHU is an "adverse" action when there is no penological justification for doing so. Defendants' penological justification – if any – evaporated on August 23, 2022 when, by Defendants' own acknowledgment, they exonerated Plaintiff of wrongdoing within the prison. *See, e.g.,* Doc. 32-1. Defendants' continued refusal to return Plaintiff to the general population after August 23 signals retaliatory intent. There is no penological or safety justification for keeping Plaintiff housed in 23-hour-per-day lockdown. Plaintiff understands that Defendants prefer that Plaintiff and Plaintiff's associates refrain from publicizing the details of his case, which continue to attract widespread interest and attention from the broader world. Defendants' continued housing of Plaintiff in the SHU is intended to chill Plaintiff's First Amendment speech and, in fact, this may be the result.

While Defendants may have been justified in temporarily placing Plaintiff in restrictive housing during the pendency of a carefully-targeted investigation of a specific allegation of wrongdoing in the prison's dining hall, SHU housing has no penological justification as a long-term housing option for prisoners who pose no threat to other prisoners, are not at risk themselves, and are not suspected of a rules violation.

**V.   PLAINTIFF IS SUFFERING IRREPARABLE HARM AS A RESULT OF THE FIRST AMENDMENT RETALIATION.**

Plaintiff is likely to suffer irreparable harm because, absent injunctive relief, he will be deprived of the most basic constitutional protections under the First Amendment. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (finding that a constitutional deprivation "unquestionably constitutes irreparable injury."); *Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134 (2011) ("[C]onstitutional violations... generally constitute irreparable harm."); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("Plaintiffs faced irreparable harm in the form of a deprivation of constitutional rights."). This presumption of irreparable harm applies equally to prisoner cases. *Luckette v. Lewis*, 883 F.Supp. 471, 483 (D. Ariz. 1995) (finding that a prisoner who suffered a First Amendment violation enjoys a presumption of irreparable harm)

## IV.   THE EQUITIES TIP SHARPLY IN PLAINTIFF'S FAVOR

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Counsel*, 555 U.S. 7, 24 (2008) (citation omitted). Here, the answer is clear: the harm to Plaintiff outweighs any conceivable hardship to Defendants. On Plaintiff's side is his constitutional right to exercise his First Amendment right to peacefully discuss his credible, evidence-based allegations of extensive government malfeasance – malfeasance that affects not only himself but strikes at the heart of democratic institutions. To the extent that Defendants may cite amorphous or inchoate concerns about prison security if they were to re-release Plaintiff to the general population, such concerns are unfounded. Indeed, Plaintiff resided in general population in the Tucson facility without incident prior to July 26, 2022.

10

Any possible hardship that Defendants may identify is really no hardship at all, because Defendants are already required to follow the Constitution. "[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]" *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). Because it is "always in the public interest to prevent the violation of a party's constitutional rights," the balance of equities tip sharply in Mr. Brooks' favor. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal citations omitted). The equities tip in favor of a plaintiff where the burden to prison officials is mere "administrative inconvenience." *R.G. v. Koller*, 415 F.Supp.2d 1129, 1162 (D. Haw. 2006).

**CONCLUSION**

Plaintiff respectfully requests that this Court issue a limited preliminary injunction requiring Defendants to immediately house Plaintiff in the general population and to enjoin Defendants from housing Plaintiff in the SHU absent individualized findings that Plaintiff has violated a policy, poses a threat to other prisoners, or is himself in harm's way. Additionally, Plaintiff requests an evidentiary hearing.

Respectfully submitted this 29th day of September, 2022

                                        s/Stacy Scheff
                                        Stacy Scheff
                                        Law Office of Stacy Scheff
                                        P.O. Box 40611
                                        Tucson, AZ 85717
                                        Ph: (520) 471-8333
                                        Emails: Stacy@ScheffLaw.com
                                        Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2022, I electronically transmitted the above document to the Clerk's office using the ECF system, which will automatically transmit the document to all counsel of record.


/s Stacy Scheff