Stacy Scheff
LAW OFFICE OF STACY SCHEFF
P.O. Box 40611, Tucson, AZ 85717-0611
(520) 471-8333 • FAX (520) 300-8033
stacy.scheff@gmail.com
State Bar No. 028364
*Counsel for Plaintiff*

## DISTRICT COURT FOR THE UNITED STATES
## DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Raniere,<br><br>             Plaintiff,<br><br>v.<br><br>Merrick Garland, US Attorney General; Collette S. Peters, Director, Federal Bureau of Prisons; Warden USP Tucson (all in their official capacities),<br><br>             Defendants | Case No.: 4:22-cv-00212-RCC-PSOT<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER**<br>(***Expedited Consideration Requested***)<br>(***Hearing Requested***) |

Plaintiff, pursuant to Fed.R.Civ.P. 65(b)(1), moves for a temporary restraining order ("TRO") against prison administrator Defendants, who are seeking to unlawfully hinder and obstruct Plaintiff's First and Sixth Amendment rights to communicate with his attorneys, their staff and his power-of-attorney, Suneel Chakravorty, during the pendency of direct appeal and post-conviction relief petitions. Specifically, Plaintiff seeks an *urgent* injunction preventing his impending transfer away from USP Tucson.

**I. BACKGROUND**

Plaintiff refers the Court to his Motion for Preliminary Injunction at Docs. 7, 13, & 34 for the factual background for this Motion.  Plaintiff has been told that he is being transferred because he receives "too many legal calls and visits." Exhibit 1, ¶4(f).  This threat only became an issue after the filing of his Rule 33 motion, media attention and a

1

press conference by top experts who are asking that Mr. Raniere's conviction be re-examined if not overturned.

Plaintiff's criminal case is complex and was tried to a jury during lengthy proceedings with numerous fact witnesses and evidentiary exhibits. Plaintiff has a Rule 33 motion currently pending before the trial court and an appeal pending at the Second Circuit. Serious and significant government misconduct has been alleged with the support of three separate experts, including a highly regarded, honorably retired FBI agent who once served as the unit chief of the digital forensic lab at Quantico.  The alleged misconduct strikes at the very core of the evidence underlying some of the most serious criminal convictions entered against Plaintiff. Because of the very nature of the post-conviction proceedings and underlying allegations it is imperative and constitutionally required that Plaintiff have reasonable contact with his attorneys and their staff to prepare for and assist in the preparation for the currently pending post-conviction proceedings.

On October 13, 2022, a group of respected professionals including attorney Alan Dershowitz held a press conference in support of Mr. Raniere's Rule 33 petition.[1]  The threats to transfer Plaintiff came shortly afterwards.

During the week of October 23, 2022, Mr. Raniere was told by staff at USP Tucson that he was going to be transferring him because of his frequent legal calls and visits.  Exh. 1, ¶¶ 8 & 9.  Mr. Raniere believes he should be housed in USP Tucson with others who have similar convictions.  Exh. 1, ¶10.

---

[1] https://twitter.com/alandersh/status/1580670651039244288.  Accessed 11/3/2022.

2

The circumstances surrounding the threatened transfer, as alleged in Plaintiff's affidavit, give rise to a reasonable assumption that such action is retaliatory given Plaintiff's actions to address the issues presented, the timing of the threatened transfer, his continued placement in the SHU, the press conference, and the statements of BOP staff.

Plaintiff is also filing a Motion for Leave to Amend his complaint contemporaneously with this Motion, in order to include the new facts upon which this Motion relies.

This threatened transfer appears to be in retaliation for Plaintiff's exercise of rights guaranteed by the First Amendment, and also implicating his Sixth Amendment right to counsel.

**II. LEGAL STANDARD**

A TRO may be granted without written or oral notice to the adverse party only if (1) it clearly appears that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.  Every [TRO] granted without notice shall... define the injury and state why it is irreparable and why the order was granted without notice. F.R.Civ.P. 65(b)(1).

In *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 94 S.Ct. 1113, 39

L.Ed.2d 435 (1974), the Supreme Court explained that circumstances justifying the issuance of an *ex parte* order are extremely limited:

> The stringent restrictions imposed... by Rule 65 on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. *Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Id.* at 438-39, 94 S.Ct. 1113 (internal citation omitted).

Here, both prongs of the Rule are met: Undersigned certifies that all Defendants have been served with the First Amended Complaint (Doc.3), the Motion for Preliminary Injunction (Doc. 7), and the Court's Order at Doc. 9.  *See* Docs. 10-12. On May 23, 2022, undersigned counsel conferred with attorneys for the U.S. Department of Justice, Michael Ambri and Denise Faulk, and sent courtesy copies of all these documents via email.

Taken in the whole of the circumstances in this matter, these new allegations of Defendants' intent to pursue a retaliatory transfer support Plaintiff's allegations that Defendants have a pattern and practice of impairing and restricting his access to counsel. BOP has alleged that Plaintiff and Chakravorty have engaged in communications which jeopardize the security of the institution, without further explanation. Any transfer to another BOP institution will not only place Mr. Raniere in danger due to his charges and notoriety, but also likely continue to subject Mr. Raniere to the same pattern of

restrictions on Plaintiff's contact with counsel at a new facility.

The Sixth Amendment guarantees the right to access to the courts and representation by counsel in criminal proceedings and the redress of grievances in those proceedings.

Plaintiff will suffer irreparable harm if he is not allowed the opportunity to assist with the development of strategy with counsel by providing background facts only known to him or to which he must make informed decisions as to the strategy of counsel. This assistance includes communications with his counsel, their staff, including Chakravorty and in-person visits to discuss and develop strategies for prosecuting the various post-conviction motions now pending. The Court may issue the Order so that it does not exceed the limits of F.R.Civ.P. 65(b)(2).

**III. ARGUMENT**

Plaintiff asserts that Defendants intend to transfer him to one or more different BOP facilities, which will significantly impede his ability to confer with his attorneys during the transfer and will moot this lawsuit. The transfer process itself constitutes and unreasonable burden on Plaintiff. Transfers between facilities can take days or weeks, during which time Plaintiff will be entirely cut off from his lawyers. A BOP inmate transferred to another facility is normally routed through the Federal Transfer Center (FTC) in Oklahoma City where the average stay is 4-6 weeks[2]. Attorney visits and phone calls are limited due to the nature of the FTC and the transient inmate population. *See id*.

---

[2] *See* BOP FTC Holdover Inmate Handbook at 11. Available at: https://www.bop.gov/locations/institutions/okl/OKL_holdover_aohandbook.pdf. Last visited Oct. 29, 2022.

5

These consequences to Plaintiff, depriving him to his constitutional right to counsel and access to the courts, are clearly foreseeable.

Plaintiff alleges through his sworn affidavit submitted in support of this Motion that BOP staff members have threatened retaliatory transfer because Plaintiff has "too many legal calls and visits.". Exhibit 1, ¶¶ 4(f), 8-9. These statements alone clearly show the retaliatory nature for the pending transfer of Plaintiff from USP Tucson.

Transferring Plaintiff away from USP Tucson would also likely put him in harm's way due to his charges and notoriety. USP Tucson is a designated facility that houses prisoners with charges similar to Mr. Raniere's charges, therefore lessening the likelihood that another prisoner would take issue with Mr. Raniere.[3] Therefore USP Tucson is the safest place for Mr. Raniere while he is incarcerated. Notorious prisoner Whitey Bulger was killed within 12 hours of being transferred to USP Hazelton in West Virginia.[4]

---

[3] "USP Tucson is one of several federal prisons that offers a Sex Offender Management Program (SOMP) and therefore has a higher proportion of sex offenders in its general population. Having a larger number of sex offenders at SOMP facilities ensures that inmates feel safe about participating in treatment. USP Tucson offers a Non-Residential Sex Offender Treatment Program (SOTP-NR), which is a moderate intensity program designed for low to moderate risk sexual offenders. Many of the inmates in the SOTP-NR are first-time offenders serving a sentence for an Internet sex crime. All SOMP institutions offer the SOTP-NR. Eligible inmates are transferred to a SOMP facility based on their treatment needs and security level. USP Tucson houses several high-profile sex offenders." https://en.wikipedia.org/wiki/United_States_Penitentiary,_Tucson. Accessed 11/3/2022.

[4] https://www.nytimes.com/2018/10/31/us/who-killed-whitey-bulger.html. ""I hate to be morbid, but knowing the way of person he was, it's probably a long time coming" Accessed 11/3/2022.

A retaliatory transfer has been found by the Ninth Circuit to constitute a violation of the First Amendment rights of a prisoner. "To succeed on [a] retaliation claim, [plaintiff] need not establish an independent constitutional interest in either assignment to a given prison or placement in a single cell, because the crux of his claim is that state officials violated his First Amendment rights by retaliating against him for his protected speech activities." *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995). This is exactly the conduct alleged by Plaintiff.

In the context of a retaliatory transfer based on limiting access to the courts and counsel, the Sixth Circuit has found the "foreseeable consequences that inhibited the Plaintiff's ability to access the courts' constitute a constitutional violation. *Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005) As a result of the retaliation "… **the transfer also made it more difficult for his attorney to visit with or represent him because he was moved further away…**" *See id* at 702 (emphasis added).

"Because a prisoner's First Amendment rights are necessarily curtailed, however, a successful retaliation claim requires a finding that 'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals.' *Rizzo*, 778 F.2d at 532 (citing *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984)). The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct he complains of." *See Pratt* at 806.

Here, the BOP cannot state a legally valid claim that any transfer of Plaintiff is

advancing a legitimate goal of USP Tucson.  Undue burden is not a justification to infringe upon Plaintiff's constitutional rights and certainly gives rise to the articulated basis of a claim of First Amendment retaliation.  *See Benjamin v. Fraser*, 264 F.3d 175, 187 (2d Cir. 2001); *see also Procunier v. Martinez*, 416 U.S. 396, 419 (1974) (noting that "inmates must have a reasonable opportunity to seek and receive the assistance of attorneys, and "[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid"), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *United States v. Granados*, No. CF 20-00019-CJC-2, 2020 WL 3871448, at *4 (C.D. Cal. July 9, 2020) ("[A] pretrial detainee's right to counsel is infringed when prison regulations unreasonably burden or significantly interfere with the detainee's access to counsel.")

     A retaliatory transfer has been found by the Ninth Circuit to constitute a violation of the First Amendment rights of a prisoner. "To succeed on [a] retaliation claim, [plaintiff] need not establish an independent constitutional interest in either assignment to a given prison or placement in a single cell, because the crux of his claim is that state officials violated his First Amendment rights by retaliating against him for his protected speech activities." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Exactly the conduct alleged by Plaintiff.

     In the context of a retaliatory transfer based on limiting access to the courts and counsel, the Sixth Circuit has found the "foreseeable consequences that inhibited the Plaintiff's ability to access the courts' constitute a constitutional violation." *Siggers-El v.*

*Barlow*, 412 F.3d 693 (6th Cir. 2005).

**IV. CONCLUSION**

Plaintiff Keith Raniere asks the Court to issue an *immediate* Order *without notice* to the Defendants, preventing them from transferring Plaintiff away from USP Tucson. Plaintiff seeks a hearing as soon thereafter as possible.

DATED this 3rd day of October, 2022 by

/s/Stacy Scheff
STACY SCHEFF
Attorney for Plaintiff

Delivered via ECF
to all registered parties

# EXHIBIT 1

Stacy Scheff
LAW OFFICE OF STACY SCHEFF
P.O. Box 40611, Tucson, AZ 85717-0611
(520) 471-8333 • FAX (520) 300-8033
stacy.scheff@gmail.com
State Bar No. 028364
*Counsel for Plaintiff*

# DISTRICT COURT FOR THE UNITED STATES
## DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Raniere, | Case No.: 4:22-cv-00212-RCC-PSOT |
| Plaintiff, | |
| v. | **DECLARATION OF KEITH RANIERE** |
| Merrick Garland, US Attorney General; Collette S. Peters, Director, Federal Bureau of Prisons; Warden USP Tucson (all in their official capacities), | |
| Defendants | |

I, Keith Raniere, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and experience, hereby make the following declaration in support of my allegations against the BOP of retaliation and covering up numerous policy violations.

1. I am currently incarcerated within the Federal Bureau of Prisons at the United States Penitentiary in Tucson.

2. I am currently housed in the SHU, in "Administrative Segregation" and have been for more than 100 days.

3. There is no legal justification for my being in SHU for this long.

1

4. The following is a list of the retaliation events as I can recall them:

   a) Legal mail sent to me was opened by prison staff outside my presence and sent to the prosecution.

   b) The complete scrubbing of my visitation list, which cut off my contact with my attorneys, as well as my family.

   c) 97-days in SHU after a restitution hearing, for which all charges were dropped.

   d) Ongoing interference with legal visits and phone calls.

   e) Current 100+ days in SHU for being assaulted, the investigation which cleared me of fighting, and the current conflict between the stated reason for this stay, and what the paperwork actually indicates.

   f) The current attempt to transfer me because of too many legal calls/visits.

5. I write this affidavit deeply concerned for my physical well-being, as I understand that the BOP is attempting to transfer me to another prison.

6. Because of the high profile nature of my case, and the nature of my crimes of conviction, I believe this transfer will expose me to the likelihood of being assaulted or killed by other prisoners.

7. This affidavit will describe and document, circumstances, punishments, and retaliation by BOP staff I have been subjected to in recent months.

8. During the week of 10/23/22, I was told by staff from my unit team, as I was being taken to a visit with my attorneys that they are recommending my transfer to another institution.

9. Staff stated that the move was in response to the number of legal calls and legal visits, and that I am too much for this institution and my unit team, and I need to go to a better equipped facility.

10. Given my sex crimes convictions, I should be placed in a facility with a "sex offender management program".

11. Given the BOP's bizarre classification system I am ineligible to go to any other yard with such a program.

12. My unit team approves each of my legal visits, and calls and I have had fewer calls and visits recently, which is documented by the BOP.

13. There is no policy which sets the maximum number of legal calls or visits a prisoner may receive.

14. In fact the BOP policy statement on attorney visits (1315.07) reads: *The Warden generally may not limit the frequency of attorney visits since the number of visits necessary is dependent upon the nature and urgency of the legal problems involved.*

15. There was a recent public press conference with Alan Dershowitz and a series of pro-government experts relating to criminal acts by the FBI and prosecution in my case.

16. I had no legal contact for 2 weeks after the press conference.

17. According to BOP exhibits, since I've been in the S.H.U. (7/26) I've had 4 legal calls, and 10 legal visits (2 of them back to back) so in a little over 14 weeks, as of this filing, I've had about one legal even per week. This frequency has not increased over the time I've been in the S.H.U.

18. There are multiple statements in the record that I circumvented mail monitoring and abused phone privileges. (Doc 21 pg. 6 at 24, Doc. 22 pg. 4 at 12, Doc 22-2 Pg 3 at 16, Doc 22-2 pg17 at, Doc 31 pg 2 at 11, Doc 31 pg 10 at 15, Doc 31-2 pg 4 at 6, Doc 31-2 pg 11, Doc 39 pg 2 at 9 (among others).

19. Each of these refer to the same incident in which another prisoner who was working with Ms. Clyne through her outreach program where she assists prisoners with research, connecting with family, and other basic needs, said something to the effect of "Keith sends his love."

20. This happened before I was barred from contacting Ms. Clyne, and appears to be the justification for removing her.

21. Ms. Clyne is still in touch today with many, if not all, of the prisoners she has been helping **for the last two-and-a-half-years,** but not me.

22. At all times during the alleged offense, I was allowed full contact with Nicki Clyne by phone (I called her sometimes several times a day) and visitation (she visited me for every minute allowed- Sat. & Sun., 9:30 am -2:45 pm, every 2 weeks )

4

23. Any representation I was restricted or blocked during this time, yet tried to circumvent that block is false.
24. BOP records indicate that I never communicated with Ms. Clyne in contravention of the rules.
25. At MDC Nicki Clyne was blocked, not removed from my contact list. (later she applied for visitation and was accepted.)
26. I questioned this improper block and was told by my counselor that they would remove it; when I was transferred it was unblocked so I resumed calling.
27. On 9/8/2022 the Warden, SIA, and numerous other officers came to our cell.
28. My cellmate's legal work which had been torn, and soaked in water, and brought to her by staff the night before was in plastic bags under a bed.
29. The warden asked what was in the bags, and Ms. Fly responded "It's my legal work"
30. The warden ordered us out of the cell.
31. We were handcuffed, and placed in a holding cell.
32. Within the holding cell were 3x3 cages with small wooden benches.
33. We were each locked in a cage and left handcuffed for another 45-60 minutes.
34. The room was contaminated with feces; there were two piles on the floor, and 19 streaks on the walls.
35. The odor was overpowering and nauseating.
36. We remained in this feces covered room for approximately 5 hours.

37. We were forced to eat lunch in this room.

38. While we were in the room we were visited by members of the Psychology staff: Doctor's Hermosillo, and Poleski.

39. A number of security staff including: CO's Lee-Trajo, Francis, and Cosme saw the conditions, and would be able to attest to them.

40. I believe placing us in these conditions was further retaliation against me, and an attempt to incite my my cellmate who has 75 PREA complaints on inmates, and is noted for saying on multiple occasions, she would kill any sex offender with whom she celled.

41. On 8/26/22 I was approved by the SIS Lt., the DHO, and SHU Lt. to return to general population with no security concerns.

42. I was not allowed to return and on 9/20/22 a new investigation was initiated allegedly about my safety here.

Dated November 1, 2022

_Keith Alan Raniere_
Keith Alan Raniere