MGD

1
2
3
4
5
6      **IN THE UNITED STATES DISTRICT COURT**

7      **FOR THE DISTRICT OF ARIZONA**

8

9    Keith Raniere,                                    No.  CV 22-00212-TUC-RCC

10                          Plaintiff,

11   v.                                                **ORDER**

12   Merrick Garland, et al.,

13                          Defendants.

14

15         Plaintiff Keith Raniere, who is currently confined in the United States Penitentiary

16   (USP)-Tucson and is represented by counsel, filed a civil rights Complaint pursuant to

17   *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)

18   against United States Attorney General Merrick Garland, Bureau of Prisons (BOP)

19   Director Michael Carvajal, USP-Tucson Warden Barbara Von Blanckensee, and

20   Lieutenant Anthony Gallion.

21         Before the Court is Plaintiff's Motion for a Temporary Restraining Order or,

22   Alternatively, for Preliminary Injunctive Relief (Doc. 34).  The Court will deny the Motion.

23   **I.     Background**

24         In Count One of his First Amended Complaint (Doc. 3), Plaintiff asserts a violation

25   of his First Amendment right of access to the courts based on Defendants' alleged

26   interference with Plaintiff's ability to communicate with his attorneys and their agents.

27   Count Two asserts a First Amendment retaliation claim based on Defendants "imminently

28   threatening to cut off Plaintiff's telephonic and in-person communication with his

attorneys" the day after his criminal defense attorney filed a Rule 33 motion for new trial. Count Three asserts a violation of Plaintiff's Sixth Amendment rights based on Defendants' alleged deliberate interference to the confidential relationship between Plaintiff and his criminal defense attorney, which "substantially prejudices" Plaintiff by preventing him from helping his attorney prepare for the hearing on the Rule 33 motion and preventing his attorney from providing effective assistance of counsel.  Plaintiff seeks declaratory and injunctive relief prohibiting Defendants from impeding him from communicating with his attorneys and their agents either by telephone or in person.

On screening Plaintiff's First Amended Complaint under 28 U.S.C. § 1915A(a), the Court required Plaintiff to serve Defendants and required Defendants to answer.  (Doc. 5.)

## II.    Legal Standard

The standards for issuing a temporary restraining order and a preliminary injunction are the same.  *White v. Lindermen*, No. CV 11-8152-PCT-RCB, 2012 WL 5040850, at *1 (D. Ariz. 2012).  "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right").  Nonetheless, "federal courts must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners" and must not "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (citation omitted).

A plaintiff seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).   When the government opposes a preliminary injunction, "[t]he

third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry ." *Porretti*, 11 F.4th at 1047.  The "balance of equities" concerns the burdens or hardships to a prisoner complainant compared with the burden on the government defendants if an injunction is ordered.  *Id.*  The public interest mostly concerns the injunction's impact on nonparties rather than parties.  *Id.* (citation omitted). Regardless, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights."  *Id.* (citation omitted).

Where a plaintiff seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'"  *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).  Further, under the Prison Litigation Reform Act, injunctive relief must be narrowly drawn and be the least intrusive means necessary to correct the harm.  18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

### III.    Plaintiff's Motion

Plaintiff seeks an order requiring Defendants to move him from the Special Housing Unit (SHU), where he is currently held, back to the general population at USP-Tucson. (Doc. 34.)  Plaintiff asserts that on July 26, 2022, he was assaulted by another prisoner, and even though Plaintiff was the victim, he was placed into a disciplinary segregation housing unit, commonly referred to as SHU, where he is allowed, at most, an hour of outside recreation a day, denied most phone communication, and cannot speak with prison command staff on a regular basis.  (*Id*. at 3.)  On August 23, 2022, a disciplinary hearing officer determined that Plaintiff did not commit a rule violation, and prison officials have acknowledged that Plaintiff was the victim in the July 26 assault, yet "Plaintiff remains sequestered and silenced."  (*Id*. at 3-4.)  Plaintiff states that the SHU is typically reserved

for those suspected of a violation or those at risk of harm, and he "has never asked to be protected from other prisoners who might intend him harm."  (*Id*. at 4.)

Plaintiff contends that his placement in the SHU lacks any penological or security justification and is in retaliation for Plaintiff exercising his First Amendment rights.  (*Id*. at 1.)  Plaintiff argues that by placing him in the SHU, "Defendants have escalated their efforts to silence him for having publicly filed credible evidence of historical FBI malfeasance in his criminal case."  (*Id*. at 2.)  Plaintiff also appears to argue that news articles that appeared in September 2022 about Plaintiff's allegations of FBI evidence tampering and "inhumane conditions of confinement" show a "close link in time between Plaintiff's First Amendment activity and the adverse actions of Defendants."  (*Id*. at 4–5.)  Plaintiff argues that Defendants' efforts to silence him "continue to evolve," and since his latest filing on September 9, 2022, Defendants have assigned Plaintiff a cellmate "who may pose a risk to Plaintiff" because this cellmate (whom Plaintiff says is hermaphroditic and possesses female genitalia) has alleged on at least 75 occasions that she has been the victim of sexual violence by others and so may falsely accuse Plaintiff of sexual misconduct.  (*Id*. at 5-6.)

Defendants respond that BOP has facilitated dozens of legal calls and frequent legal visits between Plaintiff and his attorneys, and those legal calls and visits have continued while Plaintiff is housed in the SHU.  (Doc. 39 at 4.)  Defendants cite to evidence showing that between August 31, 2022 and September 21, 2022, Plaintiff has had legal calls totaling 8.5 hours, and between July 29, 2022 and September 14, 2022, Plaintiff has had 8 legal visits.  (*See* Doc. 31-2 at 5-7.)  Defendants also present Declaration evidence from USP-Tucson Legal Assistant Lorri Mitchell who states that Plaintiff is also able to send and receive legal correspondence to and from his attorneys and that correspondence is given confidential processing and handling.  (Doc. 31-2 at 7 ¶ 15.)

Defendants acknowledge that the incident report for the July 26, 2022 physical altercation was expunged from Plaintiff's record following the investigation of the incident and disciplinary hearing but assert that Plaintiff is currently in SHU "while the Special

Investigative Service (SIS) Department is investigating safety and security issues pertaining to Plaintiff at USP Tucson." (Doc. 39 at 4.)  Defendants state they can provide more information about this investigation to the Court in camera if the Court needs more detailed information.  (*Id*. at 4 n.2.)

Defendants state that while he is in the SHU, Plaintiff "has been reviewed periodically by the Segregation Review Official (SRO) as required by policy," and Plaintiff may express concerns about cell assignments, cellmates, and other issues during those periodic reviews.  (*Id*. at 4.)  Defendants assert that Plaintiff has introduced no evidence that he has expressed concerns about his current housing status or cellmate during any of the SRO reviews or through the Administrative Remedy Program, and there are no safety or security concerns with Plaintiff's current housing assignment, including his current cellmate.  (*Id*.)

Plaintiff replies that he has filed grievances about his SHU placement, that he has not expressed fear about returning to general population but has expressed fear about remaining in the SHU with his current cellmate, and he has not received the hearings that policy requires.  (Doc. 43 at 2.)  Plaintiff argues that "the best way to classify Defendant's behavior here is retaliation shrouded in bureaucracy," that there is no ongoing investigation into safety and security issues pertaining to Plaintiff, and there are no reports or documents indicating that the cause of Plaintiff's SHU placement has changed from the initial investigation into the "fight."  (*Id*. at 8-9.)  Plaintiff argues that the verifiable facts show, at best, incompetence in keeping track of SHU prisoners, and at worst, "a deliberate policy of dragging out [Plaintiff's] detention in order to interfere with his ability to challenge his conviction."  (*Id*. at 9.)

## IV.    Discussion[1]

Plaintiff's Motion fails because he has not alleged any irreparable injury in his Motion.  In the section of his Motion discussing irreparable injury, Plaintiff merely cites

---

[1] The Court will address Plaintiff's Motion as a motion for injunctive relief because the Motion is fully briefed, and Plaintiff has failed to show irreparable injury before the adverse party could be heard in opposition.

the legal standards and states in conclusory fashion that he "is likely to suffer irreparable harm because, absent injunctive relief, he will be deprived of the most basic constitutional protections under the First Amendment." (Doc. 34 at 10.) Plaintiff does not allege any injury in this statement, much less irreparable injury. Plaintiff speculates that he is still in the SHU in some effort to silence him, but Plaintiff has not presented any evidence showing that he has been silenced. Plaintiff also speculates his cellmate in SHU may falsely charge Plaintiff with sexual misconduct based on the cellmate's past behavior, but such speculative injury is not irreparable injury sufficient for a preliminary injunction. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *see also Winter*, 555 U.S. at 22; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment . . . ."); *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("[A] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact . . . .").

To the extent Plaintiff is alleging that his placement in the SHU affects contact with his legal counsel and his legal work, such allegations implicate Plaintiff's constitutional right of access to the courts, which is protected by the First Amendment right to petition the courts and the Fourteenth Amendment right to substantive due process. *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011), *overruled on other grounds by Richey v. Dahne*, 807 F.3d 1202, 1209 n.2 (9th Cir. 2015). This right is limited to direct criminal appeals, habeas petitions, and section 1983 civil rights actions. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The constitutional right of access to the courts encompasses a right to litigate without active interference. *See Silva*, 658 F.3d at 1102. To support an active interference claim, a prisoner must allege facts showing that officials' actions hindered the prisoner's ability to litigate and that, as a result, the prisoner suffered an actual injury. *Id.*; *see Lewis*, 518 U.S. 343, 349 (1996) (to maintain an access-to-the-courts claim, a prisoner must show an "actual injury" resulting from the defendant's actions). Actual injury must

1    be "actual prejudice . . . such as the inability to meet a filing deadline or to present a claim."

2    *Lewis*, 518 at 348–49.  The failure to allege an actual injury is "fatal."  *Alvarez v. Hill*, 518

3    F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had

4    been frustrated' is fatal . . . .") (quoting *Lewis*, 518 U.S. at 353 & n.4).

5         Plaintiff's Motion, as it relates to his access to the courts, fails because Plaintiff has

6    not presented any evidence supporting that his ability to litigate has been hindered by

7    prison officials, and Plaintiff has not alleged an actual injury such as inability to meet a

8    filing deadline or to present a claim.  The only evidence Plaintiff presented with his Motion

9    are letters from his attorneys to the USP-Tucson Warden about Plaintiff's confinement in

10   the SHU in which they state, for example, that they "continue to be concerned about how

11   his confinement poses issues concerning his mental health, physical health and access to

12   attorneys and the courts, and fair treatment."  (Doc. 34-1 at 6.)  These letters do not even

13   say that the attorneys attempted to contact Plaintiff while in the SHU but were denied

14   access.  Plaintiff did file a Declaration with his Reply (to which Defendants have not had

15   an opportunity to respond), but Plaintiff does not say anything in that Declaration

16   indicating that his access to the courts has been denied.  (*See* Doc. 43-1 at 2–6.)

17        Accordingly, the Court will deny Plaintiff's Motion.

18        **IT IS ORDERED** that Plaintiff's Motion for a Temporary Restraining Order or,

19   Alternatively, for Preliminary Injunctive Relief (Doc. 34) is **DENIED**.

20        Dated this 3rd day of November, 2022.

21

22

23

24                                              _____

25                                              Honorable Raner C. Collins
                                                Senior United States District Judge
26

27

28

- 7 -