GARY M. RESTAINO
United States Attorney
District of Arizona
DENISE ANN FAULK
Assistant U.S. Attorney
State Bar No. 12700
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Email: denise.faulk@usdoj.gov
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Raniere, | CV-22-00212-TUC-RCC |
| Plaintiff, | |
| vs. | **DEFENDANTS' RESPONSE TO PLAINTIFF'S THIRD MOTION FOR TEMPORARY RESTRAINING ORDER** |
| Merrick Garland, et al., | |
| Defendants. | |

Defendants Garland, Peters, Gutierrez and Ulrich, acting in their official capacities by and through undersigned counsel, respond to Plaintiff's *third* Motion for Temporary Restraining Order (Doc. 44). Defendants hereby incorporate Defendants' Response to Motion for Preliminary Injunction (Doc. 14), Defendants' Response to Motion for Temporary Restraining Order (Doc. 17) and Defendants' Response to Motion for Temporary Restraining Order, or, in the alternative, Preliminary Injunctive Relief (Doc. 39) in their entireties. For the reasons set forth in those responses and the additional reasons discussed below, Defendants request that the Court deny the motion.

**I.     Background**

   **A.     Relevant Parties**

Plaintiff Keith Raniere is a federal inmate at the United States Penitentiary (USP Tucson) in Tucson, Arizona. (Doc. 22 at 1.) Plaintiff is serving an aggregate sentence of 120 years for racketeering conspiracy, racketeering, forced labor conspiracy, wire fraud

conspiracy, sex trafficking conspiracy, sex trafficking of Jane Doe 5 and attempted sex trafficking of Jane Doe 8. (*Id.*) He is projected to be released from custody on June 27, 2120. (*Id.*)

Suneel Chakravorty is a former associate of NXIVM who has been banned from communicating with Plaintiff at two institutions for misconduct during Plaintiff's incarceration. Mr. Chakravorty's misdeeds were detailed in Defendants' Response to Plaintiff's Motion for Preliminary Injunction (Doc. 14 at 2-7) and are incorporated herein.

Nicki Clyne is a former associate of NXIVM who has been banned from communicating with Plaintiff. (Doc. 31-2 at 4, 11.) Ms. Clyne is an unindicted co-conspirator. (*Id.* at 4, 17.) Plaintiff circumvented mail monitoring by communicating with Ms. Clyne through another inmate and by using her to communicate with Clare Bronfman, another associate of NXIVM and co-defendant of Plaintiff who currently is serving time in federal prison. (*Id.* at 13-18.)

Danielle Roberts is a former associate of NXIVM who has been removed from Plaintiff's visiting list due to her extensive involvement with NXIVM. (*Id.* at 4, 10.) She was removed "for safety and security of institution." (*Id.*) In January 2022, Ms. Robert's attorney contacted the Bureau of Prisons (Bureau) and was informed that Plaintiff could file a request through the Bureau's Administrative Remedy Program regarding her removal. (*Id.* at 4, 20.) Plaintiff has provided no evidence that he has done so. (Doc. 44.)

**B.      First Amended Complaint (FAC)**

On May 6, 2022, Plaintiff filed the FAC alleging that the Bureau was interfering with his First and Sixth Amendment rights. (Doc. 3.) Specifically, Plaintiff alleged that on that same day "Defendants interfered and frustrated that legal call by, among other things, causing the phone call to be cut off before Plaintiff and [attorney] Dougherty had concluded their conversation." (*Id.* at 6.) Plaintiff also alleged that "[o]n May 4, 2022, Plaintiff was on a privileged legal call with attorney Tully, when the call was apparently terminated prematurely, and without warning." (*Id.* at 5.) Plaintiff alleged that Mr. Tully anticipated that the judge in Plaintiff's New York criminal case would set a hearing on a Rule 33

motion he filed on May 3, 2022, and that Mr. Tully needed to consult with Plaintiff to prepare for the hearing. (Doc. 3 at 5.) Plaintiff also alleged that on April 28, 2022, Mr. Tully had requested the Second Circuit to stay Plaintiff's appeal from his criminal conviction pending a ruling on the Rule 33 motion. (*Id.* at 4.)

Plaintiff asserted claims for unlawful frustration and interference with First Amendment access to the courts (Count One), retaliation based on rights protected under the First Amendment as to his access to the courts "by imminently threatening to cut off all telephonic and in-person communication with his attorneys" (Count Two) and "Sixth Amendment" by interfering "with the confidential relationship between Plaintiff and his criminal defense counsel" (Count Three). (*Id*. at 7-9.)

Plaintiff sought "merely to maintain the status quo ante, pending administrative exhaustion." (*Id.* at 9.) More specifically, Plaintiff sought a "preliminary injunction to preserve the status quo pending administrative exhaustion, to include restraining Defendants [and] their employees" from interfering with Plaintiff's communication with his attorneys via telephone, visiting with his attorneys in person and interfering with Plaintiff's communication by telephone with his attorneys' employees and agents. (*Id.* at 9-10.)

### C. Second Circuit and New York District Court Decisions

On April 29, 2022, the Second Circuit denied Plaintiff's April 28, 2022, motion to stay his criminal appeal pending a Rule 33 motion. *Raniere v. United States*, Case 20-3789, Dkt. 193 (2nd Cir. April 29, 2022).[1] (Doc. 14-8 at 2.) On May 9, 2022, the New York District Court deferred consideration of Plaintiff's Rule 33 motion due to the ongoing appeal. *United States v. Raniere*, Case No. 1:18-cr-00204-NGG-VMS (E.D. N.Y. May 9, 2022). On August 31, 2022, the Court ordered that it would "continue to defer consideration of any and all motions for new trials grounded on newly discovered evidence, until the Second Circuit resolves the pending appeal." *Id.* (E.D. N.Y. Aug. 31, 2022). The deadline to file Rule 33 motions has passed, and there is no hearing imminent.

---

[1] Last month, the Second Circuit denied Plaintiff's second motion to stay his criminal appeal pending a Rule 33 motion. *Id.* Dkt. 211 (2nd Cir. Oct. 7, 2022).

### D. Plaintiff's Access to Counsel at USP Tucson

Defendants provided evidence that the Bureau has facilitated dozens of legal calls and frequent legal visits between Plaintiff and his attorneys. (Doc. 14-2 at 5-8, 37-38, 40-41; Doc. 17-1 at 2-4, 7-8, 12-13; Doc. 31-2 at 5-7.) The legal calls and legal visits have continued while Plaintiff is housed in the Special Housing Unit (SHU). (Doc. 31-2 at 5-7.)

### E. Plaintiff's Placement in the SHU

On July 26, 2022, Plaintiff was involved in a physical altercation in Food Service. (Doc. 39-1 at 6, 11.) When two inmates are involved in a physical altercation, each inmate is written an incident report that is investigated and is subject to a final decision by a disciplinary hearing officer. (*Id.*) As a result of receiving the incident report, Plaintiff was placed in administrative detention in the SHU pending an investigation. (*Id.* at 6, 15.) The incident report was expunged following the investigation and hearing. (*Id.* at 6, 13.)

Currently, Plaintiff remains in the SHU while the Special Investigative Services (SIS) Department is investigating safety and security issues pertaining to Plaintiff at USP Tucson.[2] (*Id.* at 6.) While Plaintiff has been housed in the SHU, he has been reviewed periodically by the Segregation Review Official (SRO) as required by policy. (*Id.* at 4, 6, 17-22.) Plaintiff may express concerns about cell assignments, cellmates and other issues during those periodic reviews. (*Id.* at 6.) Plaintiff has introduced no evidence that he expressed concerns about his current housing status or cellmate during any of the SRO reviews or through the Administrative Remedy Program. (Docs. 34, 44.) There are no safety or security concerns with Plaintiff's current housing assignment, including his current cellmate.[3] (Doc. 39-1 at 6.)

### F. Designation of Inmates

---

[2] If the Court requires more detailed information regarding the investigation and the safety and security issues pertaining to Plaintiff at USP Tucson, Defendants can provide it in camera to the Court.

[3] Plaintiff has made allegations regarding his cellmate and speculations regarding allegations Plaintiff believes his cellmate might assert against him in the future. (Doc. 34 at 5-6; 44 at 16.) Due to Plaintiff's cellmate's privacy rights, Defendants will not discuss the allegations except to note that there are no safety or security concerns regarding housing Plaintiff with his cellmate. (Doc. 39-1 at 6.) Also, Plaintiff has filed a Declaration in support of his purported cellmate. Case No. 4-21-cv-00506-SHR, Dkt. 49 (D. Ariz. Oct. 5, 2022).

Congress delegated to the Bureau the duty to manage and regulate all federal penal and correctional institutions. 18 U.S.C. § 4042(a)(1). Title 18 U.S.C. § 3621 governs imprisonment of persons convicted of federal crimes and delegates to the Bureau the authority to designate the institution where a prisoner will serve his sentence. *See* 18 U.S.C. § 3621(b); *Rodriguez v. Smith*, 541 F.3d 1180, 1184–86 (9th Cir. 2008) (recognizing discretionary authority of Bureau under 18 U.S.C. § 3621(b) to make placement or transfer decisions); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) ("Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons.") (internal citation omitted); *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984) (same). The place of incarceration can be "maintained by the Federal Government or otherwise" and the Bureau "may at any time … direct the transfer of a prisoner from one penal or correctional facility to another." 18 U.S.C. § 3621(b). The statute unambiguously states that "a designation of a place of imprisonment … is not reviewable by any court." 18 U.S.C. § 3621(b); accord *Ceballos*, 671 F.3d at 855 (holding courts have "no jurisdiction to select the place where the sentence will be served").

### G. Plaintiff's Motion

Plaintiff filed the instant motion seeking to have this Court interfere with the Bureau's housing decisions and order Plaintiff's continued designation to USP Tucson. (Doc. 44.) Plaintiff alleges that "retaliation events" have occurred and that [t]here is no legal justification for my being in SHU for this long." (Doc. 44 at 11-12.) Plaintiff does not explain his purported expertise as to the legal justification for the Bureau's decisions as to inmate placement. (*Id.*)

Further, Plaintiff's claimed "retaliation events" are lacking in detail and veracity. For example, he claims "[l]egal mail sent to me was opened by prison staff outside my presence and sent to the prosecution." (*Id.* at 12.) He fails to identify when the purported legal mail was sent and opened, who sent the purported legal mail, whether it was properly identified as legal mail and what evidence shows it was sent to the prosecution. (*Id.*) Next, Plaintiff asserts as a "retaliation event," "[t]he complete scrubbing of my visitation list, which cut off

- 5 -

my contact with my attorneys, as well as my family." (*Id.*)  As this Court is aware, when Plaintiff's contact list was scrubbed, all attorneys and the mother of Plaintiff's child were left on his contact list. (Doc. 14-5 at 6.)  The others were deleted, and Plaintiff was informed that he could request contacts be added. (*Id.*)  Plaintiff has never introduced any evidence that he requested that anyone be added to his contact list thereafter. (Docs. 34, 44.)  Plaintiff also asserts "[o]ngoing interference with legal visits and phone calls." (Doc. 44 at 12.)  Again, the record is clear that one legal call was dropped on May 6, 2022, and promptly reconnected and that the Bureau has provided Plaintiff with robust access to his attorneys. (Doc. 14-2 at 5-8, 37-38, 40-41; Doc. 14-9 at 2; Doc. 17-1 at 2-4, 7-8, 12-13; Doc. 31-2 at 5-7.)

As his final "retaliation event," Plaintiff asserts "[t]he current attempt to transfer me because of too many legal calls/visits." (Doc. 44 at 12.)  Plaintiff's sole support for his allegation that the Bureau is attempting to transfer him because of "too many legal calls/visits" is that sometime "[d]uring the week of 10/23/22, I was told by staff from my unit team, as I was being taken to a visit with my attorneys that they are recommending my transfer to another institution." (*Id.*)  Plaintiff fails to identify the day the purported statement was made, the staff member who purportedly made the statement or what authority the purported staff member had over transfer decisions.[4] (*Id.*)

Plaintiff also asserts that "[g]iven my sex crimes convictions, I should be placed in a facility with a 'sex offender management program.'" (*Id.* at 13.)  Plaintiff has not introduced any evidence that he is participating in a sex offender management program at USP Tucson.  And, again, Plaintiff has not provided any evidence that he is better suited than the Bureau to determine where he should be designated. (*Id.*)  Plaintiff also asserts that "[t]here was a recent public press conference with Alan Dershowitz" while failing to allege that anyone at USP Tucson even knew about the purported press conference. (*Id.*)

---

[4] Routine inmate transfer decisions, commonly referred to as re-designation decisions, are generally made by the Designation and Sentence Computation Center in Grand Prairie, Texas.  *See* Program Statement 5100.08, *Inmate Security Designation and Custody Classification* at Ch. 7 (available at https://www.bop.gov/policy/progstat/5100_008cn.pdf (last visited on Nov. 15, 2022).

## II. Legal Standards

### A. Standards for a Temporary Restraining Order (TRO) without Notice

Rule 65(b)(1), Fed.R.Civ.P., provides

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) *specific facts in an affidavit or a verified complaint* clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) *the movant's attorney certifies in writing any efforts made to give notice* and the reasons why it should not be required.

(Emphasis added.) Additionally, Rule 65(b)(2), Fed.R.Civ.P., provides

> Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

The test is the same for a TRO or a preliminary injunction. *White v. Lindermen,* No. CV 11-8152-PCT-RCB (ECV), 2012 WL 5040850, at *1 (D. Ariz. Oct. 18, 2012) (citations omitted). "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion.'" *Lopez v. Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam)) (emphasis added); *see also Winter v. NRDC, Inc.,* 555 U.S. 7, 24 (2008) (citation omitted) ("[A] preliminary injunction is an extraordinary remedy never awarded as of right.").

A plaintiff seeking preliminary injunctive relief must show (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) the requested injunction is in the public interest. *Fuller v. Granville,* No. CV 14-0020-PHX-DGC, 2014WL4541122, at *6 (D. Ariz. Sept. 12, 2014)

(citing *Winter,* 555 U.S. at 20).  Alternatively, the plaintiff may establish "serious questions going to the merits" – something less than a likelihood of success on the merits – but only if the plaintiff also establishes that the "balance of hardships tips sharply in the plaintiff's favor" and the other two elements of the *Winter* test are met.  *All. For The Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011).  Under the "serious questions" test, the plaintiff must make a stronger showing of one element to offset a weaker showing of another.  *Id.*  Whichever formulation of the standard is applied, the movant has the burden of proof on each element of the test.  *Env'l Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

Further, a preliminary injunction is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981).  "When a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quotation omitted).

The Prison Litigation Reform Act (PLRA) imposes further requirements on a prisoner who seeks injunctive relief.  The PLRA requires that any injunctive relief be *narrowly drawn* and the *least intrusive means* necessary to correct the harm.  18 U.S.C. § 3626(a)(2); *Gilmore v. Cal.,* 220 F.3d 987, 999 (9th Cir. 2000).  Under the PLRA, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." 18 U.S.C. § 3626(a)(2).  The Supreme Court recognizes that, "because the problems of prisons in America are complex and intractable, and because courts are particularly ill equipped to deal with these problems, [the Supreme Court] generally ha[s] deferred to the judgments of prison officials." *Shaw v. Murphy,* 532 U.S. 223, 229 (2001) (internal quote marks and citation omitted).

### B.     Inmates' First and Sixth Amendment Rights

As to the First Amendment, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.  Thus, challenges to prison restrictions that are asserted

to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Also, "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Id.*

In the Ninth Circuit, if the Sixth Amendment right to counsel is implicated, the courts also consider whether "the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel," and, if so, whether the interference "substantially prejudices the criminal defendant." *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014).  In an action seeking to enjoin "the continuation of an unconstitutional practice," substantial prejudice would be "that his right to privately confer with counsel has been chilled." *Id.* at 911.

**III.     Plaintiff has not met the Standards for a TRO without Notice**

      **A.     The motion is outside the scope of the instant proceeding.**

"A court's equitable power lies only over the merits of the case or controversy before it." *Pac. Radiation Oncology, L.L.C. v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).  If, instead, "a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Id.*  "[T]here must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Id.* at 636.  A "sufficiently strong" nexus between the injunction and the complaint can be found "where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945)); *see also Saddiq v. Ryan*, 703 F. App'x 570, 572 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1335 (2018) (denying request for preliminary injunctive relief regarding alleged retaliation because Saddiq failed to establish nexus between the retaliation claim and the claims in the complaint); *Pearson v. GEO Grp. Inc.,* No. CV-16-03094-PHX-DGC (BSB), 2018 WL 1382526, at *2 (D. Ariz. Mar. 19, 2018) (denying motion for injunctive relief regarding

nipple rings in proceeding involving mail); *Brisken v.* Griego, No. CV 16-02434-PHX-JJT (ESW), 2017 WL 8792538, at *4 (D. Ariz. Dec. 8, 2017) (denying injunction to be taken to eye doctor when only medical allegations in complaint related to broken hand); *Valenzuela v. Ryan,* No. CV-15-00158-PHX-NVW (MHB), 2016 WL 8193623, at *1 (D. Ariz. Nov. 14, 2016) (denying request for preliminary injunction regarding rapes alleged to be retaliation for current lawsuit because plaintiff was required to file new lawsuit to allege new claims).

Here, Plaintiff seeks a TRO requiring Defendants to designate him (apparently permanently) to USP Tucson. (Doc. 44.) The requested injunction is not related in any way to the underlying claims in the suit, which involve claims regarding access to the courts and counsel.[5] (Compare Doc. 44 with Doc. 3.) If Plaintiff were to succeed in his lawsuit, he would receive an injunction requiring Defendants to stop interfering with his access to courts and counsel. If he prevailed as to the motion, he would be designated to USP Tucson forever. No nexus exists between the motion and the lawsuit.

Plaintiff's motion for a TRO must be denied because it is outside the scope of the instant proceeding.

### B. Plaintiff has not met the standards for a TRO without Notice.

Plaintiff asserts that he has met the required standards for a TRO without notice because his FAC was served on Defendants and Defendants' counsel received copies of the FAC, the first motion for preliminary injunction and the Court's Screening Order. (Doc. 44 at 4.) First, counsel was required to certify in writing any efforts made to give notice of the motion for a TRO. *See* Rule 65(b)(1)(b), Fed.R.Civ.P. Second, Plaintiff did not include any "*specific facts in an affidavit or a verified complaint* [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *See* Rule 65(b)(1)(b), Fed.R.Civ.P.

Instead, Plaintiff asserts that on an unidentified date, an unidentified staff member

---

[5] Having failed to plead allegations related to his instant request for preliminary injunction in his FAC, Plaintiff also improperly bypassed the requirements of the PLRA, which requires the court to screen all prisoner complaints to determine whether they have stated a claim upon which relief can be granted. Here, the court had no opportunity to screen Plaintiff's allegations because they were raised for the first time in his motion.

made a remark about recommending Plaintiff's transfer to an unidentified institution. (Doc. 44 at 12-13.) Plaintiff does not even allege that any purported transfer is "imminent," much less that it will occur before Defendants can be heard in opposition. (*Id.*)

Plaintiff has not met the standards for a TRO without notice.

### C. Plaintiff Has Not Established the *Winter* Factors.

Plaintiff fails to address or establish the *Winter* factors. As with his prior injunctive motions, Plaintiff has not established a likelihood of success or that serious questions go to the merits. The Court denied Plaintiff's first Motion for Preliminary Injunction (Doc. 7) for failing to establish a likelihood of success on the merits or that he will suffer irreparable harm absent injunctive relief. (Doc. 18 at 15.) The Court denied Plaintiff's first Motion for Temporary Restraining Order (Doc. 137) as moot because it sought the same relief as his first Motion for Preliminary Injunction. (Doc. 18 at 15.)

The Court denied Plaintiff's second Motion for Temporary Restraining Order or, in the alternative, Injunctive Relief (Doc. 34) because Plaintiff failed to allege any irreparable injury in his Motion. (Doc. 45 at 5.) Specifically, "[i]n the section of his Motion discussing irreparable injury, Plaintiff merely cites the legal standards and states in a conclusory fashion that he 'is likely to suffer irreparable harm because, absent injunctive relief, he will be deprived of the most basic constitutional protections under the First Amendment." (*Id.* at 5-6.) Further, the Court noted that "Plaintiff speculates that he is still in the SHU in some effort to silence him, but Plaintiff has not presented any evidence showing that he has been silenced." Finally, the Court held that "Plaintiff's Motion, as it relates to his access to the courts, fails because Plaintiff has not presented any evidence supporting that his ability to litigate has been hindered by prison officials, and Plaintiff has not alleged an actual injury such as inability to meet a filing deadline or to present a claim." (*Id.* at 6.)

#### 1. Plaintiff has not established a likelihood of success on the merits again.

Plaintiff has introduced no evidence to support his bald speculations. The crux of Plaintiff's third Motion for TRO is his allegation that he will be transferred for a retaliatory reason. (Doc. 44.) He speculates that he will be transferred and the transfer will, in some

way, interfere with his access to counsel and courts. (*Id.*) Again, Plaintiff merely is speculating, as he has never produced any evidence that his designation to USP Tucson has interfered with his access to courts in New York and the Second Circuit and his access to counsel in California. Plaintiff has introduced no evidence that the Bureau policies in effect at the unspecified prison to which he speculates he will be transferred will be less accommodating that the Bureau policies in effect at USP Tucson. (*Id*.) Nor has he introduced any evidence that a purported transfer is imminent. (*Id*.)

The Bureau has "legitimate penological interests" and a central correctional goal "of internal security within the corrections facilities themselves." *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Procunier*, 417 U.S. at 823. The Bureau has the authority to designate the institution where a prisoner will serve his sentence and that designation is not reviewable by any court. *See* 18 U.S.C. § 3621(b); *Ceballos*, 671 F.3d at 855 (holding courts have "no jurisdiction to select the place where the sentence will be served"). Plaintiff has not provided any evidence that the Bureau deliberately interfered with the confidential relationship between him and his counsel or chilled his right to confer privately with counsel. *See Nordstrom*, 762 F.3d at 910. He cannot do so because the evidence shows that the Bureau has facilitated his numerous confidential legal calls and frequent legal visits with his multiple counsel – which legal calls and legal visits continue even while he currently is housed in the SHU, which he also alleged was retaliatory. (Doc. 14-2 at 5-8, 37-38, 40-41; Doc. 17-1 at 2-4, 7-8, 12-13; Doc. 31-2 at 5-7.) Similarly, Plaintiff has not shown that the purported transfer – even if it occurs – would interfere with his access to courts. Access to courts and counsel form the basis of the FAC. (Doc. 3.)

Plaintiff has not established a likelihood of success on the merits.

## 2. Plaintiff has not established irreparable harm.

Plaintiff also has not shown irreparable harm. A plaintiff "must demonstrate that there exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chron. Publ'g Co.,* 762 F.2d 1374, 1376 (9th Cir. 1985). The irreparable injury must be both likely and immediate. *Winter,* 555 U.S. at 24. Mere "[s]peculative injury does not constitute

irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige,* 844 F.2d 668, 674 (9th Cir. 1988).  Here, Plaintiff asserts merely: "Plaintiff will suffer irreparable harm if he is not allowed the opportunity to assist with the development of strategy with counsel by providing background facts only known to him or to which he must make informed decisions as to the strategy of counsel." (Doc. 44 at 5.)  However, Plaintiff has introduced no evidence that his speculative transfer would interfere with his ability to develop strategy with counsel or make informed decisions.  (*Id.*)  No evidence shows that Plaintiff has suffered or will suffer the harms he now alleges, which were not even mentioned in his FAC.  The urgency claimed in the FAC – based on the upcoming hearing on the Rule 33 Motion on newly discovered evidence – was eviscerated when the New York District Court determined that it will not address any motions until the Second Circuit decides the appeal.  There is no upcoming hearing.  Plaintiff has provided no evidence that his access to courts or counsel would be impaired during or after a purported transfer.  (Doc. 44.)  At best, Plaintiff asserts without evidence that "Attorney visits and phone calls are limited due to the nature of the FTC and the transient inmate population. *See id.*"  Plaintiff's citation does not state that attorney visits and phone calls are limited while at the Oklahoma transit facility.[6]  Even if it did, Plaintiff provides no evidence that he is being considered for a transfer, that the purported transfer would include time at the Oklahoma transit facility or that his access to courts and counsel would be hindered at his purported new facility. (Doc. 44.)

At best, Plaintiff's risk of injury is speculative, and speculative injury is not irreparable injury sufficient for a preliminary injunction. *Caribbean Marine*, 844 F.2d at 674.

### 3. The equities and public policy favor upholding Bureau policies and correctional decisions.

The equities and public policy favor upholding the Bureau's correctional decisions. The evidence establishes no grounds for the extraordinary measure of overriding the professional judgment of the Bureau in fulfilling its statutorily mandated duty to designate

---

[6] *See* https://www.bop.gov/locations/institutions/okl/OKL_holdover_aohandbook.pdf

Plaintiff. Plaintiff's effort to override those decisions and chose his place of incarceration should be rejected.

### IV.     Request for Hearing

It is Plaintiff's burden to establish entitlement to a TRO, which he has failed to do. However, in the event further evidence or information are needed for the denial of Plaintiff's motion, Defendants request an evidentiary hearing.

### V.      Conclusion

For all of the foregoing reasons, Defendants Garland, Peters, Gutierrez and Ulrich request that the Court deny the Motion for Temporary Restraining Order (Doc. 44).

RESPECTFULLY SUBMITTED: November 16, 2022.

> GARY M. RESTAINO
> United States Attorney
> District of Arizona
>
> *s/ Denise Ann Faulk*
> DENISE ANN FAULK
> Assistant U.S. Attorney

Copy of the foregoing
served via EM/ECF to

Stacy Scheff
LAW OFFICE OF
STACY SCHEFF
P.O. Box 40611
Tucson, AZ 85717
*Pro Se*

s/ *Lisa Startup*
*/ Response to MTRO – 3d*